## Docket No. 24-165

*In the*

# United States Court of Appeals

*for the*

# Ninth Circuit

KELLY CAHILL, et al.,

*Plaintiffs-Appellees,*

v.

NON-PARTY MEDIAL ORGANIZATIONS INSIDER INC.
d/b/a BUSINESS INSIDER, et al.,

*Non-Party Media Orgs.-Appellees,*

NIKE, INC.,

*Defendant-Appellant.*

_____

*Appeal from a Decision of the United States District Court for the District of Oregon,*
*No. 3:18-cv-01477-JR · Honorable Marco A. Hernández*

## OPENING BRIEF OF DEFENDANT-APPELLANT NIKE, INC.

DANIEL PRINCE, CA Bar No. 237112
FELICIA A. DAVIS, CA Bar No. 266523
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071-2228
Telephone: (213) 683-6000
Email: danielprince@paulhastings.com
Email: feliciadavis@paulhastings.com

*Attorneys for Defendant-Appellant*
*NIKE, INC.*

 

## <u>CORPORATE DISCLOSURE STATEMENT</u>

In accordance with Federal Rule of Appellate Procedure 26.1, Defendant-Appellant NIKE, Inc. states that it has no parent corporation and that no publicly held corporation owns ten (10) percent or more of its stock.

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ............................................................................1

JURISDICTIONAL STATEMENT ...........................................5

STATEMENT OF THE ISSUES...............................................7

STANDARD OF REVIEW ........................................................7

STATEMENT OF THE CASE ...................................................8

SUMMARY OF ARGUMENT ................................................12

ARGUMENT ...........................................................................15

    I.     A "GOOD CAUSE" STANDARD APPLIES IN THIS CASE.........15

         A.    The "Good Cause" Standard Applies to Nondispositive Motions. .......................................................................15

         B.    The Motion for Class Certification Was Not Related to the Merits of the Case. ....................................17

    II.    UNDER EITHER STANDARD, NIKE SET FORTH AN APPROPRIATE JUSTIFICATION FOR SEALING.......................25

         A.    The Weight of Authority Holds that Non-Party Privacy Interests are Compelling Reasons to Justify Sealing..............25

         B.    Non-Party Privacy Interests Outweigh Public Access to the Identities of Complainants, Subjects, and Alleged Persons of Interest..................32

         C.    NIKE Met its Burden in Demonstrating Compelling Reasons. ..................................................35

    III.    CONCLUSION .................................................39

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alcantar v. Hobart Serv.*,
  800 F.3d 1047 (9th Cir. 2015) ....................................................19, 22

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013)..........................................................................19

*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
  727 F.3d 1214 (Fed. Cir. 2013) ..................................................33, 34

*Arroyo v. Rosas*,
  19 F.4th 1202 (9th Cir. 2021) ...........................................................30

*Baghdasarian v. Amazon.com, Inc*,
  No. CV 05-8060 AG, 2009 WL 4823368 (C.D. Cal. Dec. 9, 2009),
  *aff'd*, 458 F. App'x 622 (9th Cir. 2011),
  *superseded by Microsoft Corp., v. Baker*, 582 U.S. 23 (2017) .........21

*In re Bofi Holding, Inc. Sec. Litig.*,
  No. 3:15-CV-02324-GPC-KSC, 2016 WL 5390533 (S.D. Cal.
  Sept. 27, 2016) ............................................................................27, 28

*Bracken v. Fla. League of Cities*,
  No. 1:19-cv-00602-CL, 2019 WL 1867921 (D. Or. Apr. 24, 2019).................29

*Bravo v. City of Santa Maria*,
  810 F.3d 659 (9th Cir. 2016) .............................................................35

*Christian v. Mattel, Inc.*,
  286 F.3d 1118 (9th Cir. 2002) ...........................................................35

*Coopers & Lybrand v. Livesay*,
  437 U.S. 463 (1978)...........................................................................21

*In re Copley Press, Inc.*,
  518 F.3d 1022 (9th Cir. 2008) .......................................................6, 34

*Ctr. for Auto Safety v. Chrysler Grp., LLC*,
  809 F.3d 1092 (9th Cir. 2016) .......................................................*passim*

*Davis v. Cloak*,
  No. 1:22-cv-01632-JLT-HBK (PC), 2023 WL 7153852 (E.D. Cal.
  Oct. 31, 2023) ...........................................................................................22

*Deposit Guar. Nat'l Bank, v. Roper*,
  445 U.S. 326 (1980)...............................................................................4, 19

*Dominguez v. Better Mortg. Corp.*,
  88 F.4th 782 (9th Cir. 2023) ...................................................................21

*Phillips ex rel. Ests. of Byrd v. GMC*,
  307 F.3d 1206 (9th Cir. 2002) .............................................................3, 13, 16

*Ferris v. Wynn Resorts Ltd.*,
  No. 2:18-cv-00479-APG-BNW, 2023 WL 1767797 (D. Nev. Jan.
  12, 2023) ....................................................................................................17

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*,
  No. 17-cv-00564 NC, 2018 WL 10472795 (N.D. Cal. Apr. 23,
  2018) ..........................................................................................................24

*Foltz v. State Farm Mut. Auto. Ins. Co.*,
  331 F.3d 1122 (9th Cir. 2003) ...............................................................*passim*

*Gnassi v. del Toro*,
  No. 3:20-cv-06095-JHC, 2022 WL 3867376 (W.D. Wash. Aug.
  30, 2022) .................................................................................................4, 13

*Hooper v. City of Seattle*,
  No. C17-0077RSM, 2020 WL 3100855 (W.D. Wash. June 11,
  2020) ..........................................................................................................21

*Hunt v. Cont'l Cas. Co.*,
  No. 13–cv–05966–HSG, 2015 WL 5355398 (N.D. Cal. Sept. 14,
  2015) .......................................................................................................27, 32

*Iron Workers Local 580 Joint Funds v. Nvidia Corp.*,
  No. 18-cv-07669-HSG, 2021 U.S. Dist. LEXIS 38963 (N.D. Cal.
  Mar. 2, 2021)..............................................................................................27

*Kamakana v. City & County of Honolulu*,
  447 F.3d 1172 (9th Cir. 2006) ............................................29

*Kautsman v. Carrington Mortg. Servs., LLC*,
  No. C16-1940-JCC, 2017 U.S. Dist. LEXIS 153550 (W.D. Wash.
  Sept. 19, 2017) ...........................................17

*Koon v. United States*,
  518 U.S. 81 (1996) .......................................8, 25

*L.W. v. Snap Inc.*,
  675 F. Supp. 3d 1087 (S.D. Cal. 2023) .............................32

*Lambright v. Ryan*,
  698 F.3d 808, 822 (9th Cir. 2012) .....................................35

*Las Vegas Sands, LLC v. Nehme*,
  632 F.3d 526 (9th Cir. 2011) ..............................8

*Lozano v. Cabrera*,
  No. 22-55273, 2023 WL 2387583 (9th Cir. Mar. 7, 2023) ...............35

*McDonnell v. Sw. Airlines Co.*,
  292 F. App'x 679 (9th Cir. 2008) .......................................7

*In re Midland Nat'l Life Ins. Co Annuity Sales Practices Litig.*,
  686 F.3d 1115 (9th Cir. 2012) ............................14, 25, 28

*Miles v. Kirkland's Stores Inc.*,
  89 F.4th 1217 (9th Cir. 2024) ......................................4, 20

*Moussouris v. Microsoft Corp.*,
  No. 15-cv-1483 JLR, 2018 WL 1159251 (W.D. Wash. Feb. 16,
  2018)
  ....................................4, 13, 26, 33

*Music Grp. Macao Com. Offshore Ltd. v. Foote*,
  No. 14–cv–03078–JSC, 2015 WL 3993147 (N.D. Cal. June 30,
  2015) .............................................26

*N.D. ex rel. parents acting as guardians ad litem v. Hawaii Dep't of
  Educ.*, 600 F.3d 1104, 1111 (9th Cir. 2010)...........................7, 8, 23

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022) (en banc),
*cert denied sub nom. Starkist Co. v. Olean Wholesale Grocery
Coop., Inc.*,
143 S. Ct. 424 (2022)..........................................................................20

*Oliner v. Kontrabecki*,
745 F.3d 1024 (9th Cir. 2014) ............................................................6

*Patricia Fox, O.D. v. Vision Serv. Plan*,
No. 2:16-cv-2456-JAM-DB, 2017 WL 735735 (E.D. Cal. Feb. 24,
2017) ....................................................................................................21

*Perry v. Brown*,
667 F.3d 1078 (9th Cir. 2012) ..........................................................34

*Philips v. Ford Motor Co.*,
No. 14-CV-02989-LHK, 2016 WL 7374214 (N.D. Cal. Dec. 20,
2016) ....................................................................................................18

*Pintos v. Pac. Creditors Ass'n*,
565 F.3d 1106 (9th Cir. 2009),
*superseded on other grounds*, 605 F.3d 665 (9th Cir. 2010) ...............15, 16, 20

*Price v. Equilon Enters. LLC*,
No. C11-1553-JCC, 2012 WL 12846100 (W.D. Wash. 20, 2012) ...................30

*Reflex Media, Inc. v. Doe*,
No. 2:18-cv-02423-RFB-BNW, 2022 WL 2985938 (D. Nev. July
28, 2022) ..........................................................................................26, 38

*Romero v. County of Santa Clara*,
No. 11-cv-04812-WHO, 2014 WL 12641990 (N.D. Cal. June 17,
2014) ....................................................................................................26

*SEC v. Ripple Labs, Inc.*,
20 Civ. 10832 (AT), 2023 WL 3477552 (S.D.N.Y. May 16, 2023) .................30

*Sentynl Therapeutics, Inc. v. U.S. Specialty Ins. Co.*,
No. 19cv1667-LAB-AHG, 2021 WL 794271 (S.D. Cal. Mar. 1,
2021) ....................................................................................................28

*Sessa v. Ancestry.com Operations Inc.*,
    2No. 2:20-cv-02292-GMN-BNW, 2023 WL 1795856 (D. Nev.
    Feb. 6, 2023) ...............................................................................17

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) .............................................................23

*Stiner v. Brookdale Senior Living, Inc.*,
    No. 17-cv-03962-HSG, 2022 WL 1180214 (N.D. Cal. Mar. 29,
    2022) ...........................................................................................26

*True Health Chiropractic, Inc. v. McKesson Corp.*,
    No. 13-cv-02219-HSG, 2019 WL 11743580 (N.D. Cal. Aug. 13,
    2019) ...........................................................................................17

*UNIFYSCC v. Cody*,
    No. 22-cv-01019-BLF, 2023 WL 6998184 (N.D. Cal. Oct. 20,
    2023) ...........................................................................................27

*United States v. Chow*,
    No. 14–cr–00196–CRB (JCS), 2015 WL 5094744 (N.D. Cal. Aug.
    28, 2015) .......................................................................................38

*United States v. Hinkson*,
    585 F.3d 1247 (9th Cir. 2009) (en banc) ............................................8

*United States v. Mayers*,
    No. CR16-0258-JCC, 2017 WL 2215805 (W.D. Wash. May 19,
    2017) ...........................................................................................26

*In re Volkswagen "Clean Diesel" Mktg.*,
    MDL No. 2672 CRB (JSC), 2017 U.S. Dist. LEXIS 176327 (N.D.
    Cal. Oct. 24, 2017) ....................................................................31, 32

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) .........................................................................19

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ............................................................................20

*In re Xyrem Sodium Oxybate Antitrust Litig.*,
    No. 20-md-02966-RS, 2023 U.S. Dist. LEXIS 118049 (N.D. Cal.
    July 10, 2023) .................................................................................17

**Statutes**

28 U.S.C. § 1291 ...........................................................................6

28 U.S.C. § 1292(a)(1) ................................................................21

28 U.S.C. § 1331 ...........................................................................5

42 U.S.C. § 2000(e) ......................................................................5

42 U.S.C. § 2005(f)(3) ..................................................................5

**Rules**

Fed. R. Civ. P. § 23 ...........................................................*passim*

Fed. R. Civ. P. § 23(f) ......................................................1, 10, 21

Fed. R. Civ. P. § 26(c)...................................................................16

## **INTRODUCTION**

Plaintiffs filed this case as a class action, claiming that women were paid less and promoted less often than their male comparators. NIKE denied those allegations. The District Court subsequently found that Plaintiffs failed to meet Fed. R. Civ. P. 23's requirements to proceed as a class and this Court denied Plaintiffs' petition under Rule 23(f). The merits of the claims asserted by the named Plaintiffs are still being litigated.

This appeal, however, is about the Media Intervenors' attempts to force public disclosure of *internal* accusations that have not been substantiated (the "Documents") on *non*-litigants who have never been accused in a public forum. That is, whether the *identities* of non-litigants may be disclosed. There is no dispute that the underlying accusations have been made public; in fact, the Media Intervenors have published articles about the same. But the *identities* of individuals who have not chosen to make themselves known is at issue here.

The District Court erred when it ordered the non-litigants' names unsealed. That order was stayed by this Court. This Court's jurisprudence says that *private* information about *private* individuals should not be made public when such information can be produced to convey key facts about the defendant (here, NIKE), while respecting the privacy of the individuals involved. *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1137 (9th Cir. 2003). The application of

1

that law here requires reversal.  In a company that strives for a culture where workplace concerns can be raised without fear of public discussion, NIKE feels compelled to protect the identity of its employees.  The law supports the individuals, and the Court should be wary of the chilling effect on complaints and investigations if the District Court's order is not reversed.

Opposing NIKE's position are the Media Intervenors.  Cloaking themselves in the cape of the press, but perhaps more animated by "click" concerns, they seek to obtain—and publish—the identities of current and former NIKE employees for purposes of salacious headlines.[1]  It is not enough for them to have published the fact of accusations.  They want more.  They want the names—the accuser, unaccused, and accused alike—even though the individuals at issue are not the Plaintiffs and have not chosen to make themselves known publicly.  The Media Intervenors seek the identities of these individuals without regard to any undue harm, embarrassment, and damage to those individuals' personal and/or professional reputations arising from workplace allegations that may not be true and for which the litigation below did not (and does not) facilitate a forum to defend themselves.

The Media Intervenors led the District Court to err in two ways:  (1) the

---

[1] The Media Intervenors are Non-Party Media Organizations Insider Inc., *d/b/a Business Insider*, Advance Local Media LLC, d/*b/a the Oregonian Media Group*, and American City Business Journal, Inc., *d/b/a Portland Business Journal*.

2

District Court applied the wrong legal standard in analyzing whether the non-parties' names should remain sealed; and (2) the District Court misapplied extensive case law holding that privacy interests of non-parties justify sealing under either a "compelling reasons" or "good cause" standard. These errors of law compel reversal.

First, the District Court improperly applied the "compelling reasons" standard in determining whether to unredact names appearing in the Documents. Under Ninth Circuit precedent, a lower "good cause" standard applies to documents, such as here, which are "unrelated" or only "tangentially related" to the merits of the dispute. *See Phillips ex rel. Ests. of Byrd v. GMC*, 307 F.3d 1206, 1213 (9th Cir. 2002). As a matter of law, the "compelling reasons" standard applies only to those motions that are "more than tangentially related to the [dispute]." *See Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1098-99 (9th Cir. 2016). This Court has clarified that such a conclusion may arise where the motion at issue has a profound impact on the substantive rights of the parties, accelerates the merits of the dispute, or implicates far-reaching personal or constitutional issues. *Id*. The class certification motion at issue was *not*. It was not a summary judgment motion or a preliminary injunction motion.

The motion for class certification below did not resolve the merits. The Supreme Court has confirmed that a motion for class certification is a *procedural*

3

motion.  *See, e.g., Deposit Guar. Nat'l Bank, v. Roper*, 445 U.S. 326, 336 (1980) ("We view the denial of class certification as an example of a procedural ruling, collateral to the merits of a litigation, that is appealable after the entry of final judgment.").  Further, this Court has held (repeatedly) that lower courts are to avoid ruling on the merits at class certification.  *See, e.g., Miles v. Kirkland's Stores Inc.,* 89 F.4th 1217, 1224 n.2 (9th Cir. 2024) ("That is a merits question that should be left for summary judgment or trial, not at class certification.").  As a result, the "good cause" standard should have applied.

Second, regardless of the standard, non-party privacy interests and the protection of non-parties from embarrassment are routinely found as compelling interests justifying sealing, and the District Court below erred overlooking that law.  *See, e.g.*, *Moussouris v. Microsoft Corp.*, No. 15-cv-1483 JLR**,** 2018 WL 1159251, at *6 (W.D. Wash. Feb. 16, 2018) (sealing names of non-party employees who raised allegations that they were discriminated against or harassed while employed by Microsoft), *R. & R. adopted,* 2018 WL 1157997 (W.D. Wash. Mar. 1, 2018); *Gnassi v. del Toro*, No. 3:20-cv-06095-JHC, 2022 WL 3867376, at *3 (W.D. Wash. Aug. 30, 2022) ("Courts may seal records containing identifying information of third parties to protect their privacy interests.").  This is especially true where, as here, the identities of the non-litigants have no bearing on the claims or allegations asserted by the named Plaintiffs.

NIKE raised this authority in the District Court.  NIKE also explained the risk of a chilling effect on raising workplace issues, given that complainants and alleged victims would be less likely to tell their stories for fear that their names (or the names of potential witnesses) may be published in news stories without consent.  The District Court ignored the authority and those concerns, holding that these "generalized" allegations of harm were not sufficiently compelling.  1-ER-009.  Taken to its logical conclusion, a specific victim or witness would need to submit a declaration describing the harm that publicizing his/her name might cause to that individual or to that individual's interests.  That would be an absurd result. Companies, instead, should be lauded for protecting the privacy concerns of their employees.  The District Court abused its discretion in each of these rulings.

Accordingly, NIKE respectfully requests that the Court reverse the District Court's order requiring the unsealing of the names of non-party complainants, witnesses, and alleged persons of interest.

## JURISDICTIONAL STATEMENT

The District Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 2000e-5(f)(3), because Plaintiffs assert federal claims arising under the laws of the United States and supplemental jurisdiction over the claims arising under Oregon law.

5

This Court has "'jurisdiction because an order denying a motion to unseal or seal documents is appealable either as a final order under 28 U.S.C. § 1291 or as a collateral order.'" *Chrysler*, 809 F.3d at 1096 (quoting *Oliner v. Kontrabecki*, 745 F.3d 1024, 1025 (9th Cir. 2014)). The same is true for an order unsealing a document because "[s]ecrecy is a one-way street: Once information is published, it cannot be made secret again. An order to unseal thus 'conclusively determine[s]' that the information will be public[,]" and is appealable under 28 U.S.C. § 1291. *In re Copley Press, Inc.*, 518 F.3d 1022, 1025 (9th Cir. 2008).

This Court already has stayed the effect of the District Court's sealing order pending this appeal. Dkt. No. 12.1. At the time of the filing of this merits brief, there is the specter of mootness on the horizon. Plaintiffs in this case—with the aid of at least one of the Media Intervenors, the Oregonian—breached this Court's stay order (and the protective order below). Dkt. No. 14.1. The Media Intervenors now have unredacted copies of the Documents, but are barred from using them until the District Court sorts out the consequences of the breach. Dkt. No. 20.1. The Magistrate has suggested that the Court's hands are tied to claw back the Documents. *Id.* NIKE disagrees and *de novo* objections are pending before the District Court. NIKE raises these points here, though they implicate post-appeal conduct, as they do present a cloud of mootness pending the outcome of the objections and/or whether a stay pending appeal be granted.

## STATEMENT OF THE ISSUES

1.     Whether the District Court abused its discretion as a matter of law by applying the "compelling reasons" standard—instead of the "good cause" standard—to determine whether the names of non-party complainants, witnesses, and alleged persons of interest should be made public despite their lack of relevance to Plaintiffs' claims and despite the implications to those non-parties' privacy interests.

2.     Whether the District Court abused its discretion in finding that NIKE did not meet its burden in demonstrating that "compelling reasons" justified the redaction of the names of non-party complainants, witnesses, and alleged persons of interest when those individuals have no relevance to the named Plaintiffs' claims below and whose identities were not relevant to the District Court's order denying class certification.

## STANDARD OF REVIEW

This Court reviews *de novo* whether a district court used the correct legal standard in ordering records to be unsealed. *McDonnell v. Sw. Airlines Co.*, 292 F. App'x 679, 680 (9th Cir. 2008) (citing *Phillips*, 307 F. 3d at 1210); *N.D. ex rel. parents acting as guardians ad litem v. Haw. Dep't of Educ.*, 600 F.3d 1104, 1111 (9th Cir. 2010) (the Ninth Circuit "determine[s] de novo whether the trial court identified the correct legal rule to apply to the relief requested.") (citation omitted). The Court

7

reviews for abuse of discretion the district court's application of that legal standard. *Id.* "A district court that applied the incorrect legal standard necessarily abused its discretion." *Hawaii Dep't of Educ.*, 600 F.3d at 1111. Additionally, "a district court by definition abuses its discretion when it makes an error of law." *Koon v. United States*, 518 U.S. 81, 100 (1996). Likewise, if a district court's applications of fact to the legal standard are illogical, implausible, or without support in inferences that may be drawn from facts in the record," the court abused its discretion. *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011) (citing *United States v. Hinkson,* 585 F.3d 1247, 1251, 1262 (9th Cir. 2009) (en banc)).

## STATEMENT OF THE CASE

Plaintiffs Kelly Cahill, Sara Johnston, Lindsay Elizabeth, and Heather Hender filed this action in 2018 seeking to certify a class as to claims under the Federal Equal Pay Act, Oregon Equal Pay Act, and Title VII, alleging discrimination against them and other similarly situated women in pay and promotion decisions. 3-ER-332. Though irrelevant to their actual pay and promotions claims, in January 2022, Plaintiffs filed a set of unverified internal claims containing harassment allegations in connection with their motion for class certification that were sealed under the operative protective order ("Protective Order"). Thereafter, NIKE and Plaintiff worked "to review previously sealed documents and re-lodge unsealed or redacted versions" of documents filed in connection with class certification briefing. 2-ER-

8

289.  While the parties unsealed the substance of the Documents (*i.e.*, the allegations themselves), they agreed to redact "the names of individuals named in allegations of sexual harassment or gender discrimination at NIKE that have not already been made public."  2-ER-288; *see also* 2-ER-210-274 & 4-ER-466-530.  The names that the parties agreed to redact pertained to non-party complainants, witnesses, and alleged persons of interest identified in the Documents.  3-ER-321.

Notwithstanding the fact that NIKE and Plaintiffs agreed to disclose the substance of the Documents, in April 2022, the Media Intervenors intervened in the action to access non-party names that were sealed pursuant to the Protective Order. 2-ER-292.  On April 8, 2022, the Media Intervenors brought their initial Motion to Intervene for the Limited Purpose of Moving to Unseal Judicial Records (the "Motion to Intervene").  *Id.*  The court below issued a recommendation granting in part and denying in part the Motion to Intervene on September 30, 2022.  2-ER-277.

While the District Court allowed the Media Intervenors to intervene for the limited purpose of unsealing judicial records, it denied their request to unseal the records submitted with the class certification briefing, including the non-party names.  2-ER-286-90.  The court below found that "allowing non-party media organization to access filings under seal so that they may evaluate and, if necessary, move to unseal them eviscerates the safeguards built into the Protective Order" and "has the potential to erode the privacy rights of third-parties[.]"  2-ER-289.

9

However, the District Court noted that the Media Intervenors were permitted to file a renewed motion for opposing "any remaining stipulated redactions" after final resolution of Plaintiffs' class certification motion. 2-ER-290.

On November 22, 2022, the Magistrate Judge entered her Findings and Recommendations, concluding that Plaintiffs' Motion for Class Certification should be denied. 2-ER-153-209. The Magistrate Judge found, *inter alia*, that Plaintiffs had failed to submit sufficient evidence to establish: (1) a common practice regarding NIKE's alleged use of prior pay to set starting pay; (2) a common practice regarding bonus payments; (3) commonality regarding Plaintiffs' Oregon Equal Pay Act claim; and (4) typicality, predominance, and superiority. *Id*. On March 21, 2023, the District Court adopted the Magistrate Judge's Findings and Recommendations in its Order denying class certification. 2-ER-150. Plaintiffs petitioned the Ninth Circuit for leave to immediately appeal the denial of their class certification motion, pursuant to Fed. R. Civ. P. 23(f). 2-ER-148. This Court denied the petition. 2-ER-143.

On August 9, 2023, the Media Intervenors renewed their Motion to Unseal Judicial Records, seeking access to the identities of complainants, witnesses, and alleged persons of interest named in the Documents,[2] 2-ER-126, even though the

---

[2] The Media Intervenors seek to publish the names of individuals who raised concerns in the Documents, the subjects of the internal allegations (even if not substantiated), and alleged witnesses to purported events (even if they expected

Media Intervenors and other news outlets have published articles relating to the substance of the Documents. Dkt. No. 3.2, Exs. O-Q. On October 11, 2023, the Magistrate recommended that the District Court grant the Media Intervenors' renewed motion. 1-ER-005.

NIKE objected to the Magistrate's Findings and Recommendations (the "Recommendations") on October 25, 2023, requesting oral argument. 2-ER-063. NIKE argued that the Recommendations were contrary to law because they: (1) ignored that the "good cause" standard applied to redaction requests to records accompanying the class certification briefing; (2) ignored authority finding third-parties' privacy to be a compelling reason to redact names; (3) erroneously relied on inapposite case law; and (4) ignored case law supporting the reasonableness of NIKE's limited redactions. 2-ER-063-083. Both Plaintiffs and the Media Intervenors opposed NIKE's objections. 2-ER-043 & 2-ER-033.

On December 21, 2023, NIKE renewed its request for oral argument, given the serious and important legal questions raised, and sought an emergency stay pending appeal if the District Court were to overrule NIKE's objections. 2-ER-029. The District Court adopted the Recommendations on January 5, 2024 and denied NIKE's motion to stay (the "Unsealing Order"). 1-ER-002 & 2-ER-013. However,

---

their names to remain confidential or were advised of the same).

the District Court granted NIKE a temporary seven-day stay to allow NIKE time to seek a stay from this Court.  2-ER-013.

NIKE filed its Notice of Appeal from the Unsealing Order with the District Court on January 9, 2024.  3-ER-378.  The next day, NIKE filed an Emergency Motion for a Stay Pending Appeal (the "Emergency Motion") with this Court to avoid the immediate and irreparable harm to the non-parties stemming from widespread publication of their names, and to preserve the subject matter of NIKE's appeal.  Dkt. 3.1.  On January 11, 2024, this Court issued an administrative stay of the District Court's order "pending resolution of the motion for a stay pending appeal."  Dkt. 6.1.  Pursuant to their request, Dkt. 7.1, on January 17, 2024, the Media Intervenors were added as parties to this appeal.  Dkt. 9.1.  On January 19, 2024, this Court granted NIKE's Emergency Motion, staying the District Court's Order during the pendency of NIKE's appeal.  Dkt. 12.1.

## SUMMARY OF ARGUMENT

As noted in the incorporated introduction, the core of this appeal is about the privacy interests of non-litigants—people who have not chosen to place themselves in the public spotlight.  The District Court below created a situation where people may be forced into the spotlight even though they never bargained for it and may not have chosen to raise a concern if they were aware of the

potential for widespread public disclosure.  That was error and error in multiple ways.

First, the District Court erroneously applied a "compelling reasons" standard to whether non-parties' names should be unsealed in the Documents accompanying Plaintiffs' class certification motion.  This Court has confirmed that the "good cause" standard applies to judicial records that are "unrelated" or "only tangentially related" to the underlying merits of the case.  *Phillips*, 307 F.3d at 1213.  Here, names were submitted under seal on a motion for class certification, which according to this Court, is not a ruling on the merits.  Nor was the District Court's denial of the class certification motion based on the Documents (or purported claims of harassment).

The District Court concluded that Plaintiffs failed to meet Rule 23's class certification standards.  The order below did not terminate the litigation and did not rule on the merits.  It is thus not dispositive on the merits, and under *Chrysler*, 809 F.3d at 1099, the "good cause" standard should have been applied here with respect to the public's right of access to judicial records that are "unrelated" or "only tangentially related" to the merits of the litigation.

Second, the District Court abused its discretion in holding that the non-parties' names could not remain sealed regardless of the standard applied.  Courts routinely find that non-party privacy interests are compelling reasons that

outweigh the right of public access to judicial records. *Moussouris,* 2018 WL 1159251, at *6; *Gnassi*, 2022 WL 3867376, at *3. This is especially true where, as here, only the *non-parties' names* were sealed. As this Court has found, "[s]imply redacting the identifying information of third parties (*e.g.,* their names, addresses, telephone numbers, and social security numbers) from these records and disclosing the remaining information would not injure the third parties but would reveal only" the necessary substance related to the merits. *Foltz,* 331 F.3d at 1137.

Because the substance of the Documents had been publicized years ago, and because the record shows that the Media Intervenors seek the non-parties' names to "gratify private spite, promote public scandal, [or] circulate libelous statements," the limited redactions at issue were necessary and appropriate to protect the privacy interests of non-litigants. *In re Midland Nat'l Life Ins. Co Annuity Sales Practices Litig.*, 686 F.3d 1115, 1120 (9th Cir. 2012). Otherwise, the non-party individuals named in the documents (accusers, accused, and alleged witnesses) would face public scrutiny they did not seek or to which they did not consent (as they would be tied to workplace allegations, including those that are sexual in nature) without an ability to respond to the unverified allegations or defend their reputations. Their names would be used in headlines without regard to their wellbeing (including mental health concerns) or the impact on personal and professional relationships. Sealing is necessary to avoid such intrusion into

these individuals' personal lives, and the District Court's failure to recognize as much constitutes error.

## ARGUMENT

In reversing the District Court's unsealing order below and protecting the identities of non-litigants, this Court can look to one of two errors or both. The court below abused its discretion by (1) applying the wrong standard, and (2) misapplying the substantive law regardless.

## I.     A "GOOD CAUSE" STANDARD APPLIES IN THIS CASE.

### A.     The "Good Cause" Standard Applies to Nondispositive Motions.

The District Court erred in applying the "compelling reasons" standard to determine whether to unseal the identities of non-party individuals who have no relation to the merits of the underlying proceeding. 1-ER-008 ("defendant must show compelling reasons to continue redaction of the names of those making workplace complaints along with the names of witnesses and subjects of and to the complaints."). This Court has held that whether litigation records can be sealed, or in this case, unsealed is generally governed by two standards, depending on the nature of the documents and their use in the underlying proceeding. *Pintos v. Pac. Creditors Ass'n*, 565 F.3d 1106, 1115 (9th Cir. 2009), *superseded on other grounds*, 605 F.3d 665 (9th Cir. 2010). For most judicial records, courts will apply a "compelling reasons" standard due to the presumptive right of access to the bases

15

for judicial rulings.  *Id*.  However, a different standard applies to "private materials unearthed during discovery" and "previously sealed discovery attached to a nondispositive motion."  *Id*.; *Phillips*, 307 F.3d at 1213.  For the latter materials, Rule 26(c) of the Federal Rules of Civil Procedure governs, providing that a trial court may grant a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  *Pintos*, 565 F.3d at 1115.

The rationale behind the "good cause" standard for discovery materials and materials attached to nondispositive motions lies in the lessened need for the public to access records that are "unrelated" or "only tangentially related" to the underlying merits of the case.  *Phillips*, 307 F.3d at 1213.  In this context, "nondispositive motions" are motions that are unrelated or only tangentially related to the underlying merits of the proceeding.  *Chrysler*, 809 F.3d at 1099.

By entering a Protective Order below, the District Court "already has determined that 'good' cause exists to protect this information from being disclosed to the public by balancing the needs for discovery against the need for confidentiality."  *Phillips*, 307 F.3d at 1213.  Applying a strong presumption of public access to documents produced under a protective order that is not directly relevant to the merits of a case would "eviscerate the 'broad power of the District Court to fashion protective orders.'"  *Id*.  Instead, when a sealed document is attached to a non-merits motion, "the party *seeking disclosure* must present

16

sufficiently compelling reasons why the sealed discovery document should be released." *Id.* (emphasis added).

### B.   <u>The Motion for Class Certification Was Not Related to the Merits of the Case.</u>

The class certification briefing here—which resulted in a conclusion that Plaintiffs failed to meet their burden to show that the matter may proceed on a class-wide basis—is not more than tangentially related to the merits of the case. Whether a "good cause" standard may apply to a motion for class certification is an issue of first impression in this Court. *True Health Chiropractic, Inc. v. McKesson Corp.*, No. 13-cv-02219-HSG, 2019 WL 11743580, at *2 (N.D. Cal. Aug. 13, 2019).[3]

Instructive to the analysis here is this Court's ruling in *Chrysler*, 809 F.3d at 1099. As explained above, the Court clarified in *Chrysler* that the use of

---

[3] However, several district courts have held that class certification briefing is non-dispositive and, thus, invokes the "good cause" standard. *Sessa v. Ancestry.com Operations Inc.,* 2No. 2:20-cv-02292-GMN-BNW, 2023 WL 1795856, at *1 (D. Nev. Feb. 6, 2023) ("courts generally hold that the standard for filing documents under seal in relation to a class certification motion is a showing of 'good cause.'") (citation omitted) ; *Ferris v. Wynn Resorts Ltd.*, No. 2:18-cv-00479-APG-BNW, 2023 WL 1767797, at *1 (D. Nev. Jan. 12, 2023) (same) (citation omitted); *In re Xyrem Sodium Oxybate Antitrust Litig.*, No. 20-md-02966-RS, 2023 U.S. Dist. LEXIS 118049, at *9 (N.D. Cal. July 10, 2023) (applying the "good cause" standard to documents submitted with class certification briefing); *Kautsman v. Carrington Mortg. Servs., LLC*, No. C16-1940-JCC, 2017 U.S. Dist. LEXIS 153550, at *2-3 (W.D. Wash. Sept. 19, 2017) (finding good cause existed to seal documents filed to support the non-dispositive class certification motion).

"dispositive" versus "nondispositive" focuses on whether the matter at issue is "more than tangentially related" to the underlying merits of the proceeding. *Id*. The Court was tasked with determining whether a preliminary injunction motion, which sought an order "requiring Chrysler to adequately disclose and repair the [vehicle] defect," was dispositive. *Id*. at 1102 (alteration in original). The Court discussed preliminary injunction motions generally, noting that they are "extraordinary and drastic remedies," which certainly affect litigants' "substantive rights." *Id*. at 1100 (citation omitted). The Court also noted the importance of such motions on issues affecting the constitutional and other rights of individuals not involved in the particular litigation. *Id*. at 1101 (mentioning the impact on equal protection, separation of powers, citizenship, etc.). Thus, this Court found that it would not make sense to draw the line at "nondispositive" motions in their traditional meaning because their importance may warrant public access in the right circumstances. *Id*.

Careful not to create a "bright line rule" in the opposite direction, however, this Court instead focused on the particulars of the preliminary injunction motion at issue to determine whether it was more than tangentially related to the merits of the case. *Chrysler*, 809 F.3d at 1100.[4] In holding that the motion was dispositive, the

---

[4] This approach, which evaluates the specific motion at hand, has been followed by other courts. *Philips v. Ford Motor Co.*, No. 14-CV-02989-LHK, 2016 WL 7374214, at *2 (N.D. Cal. Dec. 20, 2016) ("The Court need not decide whether, in general, motions for class certification are more than tangentially related to the underlying cause of action . . . . Instead, the Court merely decides that the instant

Court in *Chrysler* noted that "[i]f plaintiffs had succeeded in their motion for preliminary injunction, they would have ***won a portion of the injunctive relief*** they requested in the underlying complaint, and ***that portion of their claims would have been resolved***." 809 F.3d at 1102 (emphasis added). Thus, while not turning solely on whether the motion is dispositive in the traditional sense, this Court evaluated the *decisive impact* of the motion on the claims and remedies themselves.

Class certification motions under Federal Rule of Civil Procedure 23, on the other hand, neither can award any portion of the relief sought nor resolve any part of a plaintiff's claims. The Supreme Court has held that class certification motions are "procedural." *Deposit Guar. Nat'l Bank*, 445 U.S. at 336 ("We view the denial of class certification as an example of a procedural ruling . . ."). The class inquiry hinges not on the merits of the plaintiffs' underlying claims, but rather on whether the "named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011). A court tasked with determining a class certification motion looks only to the requirements for class status—*i.e.*, numerosity, commonality, typicality, adequate representation, and predominance. *Id*. "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the [class] certification stage." *Amgen Inc. v. Conn. Ret. Plans*

---

motion for class certification meets this standard.") (internal quotation marks omitted) (internal citation omitted).

*& Tr. Funds*, 568 U.S. 455, 466 (2013). "To hold otherwise would turn class certification into a mini-trial, when the purpose of class certification is merely to select the metho[d] best suited to adjudication of the controversy[.]" *Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1053 (9th Cir. 2015) (internal quotation marks and citation omitted). More recently, this Court has explained that "merits question[s]" "should be left for summary judgment or trial, not at class certification." *Miles* 89 F.4th at 1224 n.2.

Under *Pintos* and *Chrysler*, this Court's own characterizations of class-certification motions compel the outcome. The lower "good cause" standard applies to the question of whether the *identities* of non-litigants should remain sealed.

A comparison here is helpful. Preliminary injunctions *can* be dispositive and thus the sealing standard can be higher, but for a reason. The questions are different. The preliminary injunction explicitly requires the examination of the merits to determine the likelihood of success thereof at trial. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). At class certification, however, a District Court is limited to resolving whether the evidence establishes that a common question is capable of class-wide resolution and resolution of the merits *is to be avoided*. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 667 (9th Cir. 2022) (en banc), *cert denied sub nom. Starkist Co. v. Olean Wholesale Grocery Coop., Inc.*, 143 S. Ct. 424 (2022); *Miles* 89 F.4th at 1224 n.2. Preliminary

20

injunction results in relief (a merits-based injunction); class certification is but a procedural mechanism. They are different.

Second, using the evidence submitted on the merits question on a preliminary injunction motion, a court may order a "final disposition of the merits by granting summary judgment on *the basis of the factual record available at the preliminary injunction stage*," *Hooper v. City of Seattle*, No. C17-0077RSM, 2020 WL 3100855, at *2 (W.D. Wash. June 11, 2020) (emphasis added). No such similar treatment of class certification records on summary judgment exists. *See, e.g.*, *Baghdasarian v. Amazon.com, Inc*, No. CV 05-8060 AG (CTx), 2009 WL 4823368, at *4 (C.D. Cal. Dec. 9, 2009) ("So while the Court previously held that Plaintiff had standing for class certification purposes, the earlier holding does not automatically extend to the summary judgment stage."), *aff'd*, 458 F. App'x 622 (9th Cir. 2011), *superseded by Microsoft Corp., v. Baker*, 582 U.S. 23, (2017).

Third, preliminary injunctions are immediately appealable because they are "designed to *accord* or *protect* some or all of the *substantive relief* sought by a complaint in more than a temporary fashion." *Dominguez v. Better Mortg. Corp.*, 88 F.4th 782, 796 (9th Cir. 2023) (emphasis added); 28 U.S.C. § 1292(a)(1). Class certification orders, by contrast, can only be appealed on an interlocutory basis with court permission. *See, e.g.,* Fed. R. Civ. P. 23(f); *Coopers & Lybrand v. Livesay*,

437 U.S. 463, 467-69 (1978) (order refusing to certify a class is generally not an appealable collateral order).

Finally, preliminary injunction motions may have a forceful consequence on the substantive rights of the parties. Indeed, they are an "extraordinary remedy," *Patricia Fox, O.D. v. Vision Serv. Plan,* No. 2:16-cv-2456-JAM-DB, 2017 WL 735735, at *2 (E.D. Cal. Feb. 24, 2017), in which their very purpose is to restrict certain actions or impose conduct to preserve the status quo based on the assumption that plaintiffs will be successful on their claim, ultimately securing some of the relief that plaintiff may be seeking in the first instance. *See Chrysler*, 809 F.3d at 1101; *see also Davis v. Cloak,* No. 1:22-cv-01632-JLT-HBK (PC), 2023 WL 7153852, at *3 (E.D. Cal. Oct. 31, 2023) ("Prohibitory injunctions prevent a party from acting, thus maintaining the status quo. [ ] A mandatory injunction directs some responsible party to act."), *R. & R. adopted*, 2023 WL 8527172 (E. D. Cal. Dec. 8, 2023). Class certification motions are not so efficacious in accelerating the merits of a proceeding. They cannot award plaintiffs any relief or bar any relief moving forward. *See Alcantar*, 800 F.3d at 1053 (the "purpose" of class certification is to select the best format for adjudicating the claims) (citation omitted). They cannot impose any barrier to conduct or require any action from defendants. *Id*. They "*merely [ ] select the metho[d] best suited to adjudication of the controversy fairly*

*and efficiently*[,]" governing the framing for the case moving forward—a decision that is, in itself, non-final. *Id*. (emphasis added); Fed. R. Civ. P. 23.

Put simply, the considerations that this Court highlighted in finding that the preliminary injunction motion in *Chrysler* was more than tangentially related to the merits of the case are not present with most class certification briefings. That is the case here. In the class certification briefing, the parties argued only regarding the elements necessary to establish or prevent class certification. The Magistrate ultimately made no findings on the merits, holding only that Plaintiffs failed to present evidence to meet their burden of showing the Rule 23 requirements. *See* 2-ER-178 (insufficient "evidence to demonstrate a common policy or standard operating procedure"), 2-ER-197 (plaintiffs "fail to establish a common mode of exercising discretion applied to virtually all hiring decisions made at NIKE headquarters"), 2-ER-198 ("The failure to point to a common and required policy in the hiring process precludes a common analysis"). And the order confirmed that the Court "should not 'advance a decision on the merits to the class certification stage.'" 2-ER-188 (citing *Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003)). Plaintiffs were permitted to pursue (and are pursuing) their claims on an individual basis.

All of this confirms that the District Court applied the wrong standard. By looking to the higher "compelling reasons" standard instead of the "good cause" standard, the Court below abused its discretion. *Haw. Dep't of Educ.*, 600 F.3d at

1111 ("A District Court that applied the incorrect legal standard necessarily abused its discretion.") (citation omitted).  At a minimum, this Court should vacate the order below and remand for consideration under the proper standard.

And though it does not control the analysis—the form of the motion does—there is no evidence that the names of the complainants, witnesses, or alleged persons of interest in the Documents had any bearing on the District Court's denial of class certification, let alone the merits of their underlying pay and promotions claims.  *Fitzhenry-Russell v. Dr. Pepper Snapple Grp.*, *Inc.*, No. 17-cv-00564 NC, 2018 WL 10472795, at *1 (N.D. Cal. Apr. 23, 2018) (evaluating the "sealed portions" relation to the merits of the case to determine which sealing standard applied); 2-ER-205.    Further, the substance of the Documents—claims of harassment—is already public.  The *only* information left sealed are the names of non-party individuals.  The public already has all of the information that could bear on the District Court's decision on class certification.    Names in unverified complaints undoubtedly were not the deciding factor in finding that Plaintiffs did not carry their burden to demonstrate commonality.  2-ER-205. The reasoning behind the compelling reasons standard (*i.e.*, access to the records supporting judicial determinations) simply is not implicated where the facts relevant to the judicial decision are publicly available, whether the motion is truly dispositive or not.  To hold otherwise would encourage litigants to file inflammatory but irrelevant

material in conjunction with "dispositive" motions with the hope that the "compelling reasons" standard would thwart sealing of such material, even if covered by a protective order.

## II.     UNDER EITHER STANDARD, NIKE SET FORTH AN APPROPRIATE JUSTIFICATION FOR SEALING.

Alternatively, and as a second ground for reversal and/or vacatur, the Court below got the law wrong even under the standard it applied.  In that, too, it abused its discretion, as a "District Court by definition abuses its discretion when it makes an error of law."  *Koon*, 518 U.S. at 100 (citation omitted).

### A.     The Weight of Authority Holds that Non-Party Privacy Interests are Compelling Reasons to Justify Sealing.

Although the District Court should have applied the "good cause" standard to the sealed names, NIKE also demonstrated compelling legal support for respecting the privacy of the non-litigants, meeting even the "compelling reasons" standard.  The District Court's rejection of such reasons in applying the "compelling reasons" standard was an abuse of discretion.

In making the "compelling reasons" determination, *Foltz*, 331 F.3d at 1135, courts should consider all relevant factors, including:

> the public interest in understanding the judicial process and whether disclosure of the material could result in improper use of the material for scandalous or libelous purposes or infringement upon trade secrets. . . . After taking all relevant factors into consideration, the

District Court must base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture.

*Id*.

As a matter of law, this Court has found that "compelling reasons" exist when judicial records could be used to "gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *In re Midland,* 686 F.3d at 1120. Based on this principle, courts routinely find, as a matter of law, that "compelling reasons" exist to seal personally identifiable information, such as names, addresses, phone numbers, and email addresses of non-parties. *See, e.g.*, *Moussouris,* 2018 WL 1159251, at *6 (sealing names of non-party employees who raised allegations that they were discriminated against or harassed while employed by Microsoft); *Stiner v. Brookdale Senior Living, Inc.,* No. 17-cv-03962-HSG, 2022 WL 1180214, at *1 (N.D. Cal. Mar. 29, 2022) (sealing the names and addresses of nonparty family members); *United States v. Mayers*, No. CR16-0258-JCC, 2017 WL 2215805, at *2 (W.D. Wash. May 19, 2017) (sealing the identifying personal information about a third party in a police report); *Romero v. County of Santa Clara*, No. 11-cv-04812-WHO, 2014 WL 12641990 , at *2 (N.D. Cal. June 17, 2014) ("the personal identifying information of third parties with a need for privacy, such as hospital patients, is sealable"); *Music Grp. Macao Com. Offshore Ltd. v. Foote*, No. 14–cv–03078–JSC, 2015 WL 3993147, at *2 (N.D.

Cal. June 30, 2015) ("Disclosure of [identifying] information would infringe the privacy rights of [third party individuals], which constitutes a compelling reason for sealing.") (alterations added).

Redacting such information protects the important privacy interests of non-parties and safeguards them from unwarranted "harassment, embarrassment, or ridicule." *Reflex Media, Inc. v. Doe*, No. 2:18-cv-02423-RFB-BNW, 2022 WL 2985938, at *2 (D. Nev. July 28, 2022), (sealing names of "victims of the alleged extortion business underlying this case"); *see also In re Bofi Holding, Inc. Sec. Litig.*, No. 3:15-CV-02324-GPC-KSC, 2016 WL 5390533, at *16 (S.D. Cal. Sept. 27, 2016) (finding "fear [of] retaliation and potential harassment" constitute "compelling reasons that outweigh the public's interest in disclosure" of the identities of confidential witnesses).  And because the names of non-parties generally do not bear on the underlying merits of the case or the motion at issue, these "important privacy concerns . . . outweigh the public's interest in disclosure." *Iron Workers Local 580 Joint Funds v. Nvidia Corp.*, No. 18-cv-07669-HSG, 2021 U.S. Dist. LEXIS 38963, at *5 (N.D. Cal. Mar. 2, 2021) ("personally identifying information of FE-5, a nonparty, is 'not relevant to the disposition of this case'") (citation omitted); *see also Hunt v. Cont'l Cas. Co.*, No. 13–cv–05966–HSG, 2015 WL 5355398, at *2 (N.D. Cal. Sept. 14, 2015) (finding the names of nonparties "implicate[d] important privacy concerns" and those names were "not relevant to

27

the disposition of th[e] case"); *UNIFYSCC v. Cody*, No. 22-cv-01019-BLF, 2023 WL 6998184, at *2 (N.D. Cal. Oct. 20, 2023) (sealing employee identification numbers because the numbers "are not material to the motion to certify class").

Indeed, based on similar reasoning, this Court has acknowledged that redacting non-party names is a sufficient means of protecting these important privacy interests, while maintaining the presumption of public access to information that actually bears on the merits of a case. *See Foltz,* 331 F.3d at 1137 ("Simply redacting the identifying information of third parties (*e.g.,* their names, addresses, telephone numbers, and social security numbers) from these records and disclosing the remaining information would not injure the third parties but would reveal only State Farm's actions in processing personal injury claims.").

NIKE put this case law before the Court below.  2-ER-116 & 2-ER-077-78. The District Court did not follow it.  This was legal error.

The Media Intervenors have published articles relating to this case, including of the unofficial, unverified, and unsubstantiated assertions made in the Documents.  Much of this information was and is sensitive, including claims of sexual relationships with colleagues.  But this is no harassment case.  The core allegations here relate to whether Plaintiffs were paid and promoted fairly for the work they performed.

28

The Media Intervenors' apparent desire to unredact the non-parties' names is driven by the mantra that, *if it bleeds, it leads*.  The promotion of "public scandal" does not justify accessing confidential records.  *In re Midland*, 686 F.3d at 1120. Rather, it is the type of improper purpose that case law holds to be a compelling reason to justify sealing.  *See, e.g.*, *Sentynl Therapeutics, Inc. v. U.S. Specialty Ins. Co.*, No. 19cv1667-LAB-AHG, 2021 WL 794271 , at *3 (S.D. Cal. Mar. 1, 2021) ("[a]voiding the risk" of "exposing those individuals to harassment" is a "compelling reason"); *In re BofI*,  2016 WL 5390533, at *16 (finding "fear [of] retaliation and potential harassment" constitute "compelling reasons that outweigh the public's interest in disclosure" of the identities of confidential witnesses). Nonetheless, the District Court agreed with the Media Intervenors, citing case law holding that a "*litigant's* embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records."  1-ER-009 (citing *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) (emphasis added)).

Both the District Court and the Media Intervenors relied on inapposite case law.  The cases they cite hinge on a *litigant's* desire for privacy instead of analyzing the interests of *non-parties* having a reasonable expectation of privacy and for whom the litigation did not (and does not) create a forum to test the veracity of assertions made in the Documents.  1-ER-009 (*citing Bracken v. Fla.*

29

*League of Cities*, No. 1:19-cv-00602-CL, 2019 WL 1867921, at *4 (D. Or. Apr. 24, 2019) (finding the plaintiff's request to seal the entire case for privacy reasons did not constitute compelling reasons where the Court reviewed the complaint for personal information and found no information inappropriate for public disclosure)).  But NIKE pointed to them, and points to now, that as a matter of law, the privacy interests of litigants and non-litigants are not the same.  NIKE is not seeking to protect a *litigant's* privacy or against a *litigant's* embarrassment.  Nor is NIKE seeking to seal entire records because the allegations here have all been publicized.  The limited redactions concern only *non-party names*.

The District Court cited *Price v. Equilon Enters. LLC*, No. C11-1553-JCC, 2012 WL 12846100, at *1 (W.D. Wash. 20, 2012); 1-ER-010-11.  But this too was in error.  In *Price*, the court declined to redact just one third party name because *his* behavior, as attested to in the relevant document, went directly to the plaintiff's claim that her employer maintained a hostile work environment.  2012 WL 12846100, at *1.  Indeed, the plaintiff specifically noted "experienc[ing] harassment and belittling comments" from that individual.  *Id*.  Notably, for other third parties, the *Price* court found that redacting those individuals' names is "feasible."  *Id*.  Similarly, here, NIKE only seeks to redact the non-parties' *names*, particularly where, as here, the Plaintiffs do not claim any allegations involving these individuals.

30

Thus, by relying on the Media Intervenors' inapposite case law and failing to acknowledge or distinguish the authority offered by NIKE, 2-ER-077-78, the District Court failed to account for the fact that the *law* affords different weight to the privacy interests of litigants and non-litigants. *See, e.g.*, *SEC v. Ripple Labs, Inc.*, 20 Civ. 10832 (AT), 2023 WL 3477552, at *6 (S.D.N.Y. May 16, 2023) ("The privacy interests of innocent third parties . . . should weigh heavily in a court's balancing equation when deciding whether to seal certain materials") (quoting *Mirlis v. Greer*, 952 F.3d 51, 61 (2d. Cir. 2020)); *see also Arroyo v. Rosas*, 19 F.4th 1202, 1214 (9th Cir. 2021) (remanding district court order under abuse of discretion standard when it misapplied the second step of the applicable test "there are 'compelling reasons' for declining supplemental jurisdiction in this case."). In fact, there are "compelling reason[s] that support[ ] the sealing of the non-party's personal identifying information."[5] *In re Volkswagen "Clean Diesel" Mktg.*, MDL No. 2672 CRB (JSC), 2017 U.S. Dist. LEXIS 176327, at *721 (N.D. Cal. Oct. 24, 2017) (sealing employee names that are irrelevant to the action).

---

[5] To the extent that the District Court believed that NIKE sought to seal the non-parties' names to protect itself, that assumption should be rejected. NIKE did not argue that *it* would be harmed by the unsealing of the individuals' names, and it does not do so now. The substance of the allegations are unsealed and has been the subject of widespread publicity. NIKE seeks only to protect its current and former employees from unnecessary and unwarranted harm.

**B.**     **Non-Party Privacy Interests Outweigh Public Access to the**

**Identities of Complainants, Subjects, and Alleged Persons of**

**Interest.**

NIKE suspects that, in opposition, the Media Intervenors will argue that

non-party privacy interests could not compete against the public's right to "learn

about the judicial process" and "the bases behind judicial decisions." 2-ER-138.

This argument misses the point. The public has a right to know how courts make

decisions; however, the public does *not* have the unfettered right to invade the

privacy rights of non-litigants (much like there is no right to the public disclosure

of trade secrets or to grand jury proceedings). Instead, a balance can be struck and

that balance, here, was the status quo before the unsealing order issued.

Namely, the Media Intervenors were allowed to access the *substance* of the

Documents without knowing the identities of those involved. Yet, there are no

allegations against the non-parties, and Plaintiffs have presented no evidence to

demonstrate that the non-parties (or any of the salacious allegations) are connected

to the named Plaintiffs such that disclosure is needed for the public to understand

the bases for the denial of class certification. *In re Volkswagen,*, 2017 U.S. Dist.

LEXIS 176327, at *721 (sealing employee names in records that are not mentioned

in the complaint); *see also* 2-ER-205; *Hunt.*, 2015 WL 5355398, at *2 (redacting

names because they were not relevant to the case); *L.W. v. Snap Inc.*, 675 F. Supp.

32

3d 1087, 1102 (S.D. Cal. 2023) ("[T]he 'public has a minimal interest' (if any at all) in knowing the specific names displayed in" the moving papers). Whether a witness was named "Jane" or "Mary" would have zero bearing on the denial of class certification.

The District Court, however, held that the "identity of Nike employees engaged in the very behavior plaintiffs asserted in discrimination certainly bear on plaintiffs' claims." 1-ER-010. The court offered no explanation or authority for that pronouncement. Nor are the non-parties' names relevant for credibility determinations. The District Court denied class certification because Plaintiffs failed to submit evidence of a companywide policy or practice, not because the identities of non-parties (or their credibility) had been questioned. 2-ER-205. There is simply no reason—in a quest to know how courts work—for the names of non-litigants to be disclosed. It teaches nothing other than confirming the Media Intervenors' quest for gossip.

In short, the Media Intervenors seek the non-party's names for an improper purpose. *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 727 F.3d 1214, 1228 (Fed. Cir. 2013) (public right of access "does not extend to mere curiosity about . . . confidential information where that information is not central to a decision on the merits."). "The privacy interests of non-parties—most of whom raised allegations that they were discriminated against or harassed by [other NIKE employees]—

33

outweighs the public's interest in knowing the identity of the non-parties. Such information is private to the individuals involved, who have not sought to place that information in the public sphere." *Moussouris*, 2018 WL 1159251, at *6 (citation omitted).

The District Court's ruling was contrary to law and the facts. The non-litigants here are named in *confidential* sensitive Documents. The redactions concern only "limited portions"—here, the names—which "[are] not essential to the public's understanding of the" district court's class certification award. *Apple*, 727 F.3d at 1225. "[T]he public therefore has minimal interest in this information." *Id*. (district court abused its discretion by refusing to seal product-specific financial information because the parties "could suffer competitive harm if this information is made public," as was obvious from the fact that the public would have access to their profit, cost, and margin data). Put simply, "there [was] a compelling reason in this case for overriding the common-law right [of access] and that, in failing to identify that reason on the basis of the record before it, the district court abused its discretion." *Perry v. Brown*, 667 F.3d 1078 (9th Cir. 2012); *see also In re Copley Press, Inc.*, 518 F.3d 1022, 1029 (9th Cir. 2008) ("The district court did abuse its discretion [ ] in unsealing those parts of the documents that concern the other people in danger" because "there remains a substantial

probability that unsealing the information contained therein will endanger these people.").

### C.    NIKE Met its Burden in Demonstrating Compelling Reasons.

The District Court also erred when it held that NIKE relied on "generalized assertions" of compelling reasons to redact the non-party's names.  1-ER-009. Such holding is an error of law because it ignores the substantial case law described above holding that non-party privacy interests—especially where the names are "unrelated" or "only tangentially related" to the merits—outweigh the right of access to such information.  *See supra* at Section II.A.; *see also, e.g.*, *Bravo v. City of Santa Maria*, 810 F.3d 659, 668 (9th Cir. 2016) ("[Court remanded to] the district court [because it] erred by applying the incorrect legal standard" by ignoring prior case law preventing double recovery of attorney fees.); *Lozano v. Cabrera*, No. 22-55273, 2023 WL 2387583, at *2 (9th Cir. Mar. 7, 2023) ("The district court did abuse its discretion in imposing Rule 11 sanctions," when it failed to apply prior appellate ruling stating the primary focus of Rule 11 proceedings was the district court's determination of "whether the complaint is legally or factually 'baseless' from an objective perspective.") (citing *Christian v. Mattel, Inc.,* 286 F.3d 1118, 1131 (9th Cir. 2002)).

The ruling is illogical and contrary to the facts in the record because, as NIKE argued below, there would be substantial harm and prejudice to non-

litigants.  Dkt. No. 345 at 13-17; *see, e.g.*, *Lambright v. Ryan*, 698 F.3d 808, 822 (9th Cir. 2012) (district court abused its discretion in rejecting a claim of privilege because the defendant failed to explain why the documents were privileged when the order only required him to identify the documents); *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011) ("The district court abused its discretion by failing to consider these substantial benefits or defendants' bad acts in determining whether to award attorney's fees.").

First, the issues raised in the Documents are unverified and unsubstantiated. 2-ER-119.  If their names are publicly released, these individuals likely would be exposed to ridicule, embarrassment, and/or harassment without a forum to test the allegations or to protect their own reputations and personal/professional interests. *See United States v. Amodeo*, 71 F.3d 1044, 1052 (2d Cir. 1995) (district court abused its discretion in unsealing portions of a report containing unsworn accusations of doubtful veracity because the accusations were "hearsay" and there was a likelihood of "mislead[ing] rather than inform[ing] the public.").

Likewise, the complainants who purportedly raised concerns did so with a reasonable expectation of privacy.  Unredacting their names betrays any confidential reporting process and risks a chilling effect, which would, in turn, make victims (and witnesses) worse off.

Further, NIKE explained that the contents of the issues raised demonstrate the compelling reasons to keeping the names sealed. In retort, the Media Intervenors have argued that NIKE should have submitted affidavits to identify compelling reasons, citing *Foltz*. *See, e.g.*, Dkt. No. 7.2 at 15 ("the proponent of sealing must present arguments 'supported *where possible* by affidavits and concrete examples, rather than broad conclusory allegations of potential harm'") (emphasis added). But *Foltz* neither requires an affidavit nor supports this conclusion.

As explained *supra*, this Court noted in *Foltz* that while the defendant sought to seal the entirety of the records, the parties could easily "redact[ ] the identifying information of third parties" consistent with the "compelling reasons" standard. *Foltz*, 331 F.3d at 1137. This is what NIKE has done. Moreover, requiring affidavits would make little sense in these circumstances. The very individuals that NIKE seeks to protect cannot be required to publicly offer their identity and additional personal and private information to justify why revealing their names would harm them. It would moot the point, if not compound the harm, producing an absurd result.[6] Where, as here, the substance of the allegations are already

---

[6] The District Court's analysis below suggests that, in every circumstance where an employer seeks to protect the privacy rights of its employees (accuser and accused alike), it needs a declaration from that employee attesting to the desire for privacy. That is unworkable. What if the employees have left? What if they ask for the advice of counsel while active litigation and quick filings are needed? Isn't

37

public, it is not difficult to imagine the harm that would result from connecting a non-litigant's identity to the allegations contained in the Documents. *Foltz* supports NIKE's position. *Id*. The District Court abused its discretion.

Finally, despite the obvious harm here, NIKE provided specific examples of the harm to non-parties. For example, NIKE explained that, in Exhibit 52 of the Sun Declaration, there is an *anonymous* complaint that two individuals engaged in a sex act at some point while employed at NIKE.[7] Moreover, Exhibit 47 of the Sun Declaration accuses a NIKE employee of being a bully and others of being "philanderers." 2-ER-079. Exhibit 51 of the Sun Declaration alleges that an individual made inappropriate comments about the dress and body of the anonymous complainant. *Id*. Exhibit 9 of the Goldstein Declaration includes complaints with the names of women who allegedly complained about gender discrimination and the subjects of those complaints. *Id*.

These specific examples are of individual names the Media Intervenors seek to unseal. *Cf. Foltz,* 331 F.3d at 1137 (noting that State Farm failed to identify compelling reasons for failing "to identify where in the documents confidential

---

it better that the privacy rights of non-litigants be protected where, as here, the law presumes their interest in privacy? And, in a world where employers are expected to allow for confidential and respected internal grievance processes, how does this high bar support participation in those processes? The District Court's analysis confronts none of this, and in departing from other law endorsing the showing NIKE made, it erred as a matter of law.

[7] The complaint neither alleges nor suggests that the act was non-consensual.

financial information and trade secrets are to be found"). NIKE argued below that disclosure of the names of individuals identified in connection with these allegations, and others, is likely to result in personal and/or professional harm.

Courts routinely protect non-parties when faced with this extreme potential for harm. *See, e.g.*, *Reflex Media,* 2022 WL 2985938, at *2 (sealing personal identifying information of victims of the alleged extortion business); *United States v. Chow*, No. 14–cr–00196–CRB (JCS), 2015 WL 5094744, at *4 (N.D. Cal. Aug. 28, 2015) (protecting the privacy of unindicted third parties and protecting the identities of undercover law enforcement officers and confidential sources involved with allegations of public corruption by the indicted defendants because there is a significant potential that the association would tar their reputations).

The Media Intervenors did not identify any additional benefit to disclosing these individuals' names *to the public*, rather than their own personal desire to create "news." That is because there is none. The Court should, thus, find that the District Court abused its discretion in ordering the unsealing of the non-litigants' names.

## III.   <u>CONCLUSION</u>

Based on the foregoing, this Court should, at a minimum, vacate the District Court's order requiring the unsealing of the non-parties' names (1-ER-002, 1-ER-005). The Court can then either remand for consideration under the correct

39

standard, or as shown by the above, it could also direct the District Court to deny the motion given that NIKE has met its burden under any standard to show that the names of the non-litigants at issue here should remain confidential.

Date:  March 25, 2024              Respectfully submitted,

PAUL HASTINGS LLP

By: _____*s/Daniel Prince*_____
          DANIEL PRINCE

By: _____*s/Felicia A. Davis*_____
          FELICIA A. DAVIS

Attorneys for *Defendant-Appellant*
NIKE, INC.

40

## <u>STATEMENT OF RELATED CASES</u>

Pursuant to Circuit Rule 28-2.6, Defendant-Appellant NIKE, Inc. certifies

that no other cases in the Court of Appeals have been deemed related to this matter.

Date:  March 25, 2024                Respectfully submitted,

PAUL HASTINGS LLP

By: _____  *s/Daniel Prince* _____
         DANIEL PRINCE

Attorneys for *Defendant-Appellant*
NIKE, INC.

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** | 24-165

I am the attorney or self-represented party.

**This brief contains** | 9,325 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

(●) complies with the word limit of Cir. R. 32-1.

( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

( ) is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

[ ] it is a joint brief submitted by separately represented parties.

[ ] a party or parties are filing a single brief in response to multiple briefs.

[ ] a party or parties are filing a single brief in response to a longer joint brief.

( ) complies with the length limit designated by court order dated [            ].

( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/ Daniel Prince | **Date** | March 25, 2024

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**                                      42                                      *Rev. 12/01/22*

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that my firm electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on March 25, 2024.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Date:  March 25, 2024                    Respectfully submitted,

PAUL HASTINGS LLP

By: _____*s/Daniel Prince*_____
          DANIEL PRINCE

Attorneys for *Defendant-Appellant*
NIKE, INC.