## Docket No. 24-165

*In the*

# United States Court of Appeals

*for the*

# Ninth Circuit

---

KELLY CAHILL, et al.,

*Plaintiffs-Appellees,*

v.

NON-PARTY MEDIAL ORGANIZATIONS INSIDER INC.
d/b/a BUSINESS INSIDER, et al.,

*Non-Party Media Orgs.-Appellees,*

NIKE, INC.,

*Defendant-Appellant.*

_____

*Appeal from a Decision of the United States District Court for the District of Oregon,*
*No. 3:18-cv-01477-JR · Honorable Marco A. Hernández*

## REPLY BRIEF OF DEFENDANT-APPELLANT NIKE, INC.

DANIEL PRINCE, CA Bar No. 237112
FELICIA A. DAVIS, CA Bar No. 266523
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071-2228
Telephone: (213) 683-6000
Email: danielprince@paulhastings.com
Email: feliciadavis@paulhastings.com

*Attorneys for Defendant-Appellant*
*NIKE, INC.*

 COUNSEL PRESS · (213) 680-2300               PRINTED ON RECYCLED PAPER 

# <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ..................................................................................1

JURISDICTION: THE APPEAL IS *NOT* MOOT ..................................3

   I.     LEGAL ARGUMENT ........................................................5

         A.     The "Good Cause" Standard Applies to Plaintiffs' Class Certification Motion...............................................5

              1.     District Courts Have Continued to Apply the Good Cause Standard to Class Certification Motions Post-*Chrysler*.................................................9

              2.     This Court's Jurisprudence Already Recognizes the Distinction Between Class Certification and Class Settlement. One Involves the Merits, the Other Does Not.............................................10

              3.     This Court's Law Already Reflects Its Policy Decision and Looks to Whether the Motion Is Dispositive or Nondispositive. .....................................11

              4.     The Class Certification Motion Here Was Not More than Tangentially Related to the Merits...............12

         B.     NIKE Has Demonstrated Compelling Reasons for Sealing the Names of Non-Parties. .........................................16

         C.     Non-Parties' Privacy Interests Outweigh Any Claimed Public Interest Here..................................................24

   II.    CONCLUSION ................................................................26

STATEMENT OF RELATED CASES ......................................................27

CERTIFICATE OF COMPLIANCE.......................................................28

CERTIFICATE OF SERVICE ..............................................................29

i

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

C<small>ASES</small>

*Alcantar v. Hobart Serv.*,
  800 F.3d 1047 (9th Cir. 2015) .................................................................2

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013).......................................................................8, 9

*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
  727 F.3d 1214 (Fed. Cir. 2013) ...............................................24, 25

*Boyd v. Rubbermaid Com. Prods.*,
  No. 91-0083-H, 1992 WL 404398 (W.D. Va. Dec. 11, 1992)..........16

*Brigham v. Frontier Airlines, Inc.*,
  57 F.4th 1194 (10th Cir. 2023) ...............................................22, 23

*Brunson v. Lambert Firm PLC*,
  757 F. App'x 563 (9th Cir. 2018) ...............................................8

*Cove/Mallard Coal. v. United States Forest Serv.*,
  67 F. App'x 426 (9th Cir. 2003) ...............................................4

*Ctr. for Auto Safety v. Chrysler Grp., LLC*,
  809 F.3d 1092 (9th Cir. 2016) ("*Chrysler*").................................*passim*

*Cummings v. Connell*,
  402 F.3d 936 (9th Cir. 2005) ...................................................15

*Deposit Guar. Nat'l Bank v. Roper*,
  445 U.S. 326 (1980).......................................................2, 8, 9, 11

*Diaz-Ramos v. Hyundai Motor Co.*,
  501 F.3d 12 (1st Cir. 2007)......................................................15

*Duarte v. City of Stockton*,
  60 F.4th 566 (9th Cir. 2023), *cert. denied*
  143 S. Ct. 2665 (2023)...........................................................7

*Eli Lilly & Co. v. Gottstein*,
  617 F.3d 186 (2d Cir. 2010) ....................................................5

*Ferris v. Wynn Resorts Ltd.*,
  No. 2:18-cv-00479-APG-BNW, 2023 WL 1767797
  (D. Nev. Jan. 12, 2023) ..........................................................10

ii

*Foltz v. State Farm Mut. Auto. Ins. Co.*,
  331 F.3d 1122 (9th Cir. 2003) ...................................................................*passim*

*FTC v. Standard Fin. Mgmt. Corp.*,
  830 F.2d 404 (1st Cir. 1987).......................................................................21, 22

*Hunt v. Cont'l Cas. Co.*,
  No. 13-cv-05966-HSG, 2015 WL 5355398 (N.D. Cal. Sept. 14, 2015)...........20

*In re Midland Nat'l Life Ins. Co. Annuity Sales Pracs. Litig.*,
  686 F.3d 1115 (9th Cir. 2012) ................................................................6, 18, 26

*In re Roman Cath. Archbishop of Portland in Oregon*,
  661 F.3d 417 (9th Cir. 2011) ...............................................................................6

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
  No. MDL 2672 CRB (JSC), 2016 WL 11807130
  (N.D. Cal. Aug. 24, 2016)...............................................................................21, 25

*Kamakana v. City & Cnty. of Honolulu*,
  447 F.3d 1172 (9th Cir. 2006) ........................................................................6, 23

*Koerner v. Grigas*,
  328 F.3d 1039 (9th Cir. 2003) .............................................................................7

*Lessin v. Ford Motor Co.*,
  No. 19-CV-01082-AJB-AHG, 2024 WL 1164427
  (S.D. Cal. Mar. 18, 2024) ...................................................................................10

*Miles v. Kirkland's Stores, Inc.*,
  89 F.4th 1217 (9th Cir. 2024) ...............................................................................9

*Moser v. Benefytt, Inc.*,
  8 F.4th 872 (9th Cir. 2021) .................................................................................12

*Murphy v. Kavo Am. Corp.*,
  No. CV 11 0410 YGR, 2012 WL 1497489 (N.D. Cal. Apr. 27, 2012)........20, 21

*Music Grp. Macao Com. Offshore Ltd. v. Foote*,
  No. 14-CV-03078-JSC, 2015 WL 3993147 (N.D. Cal. June 30, 2015)............20

*N.D. ex rel. parents acting as guardians ad litem v. Hawaii Dep't of Educ.*,
  600 F.3d 1104 (9th Cir. 2010) ............................................................................16

*Oliner v. Kontrabecki*,
  745 F.3d 1024 (9th Cir. 2014) ............................................................................23

*Phillips ex rel. Ests. of Byrd v. Gen. Motors Corp.*,
  307 F.3d 1206 (9th Cir. 2002) .........................................................6, 10, 12, 15

iii

*Pintos v. Pac. Creditors Ass'n*,
   605 F.3d 665 (9th Cir. 2010) ................................................................6

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
   442 F.3d 741 (9th Cir. 2006) ...............................................................11

*Sali v. Corona Reg'l Med. Ctr.*,
   909 F.3d 996 (9th Cir. 2018) ...............................................................11

*Sessa v. Ancestry.com Operations Inc.*,
   No. 2:20-CV-02292-GMN-BNW, 2023 WL 1795856
   (D. Nev. Feb. 6, 2023) .........................................................................10

*Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*,
   825 F.3d 299 (6th Cir. 2016) ...................................................9, 10, 11

*Stockwell v. City & Cnty. of San Francisco*,
   749 F.3d 1107 (9th Cir. 2014) .............................................................15

*Tinoqui-Chalola Council of Kitanemuk & Yowlumne Tejon Indians v. U.S. Dep't of Energy*,
   232 F.3d 1300 (9th Cir. 2000) ...............................................................4

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442 (2016) .............................................................................11

*United States v. Amodeo*,
   71 F.3d 1044 (2d Cir. 1995) ................................................................18

*United States v. Sleugh*,
   896 F.3d 1007 (9th Cir. 2018) .......................................................14, 15

**STATUTES**

28 U.S.C. § 2072 ........................................................................................15

29 U.S.C. § 206(d) (EQUAL PAY ACT) .....................................................16

**RULES**

FED. R. CIV. P. 23 ...............................................................................11, 15

FED. R. CIV. P. 23(e) .................................................................................10

FED. R. CIV. P. 26(c) ...................................................................................6

iv

## INTRODUCTION

The District Court erred in applying the "compelling reasons" standard to whether the names of complainants, witnesses, and alleged persons of interest referenced in unverified complaint documents should be unsealed. But even under that standard, NIKE has demonstrated that the privacy interests of its current and former employees should be protected by redacting their names from such documents, particularly where, as here, they have no relevance to the order below denying class certification. *Foltz v. State Farm Mut. Auto. Ins. Co*., 331 F.3d 1122, 1137 (9th Cir. 2003). NIKE showed all of this in its Opening Brief.

Nothing in the Media Intervenors' Answering Brief alters this conclusion. Their arguments fail.

***First***, the Media Intervenors' position rests on the flawed assumption that the media has a right to anything in which it might be interested if it concerns a large corporation and a "recognizable consumer brand [ ]." Dkt. No. 29.1 at 1, 28. That is not the law.

***Second***, they argue that the "dispositive" versus "nondispositive" test for evaluating sealing has been abandoned and must be limited to discovery motions. Wrong. The test remains the law of this Circuit. In fact, this Court's decision in *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1099 (9th Cir. 2016), instructs that a dispositive motion is one that is more than tangentially related to the

merits of the proceeding and applies outside of discovery. For this, the Media Intervenors have little to no response. The Supreme Court and this Court have long held that class certification motions are "procedural" and may not tread onto the merits of the case. *Deposit. Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 336 (1980); *Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1053 (9th Cir. 2015).

*Third*, the Media Intervenors promote a test that is unworkable in practice and conflicts with authority in this Circuit (and from the Tenth Circuit). Contrary to the Media Intervenors' false narrative, this case does not involve the "alleged culture of workplace harassment." Dkt. No. 29.1 at 9. Plaintiffs' claims below concern only whether they were paid and promoted less than their male colleagues. No harassment claims are alleged. The names of non-parties referenced in unrelated documents therefore have no bearing on the case, nor did the Media Intervenors ever show that such names would have been useful to the public's understanding of the District Court's order denying class certification.

The Answering Brief proves only that the Media Intervenors seek to unseal the non-parties' names for an improper purpose—namely, to fuel their desire for click-bait headlines, a desire which the law does not support. *See Foltz*, 331 F.3d at 1137.

The order to unseal the non-parties' names must be vacated and remanded with an instruction to deny the requested unsealing.

## JURISDICTION:  THE APPEAL IS *NOT* MOOT

NIKE raised in its Opening Brief that questions of mootness clouded this appeal because of the conduct of others.  The Oregonian possesses the Documents that underlie this appeal because of Plaintiffs' counsel's knowing breach of the Protective Order and this Court's Stay Order (which the Oregonian aided and abetted).  Dkt. No. 14.1.  The details of these violations still remain unclear and are subject to discovery in the matter below, but what *is* clear is that the Oregonian would not have the Documents but for the violations.  The Oregonian's possession of the Documents impacts the issues presented on appeal and raises the possibility that non-parties will be irreparably harmed, but, as it stands now, the case is not moot.

*First*, there is no mootness as to the other Media Intervenors:  Insider, Inc., *d/b/a Business Insider* ("Insider"), and American City Business Journals, Inc., *d/b/a Portland Business Journal* ("Portland Business Journal).  Neither the Insider nor the Portland Business Journal have come forward with evidence showing that the Oregonian shared with them the sealed identities of non-parties.  Mootness is considered on a party-by-party basis.  *See, e.g., Cove/Mallard Coal. v. United States Forest Serv.,* 67 F. App'x 426, 429 n.5 (9th Cir. 2003) ("This appeal is not moot as to appellant Molly Karp" but it is to the other appellants).  And, "[t]he party asserting mootness has the heavy burden of establishing that there is no effective relief

3

remaining for a court to provide." *Tinoqui-Chalola Council of Kitanemuk &* *Yowlumne Tejon Indians v. U.S. Dep't of Energy*, 232 F.3d 1300, 1303 (9th Cir. 2000). Here, the remaining Media Intervenors have presented no evidence that ***they*** have the sealed names, and thus, the case is not moot as to them.

 ***Second***, even as to the Oregonian, the issue is still live. Notwithstanding their previous representations, *e.g.*, Dkt. No. 7.2 at 2, 15, but perhaps recognizing that publishing uncorroborated defamatory allegations—some anonymous—against named individuals could be independently actionable, the Oregonian has ***not*** published the names of the non-party individuals. Further, the Oregonian possesses the Documents by way of an admitted breach, and its related appeal in this Court may affect whether that possession continues. *See Cahill, et al. v. NIKE, Inc.*, Case No. 24-2199. That appeal seeks an injunction that would require the return of such Documents and bar their use. The Second Circuit has affirmed a return and ban on use in comparable circumstances, confirming the case remains live here. *Eli Lilly &* *Co. v. Gottstein*, 617 F.3d 186 (2d Cir. 2010).

 Given their related and intertwined issues, NIKE believes the appeals should be decided together. But because the related appeal is still live and because the Court still could order the return and destruction of material that has not yet been published, ***this appeal*** is ***not*** moot. As the Oregonian conceded in briefing before this Court, the documents "have remained under seal and are not available on the public docket

in the Lawsuit." Dkt. No. 40.1 at 8. Should the circumstances governing mootness change, the parties and the Court may need to return to this question.

## I.    **LEGAL ARGUMENT**

### A.    **The "Good Cause" Standard Applies to Plaintiffs' Class Certification Motion.**

At issue is whether the District Court applied the wrong standard in addressing the Media Intervenors' unsealing request. The District Court applied the "compelling interest" standard. 1-ER-008. In its Opening Brief, NIKE pointed to this Court's *existing* law to confirm that applying this standard was error. Dkt. No. 23.1 at 15-19. The proper standard was the lower "good cause" standard. *Id.*

In opposition, the Media Intervenors seek to defend the District Court's application of the wrong standard. Their arguments fail.

The longstanding rule in this Circuit that the test that a court should apply when faced with a request for sealing depends on whether the motion is dispositive or nondispositive. When "a party attaches a sealed discovery document to a *nondispositive* motion, the usual presumption of the public's right of access is rebutted." *Phillips ex rel. Ests. of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002) (emphasis added). This Court repeated that analysis in *Foltz*, 331 F.3d at 1135.

In *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172 (9th Cir. 2006), the Court was direct and express in annunciating the test and the difference: "[W]e treat

5

judicial records attached to dispositive motions differently from records attached to non-dispositive motions. Those who seek to maintain the secrecy of documents attached to dispositive motions must meet the high threshold of showing that compelling reasons support secrecy. . . . A 'good cause' showing under Rule 26(c) will suffice to keep sealed records attached to non-dispositive motions." *Id.* at 1180 (citations omitted). This Court then showed fidelity to that rule in *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010); in *In re Roman Cath. Archbishop of Portland in Oregon*, 661 F.3d 417, 430 (9th Cir. 2011); and again in *In re Midland Nat'l Life Ins. Co. Annuity Sales Pracs. Litig.*, 686 F.3d 1115, 1119 (9th Cir. 2012). None of these cases has been overturned and thus the law of this Circuit remains as it has been: "good cause" for the sealing of nondispositive motions, and "compelling interest" for dispositive motions.

The divided court in *Chrysler*, 809 F.3d at 1099, cited by both NIKE and the Media Intervenors, did not change that law, nor could it. It has ***long*** been the law in this Circuit that, "as a general rule, one three-judge panel of this court cannot reconsider or overrule the decision of a prior panel." *Koerner v. Grigas*, 328 F.3d 1039, 1050 (9th Cir. 2003) (citations omitted). Rather, *Chrysler* provided District Courts with a basis to determine when a motion is dispositive or nondispositive, which is to look at "whether the motion at issue is more than tangentially related to the underlying cause of action," recognizing a desire to avoid mechanical

6

classifications. *Chrysler*, 809 F.3d at 1099. That is as far as *Chrysler* went and as far as it ***could*** go. To the degree it sought to overrule by implication the dispositive versus nondispositive test laid out by a number of panels of this Court, it could not do so without the aid of the *en banc* court, and any such "'suggestion' that 'is inconsistent with earlier opinions of this court,' . . . are to be disregarded in favor of the earlier, binding holding." *Duarte v. City of Stockton*, 60 F.4th 566, 574 (9th Cir. 2023), *cert. denied* 143 S. Ct. 2665 (2023) (citation omitted). Put simply, the dispositive/nondispositive test remains effective.

Notwithstanding, the Media Intervenors—in trying to defend the District Court's analysis—suggest that *Chrysler* overturned this Court's earlier law and limited the "good cause" test to discovery motions. Dkt. 29.1 at 17-18. Not so.[1] Instead, *Chrysler* could only explain that ***some*** "technically nondispositive motions," like motions *in limine* or motions for preliminary injunction, may be "strongly correlative to the merits of a case" and should be treated as dispositive. *Chrysler*, 809 F.3d at 1099. The question, then, is whether a motion for class certification is dispositive under this framework or not.

---

[1] Indeed, in the time since *Chrysler*, this Court has held that "a sealed order regarding intervention," which is not a discovery motion, "is at most 'tangentially related to the underlying cause of action[.]'" *Brunson v. Lambert Firm PLC*, 757 F. App'x 563, 566 (9th Cir. 2018) (quoting *Chrysler*, 809 F.3d at 1099).

7

While it appears that neither this Court nor the Supreme Court have addressed sealing class certification motions and which standard to apply, that does not mean this Court's ***existing*** jurisprudence should be ignored. In its Opening Brief, NIKE cited Supreme Court authority viewing the Court's ruling on "class certification as an example of a *procedural* ruling[,]" *Deposit Guar.*, 445 U.S. at 336 (emphasis added), and that rules governing class certification bar courts from "engag[ing] in free-ranging merits inquiries at the [class] certification stage." *Amgen*, 568 U.S. at 466. NIKE also directed this Court to its own authority recognizing that merits questions "should be left for summary judgment or trial, not at class certification." *Miles v. Kirkland's Stores, Inc.*, 89 F.4th 1217, 1224 n.2 (9th Cir. 2024). The Media Intervenors were silent about these cases. *Deposit Guaranty*, *Amgen*, and *Miles* make no appearance in their opposition.

Instead, the Media Intervenors make four points. First, they cite to District Court authority post-*Chrysler* applying the "compelling reasons" standard to class certification motions. Dkt. 29.1 at 19. Next, they rely on a Sixth Circuit case, *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305-06 (6th Cir. 2016). Dkt. 29.1 at 20. Third, they appeal to policy, claiming that class certification is important and therefore should be treated as dispositive. *Id.* at 21-22. And, fourth, they argue that class certification is more than tangentially related to the merits. *Id.* at 20-22. Each of these arguments fails.

**1.    District Courts Have Continued to Apply the Good Cause Standard to Class Certification Motions Post-*Chrysler*.**

NIKE acknowledges that some lower courts have applied the higher "compelling reasons" standard to class certification motions after *Chrysler*. But the Media Intervenors surely will have to concede in return that other district courts have continued to apply the lower "good cause" standard. Indeed just this year, Judge Battaglia explained that "[u]nless the denial of a motion for class certification would constitute the death knell of a case, 'the vast majority of [ ]courts within this circuit' treat motions for class certification as non-dispositive motions to which the 'good cause' sealing standard applies." *Lessin v. Ford Motor Co*., No. 19-CV-01082-AJB-AHG, 2024 WL 1164427, at *2 (S.D. Cal. Mar. 18, 2024) (citations omitted). Further, Magistrate Judge Weksler explained that "[w]hile an open question in the Ninth Circuit, courts generally hold that the standard for filing documents under seal in relation to a class certification motion is a showing of 'good cause.'" *Sessa v. Ancestry.com Operations Inc*., No. 2:20-CV-02292-GMN-BNW, 2023 WL 1795856, at *1 (D. Nev. Feb. 6, 2023) (citation omitted); *accord Ferris v. Wynn Resorts Ltd*., No. 2:18-cv-00479-APG-BNW, 2023 WL 1767797, at *1 (D. Nev. Jan. 12, 2023) (same).

That the parties can cite dueling lower court authority is proof only that this Court's guidance is needed. But in offering that guidance, this Court is not writing on a blank slate. Going back to *Phillips* and *Foltz*, there is an established test

9

(dispositive versus nondispositive), and albeit not specific to sealing, there is law confirming that class certification is ***not*** a dispositive motion.

**2.    This Court's Jurisprudence Already Recognizes the Distinction Between Class Certification and Class Settlement.  One Involves the Merits, the Other Does Not.**

As to the Media Intervenors' invocation of the Sixth Circuit's analysis in *Shane*, they fail to give the Court some critical context.  *Shane* arose in the context of a class action ***settlement***.  Pointing to Fed. R. Civ. P. 23(e), the Sixth Circuit was concerned that class members had to have access to "whether it does or does not make sense to them to accept about 12 cents on the dollar of their damages as estimated in [an expert report], or less than 4 cents on the dollar of the award they might obtain at trial." *Shane*, 825 F.3d at 308-10.  That ***settlement*** context makes a critical difference.  ***This*** Court has already ruled that upon a final approval a class-action ***settlement*** "constitute[s] a final judgment on the merits" for the class.  *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2006).  By contrast, a mere motion for class certification ***does not*** and ***cannot*** reflect a ruling on the merits.

To the contrary, the Supreme Court has held that a class certification motion is merely "procedural," *Deposit Guar.*, 445 U.S. at 336, and when the objection to class certification is the lack of proof on the *merits*, "courts should engage that question as a matter of summary judgment, *not class certification*." *Tyson Foods,*

*Inc. v. Bouaphakeo*, 577 U.S. 442, 457 (2016) (citation omitted, emphasis added).[2]

What's more, this Court has held that a decision on class certification "is *far* from a conclusive judgment on the merits of the case[.]" *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1004 (9th Cir. 2018) (citation omitted, emphasis added).[3]

> **3.    This Court's Law Already Reflects Its Policy Decision and Looks to Whether the Motion Is Dispositive or Nondispositive.**

The Media Intervenors' appeal to policy, at bottom, claims that a motion for class certification is an important moment in a case. Dkt. 29.1 at 20-21. That is not the test, nor should it be. Discovery motions can be critical moments in a case—indeed, often the key one. But even the Media Intervenors concede that discovery motions are governed by the "good cause" standard. Dkt. 29.1 at 17. The reality is that this Court **already** conducted the policy analysis in shaping its law. It did so in

---

[2] This same point answers the Media Intervenors' suggestion that NIKE "overlooks" the notice requirements for settling a class action under Rule 23. Dkt. No. 29.1 at 29. A class settlement **is** a ruling on the merits when final. A class certification motion is **not**.

[3] Media Intervenors argue that, in a "class action context," "members of the public are also parties to the case." Dkt. 29.1 at 20. This is mistaken. "[P]utative class members are *always* treated as nonparties and become parties to an action—and thus subject to dismissal—only after class certification." *Moser v. Benefytt, Inc.*, 8 F.4th 872, 878 (9th Cir. 2021) (citations and quotation marks omitted, emphasis in original); *see also Ridgeway v. Walmart Inc.*, 946 F.3d 1066, 1076 (9th Cir. 2020). Here, no class has been certified and thus putative class members never became parties.

*Phillips*, *Foltz*, and all of the cases discussed above setting the "dispositive" versus "nondispositive" test.

In *Foltz*, for example, this Court held that "[m]uch of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action." *Foltz*, 331 F.3d at 1135 (citation omitted). Whereas, the Court continued, "[t]he same cannot be said for materials attached to a summary judgment motion because 'summary judgment adjudicates substantive rights and serves as a substitute for trial.'" *Id.* (citation omitted). The dispositive versus nondispositive test followed. This Court set its policy line at the ***merits***. Class certification is ***not*** a ruling on the merits.

### 4. The Class Certification Motion Here Was Not More than Tangentially Related to the Merits.

The Media Intervenors next argue that the class certification motion at issue required the application of the "compelling reasons" standard because it "cannot reasonably be said to be 'unrelated to the merits.'" Dkt. No. 29.1 at 22. Setting aside that the Media Intervenors get the question wrong (*i.e.*, it asks whether the motion is more than tangentially related to the merits, not whether it is unrelated), their argument—and reasoning—is incorrect.

*Chrysler* is instructive. After concluding that some preliminary injunction motions may warrant the "compelling reasons" standard, the Court examined the preliminary injunction motion at issue. *Chrysler*, 809 F.3d at 1102. The Court

12

looked at the complaint, noted the relief sought, and explained that plaintiff sought "injunctive relief" including "an order 'requiring Chrysler to adequately disclose and repair the [vehicle] defect." *Id*. It also emphasized that, as Chrysler argued, the notice requested in the preliminary injunction motion would be permanent—*i.e.*, it would "alter[ ] the status quo and [could not] be undone." *Id*. "If plaintiffs had succeeded in their motion for preliminary injunction, they would have won a portion of the injunctive relief they requested in the underlying complaint, and that portion of their claims would have been resolved." *Id*. Thus, the Court concluded that the motion was "more than tangentially related to the merits." *Id*.

NIKE quoted the *Chrysler* analysis in its Opening Brief to crystalize the question: Does the motion involve a ruling (preliminary or otherwise) on the merits? Dkt. No. 23.1 at 28. In *Chrysler* it did; here, it did not. And by law, ***it could not***.

The District Court's denial of class certification below made clear that the motion is focused on the elements for certifying a class, not on the merits. *E.g.*, 2-ER-178, 2-ER-197, 2-ER-198. Indeed, the District Court was legally prohibited from doing so. *See* 2-ER-188 (the Court "should not 'advance a decision on the merits to the class certification stage.'"); *see also* Section I.A.1-3, *supra*. Still, the Media Intervenors argue that "the sealed records at issue related *not only* to Plaintiffs' arguments in support of class certification *but also* to the merits of

Plaintiffs' disparate impact claims." Dkt. No. 29.1 at 30 (emphasis in original).  This argument is flawed.

First, mere relationship or "overlap" is not the test.  Dkt. No. 29.1 at 22.  Post-*Chrysler*, this Court held in a criminal discovery case that the "materials or witnesses sought could impact the verdict at trial," and the court will "need to take into account the *merits* of any potential defense theories[,]" in ruling on the motion.  *United States v. Sleugh*, 896 F.3d 1007, 1014 (9th Cir. 2018) (emphasis added).  Yet, even with an overlap, the lower standard applies.  *Id.*  Thus, the question is whether the motion is dispositive or nondispositive—*e.g.,* "if materials affect substantive rights."  *Id.* at 1014.  There is no substantive right to a class action, *see, e.g., Diaz-Ramos v. Hyundai Motor Co.*, 501 F.3d 12, 15 (1st Cir. 2007) ("Both state and federal class action provisions have been construed to confer no substantive rights."), and a ruling on certification is not a ruling on the merits.  "'Whether class members could actually prevail on the merits of their claims' is *not* a proper inquiry in determining the preliminary question 'whether common questions exist.'"  *Stockwell v. City & Cnty. of San Francisco*, 749 F.3d 1107, 1112 (9th Cir. 2014) (citations omitted, emphasis added).  "It is axiomatic that Rule 23 cannot 'abridge, enlarge or modify any substantive right' of any party to the litigation," *Cummings v. Connell*, 402 F.3d 936, 944 (9th Cir. 2005) (quoting 28 U.S.C. § 2072), and thus a class certification motion is not a dispositive motion under *Chrysler*.

14

Beyond that, the question is **not** whether the evidence relates to the merits. Under *Phillips*, *Foltz*, and *Chrysler*, the focus, instead is on the **motion** and the relief it seeks.  To hold otherwise would encourage litigants to attach evidence unrelated to a motion, but salacious, to force a heightened sealing burden.  This case proves it.

The evidence here is unrelated to the merits.  The Media Intervenors repeatedly argue that this lawsuit involves the "alleged culture of workplace harassment . . . that underlies Plaintiffs' claims." *See, e.g.*, Dkt. No. 29.1 at 1, 4 ("Plaintiffs allege . . . harassment *by NIKE itself*") (emphasis in original), 25 (same), 28.  They do so likely because there is no dispute that the Documents here are unverified complaints regarding purported harassment. *E.g.*, Dkt. No. 29.1 at 2.  Yet, **Plaintiffs do not allege a single harassment claim**. 3-ER-364-69.  Plaintiffs instead contend that "Nike pays and promotes women less than men at Nike Headquarters." 3-ER-333.[4]

---

[4] Plaintiffs' Answering Brief does not support a different conclusion.  Plaintiffs had no harassment claims on class certification and they have none now.  Whether Plaintiffs may *try* to use the Documents later for a merits analysis is not the test.  The Documents were attached to a nondispositive **motion**, so the lower standard had to apply.  And maintaining the redactions, under either standard, would not "obscure allegations of unlawful conduct," Dkt. No. 43 at 12, because the allegations were unsealed. *Id*. at 9.  Nor is there any showing by Plaintiffs that the names of non-parties (whether Plaintiffs claim that some of them are executives or not) informed the denial of class certification.  Plaintiffs simply failed to meet the procedural requirements to certify a class. *E.g.*, 2-ER-205.

Allegations of sexual harassment and the Documents themselves have entered this case—as well as the news headlines orchestrated by Plaintiffs' counsel—only to smear NIKE and create an overarching aura of wrongdoing, but they ultimately do nothing to advance the pay and promotions claims sought by Plaintiffs. They had no place in the class certification motion for pay and promotions claims. They have no place in Plaintiffs' individual pay and promotions claims. And they have no place in this litigation. *See, e.g.*, *Boyd v. Rubbermaid Com. Prods.*, No. 91-0083-H, 1992 WL 404398, at *5 (W.D. Va. Dec. 11, 1992) ("the court finds that evidence of alleged 'harassment' of the plaintiff by Sonny Shiley, one of Rubbermaid's supervisors, would be irrelevant to an Equal Pay Act claim where that supervisor had no part in setting plaintiff's compensation.").

### B.   NIKE Has Demonstrated Compelling Reasons for Sealing the Names of Non-Parties.

Whether a "good cause" or "compelling interest" standard applies matters because, if the District Court applied the incorrect standard, it "necessarily abused its discretion[;]" *N.D. ex rel. parents acting as guardians ad litem v. Hawaii Dep't of Educ.*, 600 F.3d 1104, 1111 (9th Cir. 2010), and remand, at a minimum, should follow. But in another sense, the standard does not matter because, if the "compelling interest" standard applies, NIKE met it. The District Court abused its discretion in concluding otherwise.

16

Recall what remains at issue—the identities of non-parties. 4-ER-478-530; 3-ER-321. The description of the alleged conduct has been made public (and published in the media), but the names of the accused and the accusers remain confidential. *Id*. In seeking sealing, NIKE offered more than an "invocation of the phrase 'non-party privacy interests,'" as the Media Intervenors claim. Dkt. No. 29.1 at 25; *see* Dkt. No. 23.1 at 25-39. NIKE referred both the District Court and now this Court to specific complaints and explaining specific harm that could result from the disclosure of the non-parties' names to the broader public. *E.g.*, 2-ER-079-80; 2-ER-121. NIKE did what was practical and what it was legally required for it to do. The allegations of (mis)conduct were made public, but NIKE agreed **with Plaintiffs** to keep the non-parties' names sealed. Convincing the District Court below, and asserting it again in opposition here, the Media Intervenors claim that more was needed, namely affidavits. Dkt. No. 29.1 at 23-28. That makes no sense, and is not legally required.

First, the Media Intervenors fail to recognize that the information at issue is not some complex and indiscernible financial data or asserted trade secret that would require specific explanation as to its confidentiality. Here, the allegations at issue are sensitive, private, and, at times, sexual; certain allegations have been made anonymously and the allegations have not been substantiated. If a non-litigant was

17

tied to that conduct by disclosing their names, the harm is obvious simply from looking at the allegations.

Nor is the harm generalized. The Documents connect allegations of sexual (mis)conduct and/or infidelity to specific accusers, accused, and/or witnesses, *see* 4-ER-479-98. That harm is exacerbated by the fact that these allegations, many of which are dated and involve former employees, have not been validated. Whether accuser or accused, because these individuals are non-parties, they never expected the allegations to be made public via a dispute to which they are not related and where, as here, there is no forum for them to explain or defend themselves.[5] *See United States v. Amodeo*, 71 F.3d 1044, 1052 (2d Cir. 1995) (district court abused its discretion in unsealing portions of a report containing unsworn accusations of doubtful veracity because the accusations were "hearsay" and there was a likelihood of "mislead[ing] [rather] than inform[ing] the public.").

The Media Intervenors also fail to explain what a company like NIKE was supposed to do ***functionally***. Was NIKE supposed to get a declaration from those

---

[5] Indeed, because these complaints were collected informally across NIKE's campus and were not a product of any formal complaint process, there are questions as to the veracity of many of the allegations, which sometimes pertain to conduct that allegedly occurred over a decade ago. Publication of the identities of the people named therein may give rise to concerns of a legal nature stemming from the harm to their reputation, but, at minimum, it certainly confirms that the Media Intervenors' use of their identities in news articles is improper and justifies sealing. *In re Midland*, 686 F.3d at 1120 (sealing is proper where the use of the material would be to "gratify private spite, promote public scandal, [or] circulate libelous statements").

18

non-litigants attesting to the interest they have, rehashing an issue that had not been raised, and to what degree?  What if the employee had left the company and their contact information was unknown?  What if they were away on business?  And more practically, why should a company which seeks to do right by its employees be put to that unworkable burden?  NIKE raised questions like these in its Opening Brief. Dkt. No. 23.1 at 37, n.6.  The Media Intervenors gave no answers.

The Media Intervenors lose track that the test they are proposing would apply to all employers, big and small.  It seems obvious that requiring confirming declarations manifesting a desire from *non*-litigants to preserve their privacy would prove both costly and unworkable for a company of 10 just as much as it would for a company of 10,000.  Yet, the Media Intervenors offer none of that practical discussion, nor did the District Court below.  And in its misunderstanding of what the law required and was factually possible, the District Court erred.

NIKE did what countless courts have blessed.  It redacted the names of the non-litigants just as the numerous District Courts cited in its Opening Brief suggested was appropriate.  Dkt. No. 23.1 at 25-28.  The Media Intervenors offer no real answer to those cases.[6]  While the volume of that law raises a legal point

---

[6] The Media Intervenors do not meaningfully confront this authority, but rather choose to address but one case and attempt to distinguish it by highlighting that the non-party names had "minimal relevance" to the underlying causes of action.  Dkt. No. 29.1 at 35.  The rest of the authority they disregard.

(respected and experienced judges take a different approach than the one here), those cases raise a further ***practical*** point. District Courts have recognized that an employer—like NIKE—can assert the privacy rights of its employees in the way that NIKE has done—to protect their identities. Thus, in *Hunt v. Cont'l Cas. Co.*, No. 13-cv-05966-HSG, 2015 WL 5355398 (N.D. Cal. Sept. 14, 2015), Judge Gilliam sealed third parties' names where such information "implicates important privacy concerns of nonparties—whose names are not relevant to the disposition of this case—that outweigh the public's interest in disclosure of these judicial records." *Id.* at *2. In *Music Grp. Macao Com. Offshore Ltd. v. Foote*, No. 14-CV-03078-JSC, 2015 WL 3993147 (N.D. Cal. June 30, 2015), Judge Corley ruled that "[d]isclosure of [former, non-party employees' identities] would infringe the privacy rights of those two individuals, which constitutes a compelling reason for sealing." *Id.* at *2. And, in *Murphy v. Kavo Am. Corp.*, No. CV 11 0410 YGR, 2012 WL 1497489 (N.D. Cal. Apr. 27, 2012), Judge Rogers sealed information because, "[e]mployees and former employees who are not parties to this litigation have privacy interests in their personnel information, and in other sensitive identifying information[.]" *Id.* at *1. Judge Breyer did the same in *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig. ("Volkswagen")*, No. MDL 2672 CRB (JSC), 2016 WL 11807130 (N.D. Cal. Aug. 24, 2016): "[T]here is minimal public interest in this information; the public can still access Plaintiffs' allegations regarding Bosch's

involvement in the implementation of the defeat device. The names and job titles of the individuals involved are irrelevant. Bosch's request is also narrowly tailored as it seeks to redact only the employees' names and job titles and nothing more." *Id.* at \*2.

If NIKE was wrong below, ***then*** these Judges were wrong too and could be challenged ***now***. This case, in other words, could cause ripple effects in long dormant cases. How would an employer obtain declarations from employees who may have departed the company, perhaps many years prior? The Media Intervenors' opposition position certainly suggests as much. Employer and employees alike should ***not*** be put to that risk by affirming the decision below and insisting on requirements that could never be met.

As a last legal point, the Media Intervenors' citation to *FTC v. Standard Fin. Mgmt. Corp.,* 830 F.2d 404, 411-12 (1st Cir. 1987), misses the mark. The First Circuit agreed that privacy rights may justify sealing, but in this particular case, the appellants themselves chose to submit the documents they wanted sealed as part of the FTC settlement process—a process they could have foregone—and the documents worked to their advantage. The Court concluded that "having reaped the intended benefit of that submission, [the appellants] cannot now plausibly argue that some general notion of fairness requires the settlement to be made public but the documents to be locked away." *Id*. at 412.

21

Here, by contrast NIKE is seeking protection of the names of ***non***-litigant employees, who have been inserted into the case (improperly in NIKE's view) by others. And, if the Court wants to look to out-of-Circuit, the more apt comparison is *Brigham v. Frontier Airlines, Inc.*, 57 F.4th 1194 (10th Cir. 2023), not *FTC*. In *Brigham,* a failure to accommodate case, the Tenth Circuit found that the comparator information should remain sealed: "The list in the supplemental index contains confidential information about employees' names, medical diagnoses, discipline records, retirement plans, and severance payouts. *Given the nature of this information*, the privacy interests outweigh the public's right to access[.]" *Id.* at 1203 (emphasis added). So too here. "Given the nature of th[e] information," non-litigants reflected in the Documents should remain sealed because "privacy interests" are compelling and can be self-evident. *Id.*

The Tenth Circuit's approach is consistent with this Court's stance in *Foltz*. 331 F.3d at 1137 ("Simply redacting the identifying information of third parties (*e.g.,* their names, addresses, telephone numbers, and social security numbers) from these records and disclosing the remaining information would not injure the third parties but would reveal only State Farm's actions in processing personal injury claims."). The Media Intervenors try to minimize *Foltz* by misconstruing the authority cited by the Court below and NIKE's position.[7] *See* Dkt. No. 29.1 at 33. NIKE is not trying

---

[7] As NIKE argued in its Opening Brief, the Magistrate Judge cited case law,

to shield the names of its employees whose conduct is at issue in the case. NIKE has said repeatedly—and maintains—that its concern regarding unsealing pertains to names of its current and former employees whose conduct is not at issue. *See e.g.*, Dkt. No. 23.1 at 31 n.5. The allegations (though with names sealed) already have been made public. NIKE is attempting to protect the privacy interests of its uninvolved employees just as the employer in *Brigham* did. And even if this were not true, the Court in *Foltz* focused on State Farm's "failure to identify where in the documents confidential financial information and trade secrets are to be found" in holding that State Farm did not present compelling reasons. *Foltz*, 331 F.3d at 1137. NIKE pointed to the exact exhibits at issue, explained the nature of the allegations, and explained the (albeit obvious) harm that would result (to the non-parties). *See* 2-ER-079-80.

The Media Intervenors also trumpet the District Court's finding that the non-party names here were relevant. Dkt. No. 29.1 at 27. But this serves to highlight the vital misinterpretation of the nature of Plaintiff's claims. As explained *supra*, this case is not about harassment. The case centers on whether Plaintiffs were paid or

---

including *Kamakana v. City & County of Honolulu*, 447 F.3d 1172 (9th Cir. 2006), which focused on a ***litigant's*** embarrassment, rather than the privacy interests of non-parties that should have governed the inquiry here. Dkt. No. 23.1 at 38-39. The Media Intervenors citation to *Oliner v. Kontrabecki*, 745 F.3d 1024, 1026 (9th Cir. 2014), is similarly unhelpful to their position because *Oliner* simply reasserts *Kamakana's* holding that a ***litigant's*** privacy interests are insufficient to justify sealing.

promoted less than their male counterparts. The sealed names, on the other hand, are from Documents containing allegations of sexual misconduct by and about individuals who are neither Plaintiffs nor alleged to have engaged in any conduct alleged in the action below. *Compare* 4-ER-479-530 *with* 3-ER-332-373.

### C. Non-Parties' Privacy Interests Outweigh Any Claimed Public Interest Here.

In its Opening Brief, NIKE explained how the privacy rights of non-litigants outweighs any asserted public interest here. Dkt. No. 23.1 at 32-34. Abandoning any position that the public has a right to "learn about the judicial process" and the "bases behind judicial decisions," 2-ER-138, the Media Intervenors now point to NIKE being "one of the world's most recognizable consumer brands" to warrant the invasion of non-party privacy rights. Dkt. No. 29.1 at 28.

But being a recognizable brand does not then mean that the public is entitled to all information and documents concerning the names of NIKE employees or former employees. Indeed, the public right of access "does not extend to mere curiosity about . . . confidential information where that information is not central to a decision on the merits." *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 727 F.3d 1214, 1228 (Fed. Cir. 2013). Rather, the public interest must still be tied to being informed ***about judicial decisions***, *Foltz*, 331 F.3d at 1135; and, ***there is no showing here that non-party names appearing in the Documents have anything to do with the District Court's order denying class certification***. As Judge Breyer explained, "[t]he names

24

and job titles of the individuals involved are irrelevant" when "the public can still access Plaintiffs' allegations regarding [defendant's] involvement" in the alleged bad acts. *Volkswagen*, 2016 WL 11807130, at *2. Both the District Court below, and the Media Intervenors who led the District Court below into error, miss this point. Where the allegations as to the corporate defendant are known, "the public [] has minimal interest" in the names, *id.*, beyond "curiosity[,]" *Apple Inc.*, 727 F.3d at 1226-28.

Here, the Media Intervenors simply want the names of alleged witnesses and persons of interest because of their ***prurient*** curiosity. *See* Dkt. No. 29.1 at 28 (citing an article that a news outlet "long sought records that shed light on NIKE's inner workings"). They are not in this fight to inform the public about the basis of the denial of class certification—they do not even try to argue as much. Rather, they are in this fight in the hopes of finding salacious content in stale unsubstantiated claims (many of the claims are from five to ten years ago, if not longer, *see, e.g.*, 4-ER-517 (2008); 4-ER-480 (2016); 4-ER-489 (2017)) at the expense of the lives of the people involved. But the desire to appeal to the prurient is not a legitimate reason to unseal identities. Curiosity does not justify imposing unnecessary injury on third parties. *In re Midland*, 686 F.3d at 1120 (finding "compelling reasons" exist for sealing when judicial records could be used to "gratify private spite, promote public

25

scandal, circulate libelous statements, or release trade secrets.").  The District Court abused its discretion in concluding otherwise.

## II.    <u>CONCLUSION</u>

Based on the foregoing, this Court should, at a minimum, vacate the District Court's order requiring the unsealing of the non-parties' names (1-ER-002, 1-ER-005).  The Court can then either remand for consideration under the correct standard, or as shown by the above, it could direct the District Court to deny the motion given that NIKE has met its burden under any standard to show that the names of the non-litigants at issue here should remain confidential.


Date:  May 15, 2024                         Respectfully submitted,

                                            PAUL HASTINGS LLP


                                            By: _____ *s/Daniel Prince* _____
                                                       DANIEL PRINCE


                                            By: _____ *s/Felicia A. Davis* _____
                                                       FELICIA A. DAVIS

                                            Attorneys for *Defendant-Appellant*
                                            NIKE, INC.

26

## STATEMENT OF RELATED CASES

Pursuant to Circuit Rule 28-2.6, Defendant-Petitioner NIKE certifies that Ninth Circuit Appeal No. 24-2199 is a related case because it is subsequent to the instant appeal and raises closely related issues, namely the unauthorized disclosure of the names of non-party complainants, witnesses, and alleged persons of interest identified in confidential judicial records that this Court ordered to remain sealed pending NIKE's appeal. Case No. 24-165, Dkt. No. 12.1.

Date: May 15, 2024                 Respectfully submitted,

PAUL HASTINGS LLP

By: _____ *s/Daniel Prince* _____
       DANIEL PRINCE

Attorneys for *Defendant-Appellant*
NIKE, INC.

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Fed. R. App. P. 32(a)(7)(C) and Ninth Circuit Rule 32-1, the under-signed counsel certify that this Opening Brief of Defendant-Appellant NIKE, Inc. is proportionately spaced, has a typeface of 14 points or more, and contains 6,421 of text (not counting the cover, Tables of Contents and Authorities, this Certificate of Compliance, the Statement of Related Cases, or the Proof of Service) according to the word count feature of Microsoft Word used to generate this Brief.

Date:  May 15, 2024              Respectfully submitted,

PAUL HASTINGS LLP

By: _____ *s/Daniel Prince* _____
          DANIEL PRINCE

Attorneys for *Defendant-Appellant*
NIKE, INC.

## **CERTIFICATE OF SERVICE**

I hereby certify that my firm electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on May 15, 2024.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Date:  May 15, 2024                     Respectfully submitted,

                                        PAUL HASTINGS LLP

                                        By: _____*s/Daniel Prince*_____
                                                   DANIEL PRINCE

                                        Attorneys for *Defendant-Appellant*
                                        NIKE, INC.