## Docket No. 24-165

*In the*

# United States Court of Appeals

*for the*

# Ninth Circuit

―――――――・――――――――

KELLY CAHILL, et al.,

*Plaintiffs-Appellees,*

v.

NON-PARTY MEDIAL ORGANIZATIONS INSIDER INC.
d/b/a BUSINESS INSIDER, et al.,

*Non-Party Media Orgs.-Appellees,*

NIKE, INC.,

*Defendant-Appellant.*

―――――――――――――――

*Appeal from a Decision of the United States District Court for the District of Oregon,*
*No. 3:18-cv-01477-JR · Honorable Marco A. Hernández*

## EXCERPTS OF RECORD
### Volume IV of IV – Pages 455 to 530 (FILED UNDER SEAL)

DANIEL PRINCE, CA Bar No. 237112
FELICIA A. DAVIS, CA Bar No. 266523
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071-2228
Telephone: (213) 683-6000
Email: danielprince@paulhastings.com
Email: feliciadavis@paulhastings.com

*Attorneys for Defendant-Appellant*
*NIKE, INC.*

 

**Laura Salerno Owens, OSB #076230**
LauraSalerno@MarkowitzHerbold.com
**David B. Markowitz, OSB #742046**
DavidMarkowitz@MarkowitzHerbold.com
**Harry B. Wilson, OSB #077214**
HarryWilson@MarkowitzHerbold.com
**Kathryn P. Roberts, OSB #064854**
KathrynRoberts@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR 97201
Telephone: (503) 295-3085 | Fax: (503) 323-9105

**Laura L. Ho** (admitted *pro hac vice*)
lho@gbdhlegal.com
**Barry Goldstein, Of Counsel** (admitted *pro hac vice*)
bgoldstein@gbdhlegal.com
**James Kan** (admitted *pro hac vice*)
jkan@gbdhlegal.com
**Byron Goldstein** (admitted *pro hac vice*)
brgoldstein@gbdhlegal.com
**Katharine L. Fisher** (admitted *pro hac vice*)
kfisher@gbdhlegal.com
**Mengfei Sun** (admitted *pro hac vice*)
msun@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
155 Grand Avenue, Suite 900
Oakland, CA 94612
Telephone: (510) 763-9800 | Fax: (510) 835-1417

Counsel for Plaintiffs, Opt-in Plaintiffs and Putative Class

[Additional Counsel of Record listed on the Signature page]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| KELLY CAHILL, et al., individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>NIKE, INC., an Oregon Corporation,<br>Defendant. | Case No. 3:18-cv-01477-JR<br><br>**PLAINTIFFS' OPPOSITION TO NIKE'S OBJECTIONS TO THE MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION**<br><br>**FILED UNDER SEAL** |

I.    **INTRODUCTION AND SUMMARY**

In its Objections to the Magistrate Judge's Findings and Recommendation ("F&R"), ECF No. 376 ("Objections"), Nike misrepresents the complaints[1] in question and their relevance to Plaintiffs' individual and class claims.  Plaintiffs present this Opposition to correct these errors, which, if uncorrected, could mislead the Court.  The complaints are relevant to all of Plaintiffs' claims, particularly the disparate treatment claims under Title VII and the Oregon Equality Act ("OEA"), which allege a pattern and practice of discrimination against women.  The information in this Opposition is critical to respond to Nike's factual distortions because the Media Intervenors do not have equivalent access to record evidence or familiarity with the underlying legal arguments as Plaintiffs.

Further, given that Plaintiffs will likely try their individual claims in the coming year and appeal the denial of class certification upon a final judgment, there is an ongoing need for public access to relevant and accurate information to evaluate both the merits of Plaintiffs' claims and the self-interested commentary issued by Nike.  Only when the names are unredacted will non-parties become aware that Nike Vice Presidents have been accused of gender-based discrimination and harassment.  For example, the spurious nature of Nike's claim that the

---

[1] Nike refers to the complaints as "unsubstantiated." Objs., ECF No. 376 at 6, 17.  But, Nike has never introduced evidence disputing the substance of the complaints. Moreover, after Nike received the complaints, Nike's CEO endorsed the validity of the complaints by, among other statements, admitting that "[HR] processes … underserved us in recent years [and Nike needs] to restore trust in places where it has eroded."  Sun Decl. Ex. 4, ECF No. 280-4 at 7. Furthermore, on the basis of attorney-client privilege, Nike has refused to produce documents related to its investigations of the complaints, any conclusions about the validity of the complaints, or any actions taken in response.  Nike should not be permitted to obtain the benefit of the privilege shield while, at the same time, making arguments about the validity of the complaints.  Finally, a corporate witness testifying pursuant to Federal Rule of Civil Procedure 30(b)(6) admitted that "some" employees were forced to "exit" as a result of the complaints but was directed by counsel not to identify those employees.  Sun Decl. Ex. 67, ECF No. 286-7 at 6-7.

PLS.' OPP'N TO NIKE'S OBJECTIONS TO THE MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION
PAGE 1

offending conduct was "consensual" between "colleagues" becomes clear when alleged harassers are revealed as executives with power and influence over their targets.

## II.    ARGUMENT

### A.    Nike Misrepresents the Substance of the Complaints.

To support its argument that the redactions should stand, Nike emphasizes the dissimilarity of the complaints and the subject matter of Plaintiffs' individual and class action claims. But Nike's characterizations are inaccurate and misleading.

According to Nike, "none of the complaints at issue relate to pay disparities" and "[a] handful of claimed harassment complaints tell the Court nothing about whether Plaintiffs can prove a common policy or practice of pay or promotion decisions sufficient to certify a class." But, contrary to these assertions:[2]

- A complainant alleges "inequity in pay," stating that she has "asked twice to have [her] salary reviewed" and her "boss" while saying "that will happen" has "never follow[ed] through." She "know[s]" that she is "underpaid." Decl. of Mengfei Sun in Supp. of Pls.' Mot. for Class Certification ("Sun Decl.") Ex. 47, ECF No. 159-7 at 3 (unredacted) / ECF No. 284-7 at 3 (redacted).

- A complaint, submitted by former Nike Vice President Melissa Ohm, describes discrimination in the promotion process.[3] Decl. of Byron Goldstein in Supp. of Pls.' Mot. for Class Certification ("Goldstein Class Cert. Decl.") Ex. 9, ECF No. 290-4 at 19 (redacted) / Sun Decl. Ex. 50, ECF No. 159-10 (unredacted). Ms. Ohm alleges that she proposed three female candidates for promotion but Senior VP[4] Joe Serino rejected her recommendation by telling her "you need a man in the role." Sun Decl. Ex. 50, ECF No. 159-10 at 2 (unredacted) / Goldstein Decl. Ex. 9, ECF No. 290-4 at 20 (redacted). After

---

[2] Plaintiffs only refer to the complaints that are the subject of the F&R. For convenience of the Court, Plaintiffs cite to both the redacted and unredacted versions of these complaints.

[3] Melissa Ohm is a former Nike vice president. Decl. of Byron Goldstein in Supp. of Pls.' Reply in Supp. of Mot. to Compel Produc. of Docs. ("Goldstein Reply MTC Decl.") Ex. 12, ECF No. 369-11 at 10.

[4] On a Nike organization chart, Joe Serino, is listed as "VP.Run.Train.Line." Sun Decl. Ex. 54, ECF No. 285-4 at 1. This is an example of the benefit of unredacting names. By identifying Serino on an unredacted complaint, it becomes clear that a Nike executive, a VP, gave Ohm explicit instructions to discriminate on the basis of gender.

PLS.' OPP'N TO NIKE'S OBJECTIONS TO THE MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION
PAGE 2

hearing this explicit discriminatory direction by a high-ranking Nike executive, Ohm had a "lack of faith in a fair & equitable promotion process." *Id.*

- Another complainant, Renée Augustine alleged that, despite being a "top performer," she was not promoted; she reported the problem to HR but "nothing was done …." Sun Decl. Ex. 46, ECF No. 159-6 at 2 (unredacted) / ECF No. 284-6 at 2 (redacted).

Nike also mischaracterizes the complaints of sexual harassment. According to Nike, "none of the [sex harassment] claims appear to assert allegations of non-consensual conduct." Objs., ECF No. 376 at 6 n.4. Nike further attempts to minimize the seriousness of the complaints by referring to them as "allegations of philandering, consensual sex between colleagues, and workplace bullying." *Id.* at 9-10. In reality, the complaints reveal hostile and unlawful sexual harassment that cannot reasonably be described as "consensual."

- Renee Augustine alleged that her supervisor, Josh Simon, had a "[b]oys club attitude," "terrorized her," and "wouldn't stop." Sun Decl. Ex. 46, ECF No. 159-6 at 2 (unredacted) / ECF No. 284-6 at 2 (redacted). Augustine added that Simon knows that he "can get away with it," because "Jayme Martin [a Nike VP][5] turned a blind eye." *Id.*

- Another complainant alleges "examples of sexual harassment" at Nike: "Men sloppy drunk putting their arms around … female coworkers while on work travel," "[m]en trying to sleep with women in their function at lower levels by luring them in through promise of a 'work dinner' to discuss their career," and "VP men sleeping with/getting BJs from women in the organization at much lower level." Sun Decl. Ex. 47, ECF No. 159-7 at 3 (unredacted) / ECF No. 284-7 at 3 (redacted). The Complainant further describes that "ER [Employee Relations] and HR at this company are a joke" and that "David Ayre[6] [who until 2017 was Nike's VP in charge of HR] was a well known sexual harasser …." *Id.* Additionally, the complainant identifies several Nike executives

---

[5] The unredacted complaint identifies that Jayme Martin, who was a Nike VP/GM, Goldstein Reply MTC Decl. Ex. 7, ECF No. 369-6 at 1, "turned a blind eye" to the "[b]oys club" attitude that "terrorized" the complainant, Renee Augustine. Without having access to the name, Jayme Martin, the public has no way to know that a company executive turned a "blind eye" to sexual harassment.

[6] David Ayre was a former Executive Vice President, Global HR. Goldstein Reply MTC Decl. Ex. 9, ECF No. 369-8 at 1. Without the unredacted complaint it is not possible to know that the complainant charged that Nike's VP in charge of HR was a "well known harasser."

**PLS.' OPP'N TO NIKE'S OBJECTIONS TO THE MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION**
**PAGE 3**

including "Jayme Martin [and] Tinker Hatfield,[7]" who are identified in other complaints, as "known philanderers with lower level employees whom they exert influence and power over." *Id.*

- Erica Bullard, a former Nike VP,[8] identified "negative, manipulative and sexist behavior over the course of [her] career at Nike." Sun Decl. Ex. 48, ECF No. 159-8 at 3 (unredacted) / ECF No. 284-8 at 3 (redacted). Bullard alleged that a senior Nike executive, Michael Jackson[9], engaged in "[d]isparaging, dishonest behavior" and "discredit[ed]" her "reputation" and damaged her career. *Id.* at 4. In doing so, Jackson made sexist criticisms ("it's like neither your boyfriend nor your husband are happy with you.") *Id.*

- Two lower-level female complainants recounted severe harassing conduct by Nike VP Tinker Hatfield. One complainant alleged that "Tinker Hatfield was late for his Personal Training session with me. I said, 'oh Tinker you are so late today.' He responded, 'well maybe if you dressed sexier I would be on time.' He continued with 'take that baggy jacket off and show some skin.' I tried to laugh but I was humiliated. I finished the lesson and kept it to myself because of who he is at the company." She added, "[i]t made me feel bad. I was intimidated and felt degraded." Sun Decl. Ex. 51, ECF No. 160-1 at 2 (unredacted) / ECF No. 285-1 at 2 (redacted). A second complainant alleged that she "walked into the massage room at Nike Sports Center [and w]hen [she] opened the door" she saw a female trainer who was "performing oral sex on Tinker Hatfield." The episode "put a very bad taste in my mouth about leadership and how men … take advantage of women below them." Sun Decl. Ex. 52, ECF No. 160-2 at 2 (unredacted) / ECF No. 285-2 at 2 (redacted).

- Finally, a complainant details the problem with reporting sexual harassment to HR. She alleged how one woman was "not able to do anything about" being called a "bitch" by her manager because HR refused to act after a Nike vice-president, Phil McCartney,[10] "phoned in a favor" to protect his friend. Sun Decl. Ex. 49, ECF No. 159-9 at 2 (unredacted) / Goldstein Class Cert. Decl.

---

[7] Tinker Hatfield is a Nike VP. Goldstein Reply MTC Decl. Ex. 9, ECF 369-8 at 1. Without the unredacted complaint it is not possible for the public to understand that that harassing conduct alleged was committed by a Nike executive and that this Nike executive, as described in other complaints, engaged in harassing conduct with Nike female employees in lower level positions.

[8] Erica Bullard is a former Nike VP. Sun Decl. Ex. 74, ECF No. 162-4 at 8.

[9] Michael Jackson is a former Nike VP/GM. Goldstein Reply MTC Decl. Ex. 3, ECF No. 369-2 at 1.

[10] The unredacted complaint identifies that Phil McCartney, who is a Nike VP, Goldstein Reply MTC Decl. Ex. 12, ECF No. 369-11 at 9, "phoned in a favor" that short-circuited any investigation of the harassment complaint. Only by knowing the name, Phil McCartney, would the public understand that a Nike VP interfered with an HR harassment investigation in order to protect a friend.

**PLS.' OPP'N TO NIKE'S OBJECTIONS TO THE MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION**
**PAGE 4**

Ex. 9, ECF No. 290-4 at 27 (redacted).

Nike's refusal to acknowledge the seriousness of these complaints is further evidence of a workplace culture imbued with gender-based discrimination.  Unredacting the names would enable the press and the public to investigate or challenge Nike's characterizations and mischaracterizations of the complaints.

**B.    Nike Ignores the Relevance of the Complaints.**

For Plaintiffs' disparate treatment claims under Title VII and the OEA, anecdotal evidence of sexual harassment, such as those in the complaints, helps "establish a general discriminatory pattern." *Obrey v. Johnson*, 400 F.3d 691, 698 (9th Cir. 2005).

**1.    Sexual Harassment by Superiors is Not Consensual.**

Nike's tone-deaf claim that the complaints do not allege "non-consensual" conduct and, instead, refer to "consensual sex between colleagues," Objections, ECF No. 376 at 6 n.4 and 10, ignores the status of the harassers as compared to the female victims.  For example, Nike cites two complaints involving sexual contact, referring to the participants as "individuals." *Id.* at 17. But Nike can only maintain the fiction of consent based on the redacted complaints.  When the names are unredacted, and the male harasser is identified as a Nike executive, VP Tinker Hatfield, and the victims are identified as female employees in the roles of personal trainer and a massage therapist, *see* section II.A, *supra*, the nature of the harassing conduct becomes evident.[11]

It is well established that conduct may constitute unlawful harassment because the harasser was a supervisor who exercised influence over a lower-level employee.  *See Zetwick v. County of Yolo*, 850 F. 3d 436, 445 (9th Cir. 2017) (concluding that a reasonable jury could find

---

[11] Similarly, Nike refers to "allegations of philandering," Objections, ECF No. 376 at 9-10, but omits that the complaint identifies "known philanderers," Jayme Martin and Tinker Hatfield, as well as other Nike VPs, and that these Nike VPs focused upon "lower level employees whom they exert influence and power over." *See* section II.A, *supra*.

**PLS.' OPP'N TO NIKE'S OBJECTIONS TO THE MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION**
**PAGE 5**

that the alleged sexual harassment was actionable, in part, because of the harasser's status as a

supervisor). Courts further recognize the "potentially greater impact of harassment from a

supervisor …." *Id*. "Indeed, the Supreme Court has recognized that a 'supervisor's power and

authority invests his or her harassing conduct with a particularly threatening character.'" *Id*.

(quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 763 (1998)); *see also Lanyon v. Interfor

U.S. Inc.*, No. 1:16-cv-2058-MC, 2018 WL 1976023, at *7 (D. Or. Apr. 26, 2018) ("Hostile work

environments created by supervisors deserve more scrutiny.").

The complaints describe just this type of abusive sexual harassment, such as "[m]en

trying to sleep with women … at lower levels by luring them in through promise of a 'work

dinner' to discuss their career" and one complainant reporting that she "was intimidated and felt

degraded." *See* section II.A, *supra*. Nike takes the offensive and tone-deaf position of

evaluating the complaints as if no power imbalance was at play; but this is key to analyzing

unlawful harassment. *See EEOC v. v. Fairbrook Med. Clinic, P.A.*, 609 F.3d 320, 329 (4th Cir.

2010) ("When evaluating the context in which harassment takes place, we have often focused on

the disparity in power between the harasser and the victim") (internal citation & quotation marks

omitted); *EEOC v. R & R Ventures*, 244 F. 3d 334, 340 (4th Cir. 2001) (The objective severity of

the harassment was compounded by the fact the harasser was an "adult male in a supervisory

position over young women barely half his age."). Nike's attempt to cast coercive sexual

harassment as "consensual sex" or "philandering" is not only misguided, but it also ignores well-

established and critical aspects of the legal framework that governs the very gender-based

discrimination claims asserted by Plaintiffs.

### 2.   Evidence of gender-based hostility is relevant to discrimination claims.

In another misleading pronouncement, Nike categorically states that the complaints "have

<u>nothing</u> to do with the pay equity and promotion claims here," Objections, ECF No. 376 at 6 (emphasis in original and footnote omitted), and "tell … nothing about policy or practices of pay or promotion decisions …." *Id.* at 14. Nike again ignores a well-established principle, namely that, "[b]ecause hostility against women underlie decisions to discharge or hire women because of their gender, evidence of sexual harassment often will be relevant to claims of gender-based discrimination." *EEOC v. Farmers Bros. Co.*, 31 F.3d 891, 898 (9th Cir. 1994). The Ninth Circuit has "long recognized that '[t]he sexual harassment of others, if shown to have occurred, is relevant and probative of [a defendant's] general attitude of disrespect toward his female employees and his sexual objectification of them.'" *Zetwick*, 850 F. 3d at 445 (quoting *Heyne v. Caruso*, 69 F.3d 1475, 1479-81 (9th Cir. 1995)); *see also McGinist v. GTE Serv. Corp.*, 360 F.3d 1103, 1117 (9th Cir. 2004) (If "hostility pervades a workplace, a plaintiff may establish a violation of Title VII, even if such hostility was not directly targeted at the plaintiff …."). Here, the pattern of gender-based hostility described in the complaints is relevant to Plaintiffs' claims which, at their core, are premised on the devaluation of female employees.

This is particularly true where, as here, the gender-based hostility is demonstrated by upper-level executives, as shown by the unredacted complaints, *see* section II.A, *supra*. In such an environment, evidence of sexual harassment can support class pattern or practice claims. *See*, *e.g.*, *Ellis v. Costco*, 285 F.R.D. 492, 520 (N.D. Cal. 2012) (evidence of a company culture that "fosters and reinforces stereotyped thinking" supports the claim that the company operates under a "common companywide promotion system"); *Chen-Oster v. Goldman Sachs & Co.*, 325 F.R.D. 55, 76-77 (S.D.N.Y. 2018) (pattern or practice discrimination class established by evidence including "sexualization" of female class members).

Not only do the complaints contain reports of discrimination in pay and promotions

supporting Plaintiffs' equal pay and disparate impact claims, they also evidence a pervasive

hostility to women at Nike and a workplace culture that turns a blind eye to bad behavior of

those with power, in support of Plaintiffs' disparate treatment claims.  Nike's claim that the

complaints lack relevance to the individual or class claims is simply wrong.

### III.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully oppose Nike's objections to the

F&R.

Dated:  November 8, 2023             Respectfully submitted,

GOLDSTEIN, BORGEN, DARDARIAN & HO

_____
Laura L. Ho (admitted *pro hac vice*)
Barry Goldstein, Of Counsel (admitted *pro hac vice*)
James Kan (admitted *pro hac vice*)
Byron Goldstein (admitted *pro hac vice*)
Katharine L. Fisher (admitted *pro hac vice*)
Mengfei Sun (admitted *pro hac vice*)
MARKOWITZ HERBOLD PC
Laura Salerno Owens, OSB #076230
David B. Markowitz, OSB #742046
Harry B. Wilson, OSB #077214
Kathryn P. Roberts, OSB #064854
ACKERMANN & TILAJEF PC
Craig Ackerman (admitted *pro hac vice*)
cja@ackermanntilajef.com
Brian Denlinger (admitted *pro hac vice*)
bd@ackermanntilajef.com
315 S Beverly Drive, Suite 504
Beverly Hills, CA 90212
Tel:  (310) 277-0614
Fax:  (310) 277-0635

INDIA LIN BODIEN, ATTORNEY AT LAW
India Lin Bodien (admitted *pro hac vice*)
india@indialinbodienlaw.com
2522 North Proctor Street, #387
Tacoma, WA 98406-5338
Tel:  (253) 212-7913
Fax:  (253) 276-0081

Of Attorneys for Plaintiffs and Opt-In Plaintiffs



Shareholders
Linda M. Dardarian
Laura L. Ho
James Kan

**Goldstein, Borgen, Dardarian & Ho**

Of Counsel
Barry Goldstein
David Borgen
Morris J. Baller

May 7, 2020

<u>Via E-Mail Only</u>
Gary_Magnuson@ord.uscourts.gov

Hon. Jolie A. Russo
Mark O. Hatfield United States Courthouse
Room 1027
1000 S.W. Third. Avenue
Portland, Oregon 97204

Re:    *Kelly Cahill, et al. v. Nike, Inc.*, Case No. 3:18-cv-01477-JR
Enforcement of the March 23, 2020 Discovery Order (ECF No. 99)

Dear Judge Russo:

Plaintiffs request assistance enforcing this Court's March 23, 2020 Order (Ex. A, attached hereto, ECF No. 99, "Order"). Nike is violating the Order because the Order directs Nike to produce all "names and employee ID numbers of employees and witnesses in already produced . . . workplace complaint documents" and Nike refuses to produce all such names and ID numbers.[1] The Order's ruling also states: "Plaintiff's motion to compel (as stated in their letter to the Court dated March 4, 2020) is granted." *Id*. at 8.

A month after the Order, on April 24, 2020, Nike made its revised production of documents concerning workplace complaints. Nike states it removed redactions of the names of complainants and witnesses.[2] Nike admits, though, that it intentionally kept redacted the names and ID numbers of the subjects of workplace complaints ("subjects"). *See e.g.,* Ex. B, attached hereto (examples of already produced documents concerning workplace complaints that still have redactions).[3] Plaintiffs have made several attempts to get Nike to comply with the Order, but Nike has repeatedly confirmed that it will not remove the redactions of subjects' names.

---

[1] On April 9, 2020, Nike filed Objections to the part of the Order regarding employment data but not to the part of the Order regarding documents concerning workplace complaints. ECF No. 101. Plaintiffs filed their Opposition to Nike's Objections on April 20, 2020 (ECF Nos. 102-3), and Nike filed a Reply in Support of its Objections on May 4, 2020 (ECF No. 104).
[2] Nike removed redactions of names of at least some non-subject complainants and witnesses, but Plaintiffs cannot confirm whether Nike has removed all such redactions because Nike did not provide a redaction log for these documents.
[3] Exhibit B contains documents Nike marked as "Confidential" and as "Highly Confidential – Attorneys' Eyes Only," but, pursuant to paragraphs 7(e) and 8 of the Protective Order (ECF No.

300 Lakeside Drive, Suite 1000, Oakland, CA 94612-3534    Tel 510. 763. 9800    Fax 510. 835. 1417    www.gbdhlegal.com

782532.5

Goldstein Decl. Ex. 9, Page 1 of 37
ER-466

-2-                                        May 7, 2020

Nike's refusal to identify the subjects of the complaints violates the Court's clear Order. Subjects are both employees and witnesses, and the Order directs Nike to "produce names and employee ID numbers of employees and witnesses in already produced . . . workplace complaint documents."  Order at 8.

Indeed, Nike fought against and lost this exact issue already.  In its opposition to Plaintiffs' March 4 letter to this Court, Nike recognized that Plaintiffs sought subjects' names: "Plaintiffs also assert that they need the names of non-party complainants, subjects, and third-party witnesses."  Nike's March 13, 2020 Letter to the Court at 7.  Nike's opposition letter argued against disclosing subjects' names.  *E.g., id.* (arguing that "Plaintiffs can obtain [anecdotal] evidence through the complaint files themselves; knowing … whom the complaints were about has no impact on this.").  After considering the letters and hearing argument, the Court ruled: "Plaintiff's motion to compel (as stated in their letter to the Court dated March 4, 2020) is *granted*."  Order at 8 (emphasis added).

In addition, Nike has not removed any redactions of any employee or witness names in several already produced documents concerning workplace complaints.  Plaintiffs provided Nike with examples of these documents, including Bates Numbers, on April 25 and May 1, 2020. Although Plaintiffs repeatedly asked Nike to re-produce these documents without redactions, Nike has not said when or if it will remove redactions and re-produce these documents. Moreover, Nike is more than thirty days past the deadline established by Local Rule 37-2, which states, "[u]nless otherwise directed by the Court, the party against whom an order to compel has been entered must comply within 14 days after the date of entry of the order."

Plaintiffs thus request an order: (a) finding Nike violated the Court's March 23, 2020 Order, and (b) directing Nike to complete its production in compliance with the Court's March 23, 2020 Order (ECF No. 99) within one week of entry of the order requested herein.

---

82), the Court and its staff can review the documents.  However, if the Court intends to put this document on the docket, please seal Exhibit B pursuant to paragraph 4 of the Protective Order.

782532.5

Goldstein Decl. Ex. 9, Page 2 of 37

ER-467

-3-                                              May 7, 2020

                              Respectfully submitted,

                              */s/ Byron Goldstein*
                              Byron Goldstein


                              Laura Salerno Owens, OSB #076230
                              David B. Markowitz, OSB #742046
                              Harry B. Wilson, OSB #077214
                              Anna M. Joyce, OSB #013112
                              Chad A. Naso, OSB #150310
                              chadnaso@markowitzherbold.com
                              MARKOWITZ HERBOLD PC
                              Tel.: (503) 295-3085

                              Laura L. Ho (admitted pro hac vice)
                              Barry Goldstein, Of Counsel (admitted pro hac
                              vice)
                              James Kan (admitted pro hac vice)
                              Byron Goldstein (admitted pro hac vice)
                              Katharine L. Fisher (admitted pro hac vice)
                              Mengfei Sun (admitted pro hac vice)
                              msun@gbdhlegal.com
                              Tel.: (510) 763-9800

                              Craig Ackerman (SBN 229832)
                              ACKERMANN & TILAJEF PC
                              Tel: (310) 277-0614

                              India Lin Bodien (SBN 44898)
                              INDIA LIN BODIEN LAW
                              Tel: (253) 503-1672


                              Attorneys for Plaintiffs



cc: Daniel Prince (danielprince@paulhastings.com)
    Zach P. Hutton (zachhutton@paulhastings.com)
    Felicia A. Davis (feliciadavis@paulhastings.com)
    Amy Joseph Pedersen (amy.joseph.pedersen@stoel.com)
    Kennon Scott (kennon.scott@stoel.com)

782532.5

Goldstein Decl. Ex. 9, Page 3 of 37

ER-468

# Exhibit A

Goldstein Decl. Ex. 9, Page 4 of 37

ER-469

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

| | |
|---|---|
| KELLY CAHILL, SARAH JOHNSTON, LINDSAY ELIZABETH, and HEATHER HENDER, individually and on behalf of others similarly situated, | 3:18-cv-1477-JR |
| Plaintiffs, | ORDER |
| v. | |
| NIKE, INC., an Oregon Corporation, | |
| Defendant. | |

RUSSO, Magistrate Judge:

Named plaintiffs Kelly Cahill, Sara Johnston, Lindsay Elizabeth, and Heather Hender bring this putative class and collective action alleging that defendant Nike systematically discriminates against them and other similarly situated women at Nike headquarters regarding salary and promotions. Several additional plaintiffs have filed consents to join this action. The Court has previously denied Nike's motion to dismiss most of the class and collective claims.[1]

---

1 Nike did not seek dismissal of the class claims regarding the disparate impact claim.

Goldstein Decl. Ex. 9, Page 5 of 37
ER-470

On March 4, 2020, plaintiffs submitted a letter to the court seeking an order to compel Nike to provide identifying information for employees in already produced employment data and workplace complaint documents.   On March 19, 2020, the Court heard argument on the request and for the reasons stated below, the request is granted.

At this stage, the Court has not certified a class action for any claims.

The proposed class includes:

All female current and former Nike employees at Nike Headquarters in Oregon, who were employed by Nike at any time from three years prior to opting-in through the resolution of this action, in a salaried, corporate position that was or is a lower-level position than Vice-President.

First Amended Complaint (FAC) (ECF #42) at ¶ 165.

Plaintiffs allege defendant has engaged in systemic sex discrimination against the collective/class members by paying them less than male employees with substantially equal job duties requiring substantially similar skill, effort, and responsibility performed under similar working conditions.  Id. at ¶ 167.  Plaintiffs further allege defendant has contributed to, and perpetuated sex-based pay disparities through common policies, patterns, or practices, including but not limited to those relating to starting salary and "band level," annual ratings, promotions, performance management policies or practices, centralized decision-making, and a work environment hostile to women.  Id. at ¶ 168.

The case is still in the pre-certification discovery phase.

Whether or not discovery will be permitted in a [class action] lies within the sound discretion of the trial court. See Berland v. Mack, 48 F.R.D, 121, 126 (S. D, N.Y. 1969). In determining whether to grant discovery [in connection with determining whether class-treatment is appropriate in a putative class action,] the court must consider its need, the time required, and the probability of discovery

Page 2 - ORDER

> resolving any factual issue necessary for the determination. The propriety of a class action cannot be determined in some cases without discovery, as, for example, where discovery is necessary to determine the existence of a class or set of subclasses. To deny discovery in a case of that nature would be an abuse of discretion. Where the necessary factual issues may be resolved without discovery, it is not required.

Kamm v. California City Development Co., 509 F.2d 205, 209-210 (9th Cir. 1975) (footnote omitted).

Where discovery is necessary for the class-treatment determination, it is an abuse of discretion to make the determination without permitting such discovery. See id. at 210. However, while "in some cases a district court should allow discovery to aid the determination of whether a class action is maintainable, the plaintiff bears the burden of advancing a prima facie showing that the class action requirements of Fed. R. Civ. P. 23 are satisfied or that discovery is likely to produce substantiation of the class allegations. Absent such a showing, a trial court's refusal to allow class discovery is not an abuse of discretion." Mantolete v. Bolger, 767 F.2d 1416, 1424 (9th Cir. 1985), citing Doninger v. Pacific Northwest Bell, Inc., 564 F.2d 1304, 1313 (9th Cir. 1977).

"At the pre-class certification stage, discovery in a putative class action is generally limited to certification issues: e.g., the number of class members, the existence of common questions, the typicality of claims, and the representative's ability to represent the class." Dysthe v. Basic Research, L.L.C., 273 F.R.D. 625 (C.D. Cal. 2011), citing Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 359 (1978).

In October, the Court addressed plaintiffs' request to compel (1) documents related to

Page 3 - ORDER

Goldstein Decl. Ex. 9, Page 7 of 37

ER-472

Nike's public statements about sex discrimination allegations raised in this action; (2) complaints

of sex discrimination made by putative class members to Nike and Nike's responses, if any; (3)

three former high-level Nike executives who plaintiffs have specifically alleged contributed to or

participated in sex discrimination; and (4) applicable insurance policies.  The Court ordered as

follows:

> After considering the parties' comprehensive briefing and oral argument on
> October 30, 2019, plaintiffs' September 27, 2019 letter request to the Court
> to compel precertification discovery is Granted in Part and Denied in Part as follows:
> 1) With respect to Nike's Public Statements on Discrimination (RFPs 39-43 and
> 47), Nike shall produce the statements themselves and the motion is denied with
> respect to any further documentation regarding the public statements. However, to
> the extent not already produced, Nike shall produce any uniform policies it
> maintained during the relevant time periods regarding hiring, firing, pay,
> promotions, and compensation systems; 2) With respect to documents concerning
> sex discrimination, harassment, and hostile work environment complaints (RFPs
> 27, 29, and 45-46), the motion is granted regarding any such complaints made by
> any named plaintiff or those putative plaintiffs who have already consented to join
> and any other complainants to the extent such complaints involve compensation,
> promotion, or performance reviews and specific complaints that male colleagues
> received favorable treatment in those areas for the same work; 3) With respect to
> the personnel records of former Nike executives Trevor Edwards, Daniel Tawiah,
> and David Ayre (RFPs 34-38), the motion is granted to the extent the records
> contain complaints of sexual harassment/discrimination linked to policies of
> pay/promotions and job duties either by the named executives themselves or
> regarding actions these executives may have taken to condone pay/promotion and
> job duty discrimination decisions of lower level managers; and 4) With respect to
> insurance policies (RFP 51) the motion is denied. All production pursuant to this
> motion is subject to the Protective Order (82) entered in this case on June 17,
> 2019, as relevant and necessary.

Order (ECF #89).

In producing documents responsive to the Court's order, Nike removed or redacted

identifying information from employment data related to workplace complaints, etc.  Plaintiffs

move for an order compelling Nike to produce the Identifying Information.  Nike objects

Page 4 - ORDER

Goldstein Decl. Ex. 9, Page 8 of 37

ER-473

alleging the anonymization of its data is appropriate because (1) the data contains highly-sensitive and confidential compensation, performance, and personnel records for thousands of individuals who have not consented to join this action, and many more who are outside of the putative class and collective altogether; and (2) Nike's redaction of complainant, subject, and third-party witness names (none of whom are named or opt-in plaintiffs or the subject of plaintiffs' FAC allegations) are from sensitive internal complaint files.  It appears that Nike wants to prevent plaintiffs from accessing a link between employee names/contact information and the data already provided rather than objecting to potential class member employees identifying information.

Nike states it has produced approximately 995,000 personnel records for nearly 13,400 current and former employees which include highly-sensitive personal and financial information detailing those 13,400 employees' compensation (including merit increases, bonuses, and equity awards), as well as dates of birth, performance review ratings, promotions, and dates of leave, retirement, and termination, including whether the termination was involuntary.  Nike asserts that given the Court has yet to conditionally certify a class, it should not be required to provide identifying information including names and employee ID numbers regarding the employees (who have not opted in) to protect their privacy interests.

Nike contends that plaintiffs have the data they need to analyze whether there is statistical evidence to support their class and collective claims, and the use of anonymized identifiers has no impact on their ability to analyze that data.  Plaintiffs assert they need the identifying information to help develop anecdotal evidence not captured in the raw data itself.

Page 5 - ORDER

Goldstein Decl. Ex. 9, Page 9 of 37

ER-474

Nike argues the relevant case law might allow compelled class member names, contact information, dates of employment, and work locations, but does not allow a link between those names to the complaints provided.   However, it does not appear that issue was discussed in most of the cases cited by Nike.[2]   Courts may not allow access to employee names/contact information solely to "solicit others to participate," but will allow it, for example, to investigate whether defendants made a common decision regarding classification.   Cedano v. Thrifty Payless, Inc., 2011 U.S. Dist. LEXIS 155956, at *33, 2011 WL 8609402 (D.Or. May 9, 2011).

Some courts have declined to require production of underlying identifying data due to privacy concerns pre-certification.   For example, in Barret v. Forest Labs, Inc., the court noted:

> There remains the question of the names of the employees whose employment data is to be produced. As defendants suggest, some of the data to be revealed is potentially quite sensitive. Although plaintiffs will undoubted have need for disclosure of the names of collective members if their forthcoming certification motion is granted, they fail to make a persuasive case for immediate disclosure of all names at this stage. They will be free to seek partial or full disclosure irrespective of whether their certification motion is granted, provided that they can demonstrate a specific need for some or all of those names. But they have not yet made that showing.

Barrett v. Forest Labs., Inc., 2015 U.S. Dist. LEXIS 51495 at *8 (S.D.N.Y. April 8, 2015).

However, Barret, as noted in the quote above, indicates that such a link between the data and employee identifying information may nevertheless be discoverable pre-certification.   In Wellens v. Daiichi Sankyo, Inc., the court identified what types of needs would justify disclosure of the names and linking information:

---

2 See, e.g., Babbitt v. Albertson's, Inc., 1992 U.S. Dist. LEXIS 19091 at *1617 (N.D.Cal. December 1, 1992) (in ordering names, addresses, telephone numbers and social security numbers of current and past employees produced, the court noted a protective order was sufficient to protect privacy interests and the information could lead to further relevant evidence).   The court did not address links to employment data or complaints, but other relevant evidence

Page 6 - ORDER

Goldstein Decl. Ex. 9, Page 10 of 37

ER-475

discovery from putative class members may lead to anecdotal evidence not captured in the pay and benefits data produced by Defendants, that such evidence is important to bring discrimination claims "convincingly to life," and as such may substantiate Plaintiffs' arguments for class certification. The court will therefore exercise its discretion to permit discovery of putative class members' contact information.

Wellens v. Daiichi Sankyo, Inc., 2014 U.S. Dist. LEXIS 29794 at *7 (N.D.Cal. March 5, 2014).[3]

Here, plaintiffs assert the identifying information will lead to anecdotal evidence relevant to certification of their disparate treatment claim.   Specially, plaintiffs contend the information sought will help develop evidence in support of class certification, including: (1) statistical evidence where disparate data files rely on identifying information for connection and analysis; (2) evidence of top management's involvement in discrimination; and (3) anecdotal evidence in support of class certification.   With respect to the October 31, 2019, Order, the Court already limited plaintiffs' discovery into the complaints to prevent a "fishing expedition."   Implicit in the Court's decision was a limitation on the invasion of privacy interests of employees who have yet to consent to join the lawsuit. Further, only those individuals with complaints similar to the named plaintiffs are appropriately discoverable.   The Court notes the existing Protective Order and find it sufficient to protect the privacy interests of the employees who filed the complaints. A link between the complaints and identifying information may better allow plaintiffs to bolster the issues related to certification especially with respect to the disparate treatment claim. Regarding documents demonstrating pay differentials, merit increases, bonuses, equity awards,

---

could include complaints made by the other employees of the type complained of by the named plaintiffs as well as employee data relevant to certification.

3 Nike argues the Wellens Court only allowed discovery of contact information and not disclosure of the names applied to data.   However, the court left the door open to a link between the data and the names because the parties had not addressed the privacy concerns in their briefing and noted that the main issue was whether the protective order should include additional protections.   Id. at *11-12.

Page 7 - ORDER

Goldstein Decl. Ex. 9, Page 11 of 37

ER-476

and performance ratings, the identity of the employee regarding that data may help develop anecdotal evidence of disparate treatment as well.

The Court is mindful of the strong privacy interests of the employees who will be identified.  The Protective Order (ECF #82) is sufficient to address that concern with the addition of one further restraint on the information provided:  Should plaintiffs' counsel seek to contact a named employee in an effort to find anecdotal evidence that may be lacking in the files or complaints themselves, counsel shall first inform the employee of their right to refuse to talk.

<u>CONCLUSION</u>

Plaintiffs' motion to compel (as stated in their letter to the Court dated March 4, 2020) is granted.  Defendant shall produce names and employee ID numbers of employees and witnesses in already produced employment data and workplace complaint documents.  All production pursuant to this motion is subject to the Protective Order (ECF #82) entered in this case on June 17, 2019, with the additional requirement that any contacted employee shall first be informed of a right to refuse to talk at this stage of the proceedings.

DATED this 23rd day of March, 2020.

_____
/s/ Jolie A. Russo
JOLIE A. RUSSO
United States Magistrate Judge

Page 8 - ORDER

Goldstein Decl. Ex. 9, Page 12 of 37
ER-477

# Exhibit B

Goldstein Decl. Ex. 9, Page 13 of 37

ER-478

Confidential



*Starfish*



# IF IT'S HAPPENED TO YOU WE WANT TO KNOW.
Please select one or more choices below.

☒ **Discrimination or other harassment**
(Generally, Discrimination or Harassment can include threats, insults, jokes, unwelcome verbal comments or email, derogatory pictures or gestures or unwelcome physical conduct, bullying, retaliation, discrimination or disrespect based on race, age, sexual orientation, disability, ethnic group or any protected class status, intimidation, micro-aggressions, exclusionary behavior and actions including 'cliques' or 'clubs', preferential treatment, the feeling of having to 'prove' yourself versus colleagues, pay or performance recognition. Could include purposely ambiguous CFE feedback whether verbal or written, lack of a clear and supported growth plan from manager, gender or diversity bias relating to hiring, promoting, pay or performance rewards. Discrimination or harassment at work can happen inside or outside of the work-place.)

☐ **Sexual harassment**
(Generally, Sexual Harassment can include unwelcome sexual advances, requests for sexual favors, other verbal or physical conduct of a sexual nature. Sexual harassment at work can happen inside or outside of the work-place and can include co-workers including athletes, managers, vendors and visitors.)

# IF YOU WOULD LIKE TO SHARE MORE DETAILS, PLEASE DO SO OVER THE PAGE.
(If you are a Nike employee, Nike's harassment and anti-discrimination policy can be found here: https://nikehr.nike.com/node/15978)

NIKE_00019389

Goldstein Decl. Ex. 9, Page 14 of 37

ER-479

Confidential

# MY EXPERIENCE

(If you need more space, please photocopy this page or include additional attachments as needed)

Name (optional):

Please share brief outline of your experience:

*I experienced unfair treatment from a manager around pay, position and respect. (Preferential Treatment)*

Date / location if you can remember:

*NIKE 2016*

Did you experience this situation first hand?

*Yes.*

Were there any witnesses?

*Yes.*

Do you have any hard evidence such as emails, photo's etc?

*Just anecdotes around the situation, some 2x history.*

If not experienced first hand, then how was it brought to your attention?



Did you report this experience?

*No.*

If you reported it, was it resolved?



If you did not report it, why did you make that decision?

*I made myself believe that I, indeed wasn't 'good enough' as the underqualified counterpart* to whom *the manager showed preferential treatment.*

What impact has this experience had on you?

(For example; career progression, physical health, psychological health, other)

*Career progression   + Emotional wear down. I fell into a depression for about a month thinking of low self-worth before I diverted action and energy towards finding another role (and boss...).*

Please indicate if you would like to discuss and potentially elevate your experience:

Goldstein Decl. Ex. 9, Page 15 of 37

ER-480

NIKE_00019390

3/1/18

March 1, 2018
[Received by ██████████ via email]

Please share brief outline of your experience:
- I confronted my Director and Senior Director about pay discrepancy. My female friend who is a global brand manager (I am NA brand manager) earns 25k more than me. 25k. Same job. I also have 5 years more work experience than her, including 3 different countries and 5 cities. My management told me (in my CFE) that there are no pay rises, and that people come into Nike at different pay levels and if I started lower than my friend then that's just how it is and I needed to negotiate harder when I came into Nike. I also asked for my pay to be internally benchmarked and HR gave me an external benchmark. I asked again, nothing has happened.
- My new Brand Director was a Comms Director for 4 months. He hated the role and hated living in Portland and threatened to quit. His behavior was 'rewarded' by him being promoted to Brand Director and moved to NYC. I was told I was too inexperienced for the role. I have 10 years of work experience in 3 countries, and have been a brand manager for 2 years. As such, I am now the only person on my team located in Portland. I am a Brand Manager and i am alone, with no management or team, no one to learn from or work with. I asked to move to LA to sit with EM, or to NYC to sit with my team and have been rudely refuted and told that there is 'no way' I am moving and that they need 'ears on campus.' My reply was 'I am not your ears' which didn't go down well.
- I confronted the new Director about locations, and he admitted to me on a call that it would've made more sense for the Director to be in Portland and closer to global, and the Manager to be in market activating.
Date / if you can remember:
- During my CFE around Feb 5
Did you experience this situa first hand?
- Yes
Were there any witnesses?
- The director and senior director. I also have emails. I've also spoken to HR and they have been great listeners, but that's it. ██████████ actually said to me "Do you think your Senior Director is trying to make you quit?"
Do you have any hard evidence such as emails, photo's etc?
- Yes
What impact has this experience had on you?
(For example; career progression, physical health, psychological health, other)
- I want to leave my team/Nike. I'm alone, in Portland. No one moves to Portland alone with no friends to work at one of the biggest companies in the world and basically be remote. I barely even go to the office I just work from home and save the money on gas. It's taken a huge toll on me mentally and emotionally, I am so lonely, they basically left me behind and gave me an inexperienced Director who I am now teaching how to do the job. I had no Director for 4 months, I was doing the job of specialist manager and director and this is the reward I get.

Confidential

NIKE_00019420
Goldstein Decl. Ex. 9, Page 16 of 37
ER-481



Confidential



I am given responsibilities but then questioned on my decisions and asked to provide timelines or explanations when my male counterparts are not asked to do the same.

I sit in large meetings and am commonly the only woman or minority. I do not see myself represented in the environment that I work in.

Nike sent out an email that women make 99% what men do and that it's essentially equal. It's not equal.

In general, I feel that sometimes myself and other women I work with are not heard, included, or respected and that our ideas and opinions are often met with immediate resistance.

I have not gone to HR about many of these issues not only because they were so unhelpful in the past but also because I honestly think a lot of it is systemic and subconscious. I believe that Nike should make an intentional effort to change the environment that we work in by hiring and promoting women and minorities at the same frequency and to the same levels of our Caucasian male counterparts. I see the word "Equality" on my screensaver but I do not see it being practiced.

Confidential

NIKE_00022567

Goldstein Decl. Ex. 9, Page 18 of 37

ER-483



# IF IT'S HAPPENED TO YOU WE WANT TO KNOW.

**Please select one or more choices below.**

☒ **Discrimination or other harassment**
(Generally, Discrimination or Harassment can include threats, insults, jokes, unwelcome verbal comments or email, derogatory pictures or gestures or unwelcome physical conduct, bullying, retaliation, discrimination or disrespect based on race, age, sexual orientation, disability, ethnic group or any protected class status, intimidation, micro-aggressions, exclusionary behavior and actions including 'cliques' or 'clubs', preferential treatment, the feeling of having to 'prove' yourself versus colleagues, pay or performance recognition. Could include purposely ambiguous CFE feedback whether verbal or written, lack of a clear and supported growth plan from manager, gender or diversity bias relating to hiring, promoting, pay or performance rewards. Discrimination or harassment at work can happen inside or outside of the work-place.)

☐ **Sexual harassment**
(Generally, Sexual Harassment can include unwelcome sexual advances, requests for sexual favors, other verbal or physical conduct of a sexual nature. Sexual harassment at work can happen inside or outside of the work-place and can include co-workers including athletes, managers, vendors and visitors.)

# IF YOU WOULD LIKE TO SHARE MORE DETAILS, PLEASE DO SO OVER THE PAGE.

(If you are a Nike employee, Nike's harassment and anti-discrimination policy can be found here: https://nikehr.nike.com/node/15978)

Highly Confidential - Attorneys' Eyes Only

## MY EXPERIENCE

(If you need more space, please photocopy this page or include additional attachments as needed)



Name (optional):  NEUSSA OHM

Please share brief outline of your experience:
BROUGHT INTO MY BOSS' OFFICE AND GIVEN A LIST OF 5 MALE NAMES FOR MY OPEN
S BAND GOAL WT ROLE. TOLD I WAS NOT TO WORK OUT UNTIL I PICKED ONE OF

Date / location if you can remember:
THOSE NAMES. I ASKED FOR 3 FEMALES TO BE ADDED FOR CONSIDERATION AND
WAS TOLD "NO YOU NEED A MAN IN THAT ROLE". THIS WAS AT 630PM. WENT ROUND

Did you experience this situation first hand?
AND ROUND ARGUING THE OPPOSITE (ALL MEN REPORTING INTO PVP)
YES                                 WAS CURRENT IN. ▮▮▮▮▮▮▮▮ ORG. WHY CAN WE NOT

Were there any witnesses?
NO                          LOOK AT MOST QUALIFIED TALENT?

Do you have any hard evidence such as emails, photo's etc?
EMAIL

If not experienced first hand, then how was it brought to your attention?

Did you report this experience?
YES. TO STEPHANIE STAPLES IN HR. I ALSO SHARED WITH 2 OTHER LEADERS FOR ADVICE.

If you reported it, was it resolved?
WE ENDED UP LOOKING AT A MORE COMPREHENSIVE CANDIDATE POOL & PROMOTED A FEMALE INTO THE ROLE.

If you did not report it, why did you make that decision?

What impact has this experience had on you? LACK OF FAITH IN A FAIR & EQUITABLE PROMOTION PROCESS FOR SENIOR
(For example; career progression, physical health, psychological health, other) LEADERSHIP POSITIONS. MASSIVE DISAPPOINTMENT THAT I
HAD TO SPEND SO MUCH TIME GOING ROUND TO ENSURE

Please indicate if you would like to discuss and potentially elevate your experience: TO GET EQUAL REPRESENTATION OF FEMALES AND
ULTIMATELY ADVOCATING FOR THE ONE WHO
WAS MOST QUALIFIED.

Highly Confidential - Attorneys' Eyes Only

NIKE_00022569
Goldstein Decl. Ex. 9, Page 20 of 37

ER-485

From: "Staples, Stephanie" <Stephanie.Staples@nike.com>
Date: Wednesday, December 6, 2017 at 1:23 AM
To: Nike <Melissa.OHM@nike.com>
Subject: Re: Follow Up Women's Apparel : Please keep this confidential

Thanks for the update Melissa.  Let me speak with Elizabeth and circle back.

Will you keep me posted regarding your conversations with Reenie and Tyler?

Thank you,
Stephanie

Sent from my iPhone

On Dec 6, 2017, at 7:57 AM, Ohm, Melissa <Melissa.OHM@nike.com> wrote:

Hi Stephanie,
Thank you so much for the time today. Sending over the pages I have been working on as it's a slight update.  Again please keep this attachment tight as much as possible as well as what I am about to share with you.

I am speaking to Reenie at 3 and Tyler at 4 tomorrow where I plan to address our conversation from today as well as another topic which came up in a meeting with ███ this evening- Tricia's backfill.  ███ informed me that he, Tyler, Reenie and few other members from the GALT met Monday to discuss her role and decided we needed diversity when filling it.  They came up with 5 names, all men from the org, none were on my radar when ███ and I spoke about it last week or when Reenie and I spoke about it the weeks prior. 2 of these men have been in their role for less than 5 months, 2 are in Jordan (1 has had serious performance issues from what I have been told by his manager), and one recently reported to me in men's NSW (he has been in his role less than 2 years and not a top performer).  I asked me to select one.  I have never had a talent conversation in this way.  It's contrary to the OTP conversations we have had as an apparel leadership team where we identified HI PO HI PERF talent and it's contrary to earlier conversations I had with Reenie weeks ago where we discussed the RIGHT talent for the position.

Of course I want to have a diverse team which I am looking to put in the right way amongst the 45 roles reporting to me, but I also want the right talent for this critical GCAL role. I plan on being honest and clear with both Reenie and Tyler regarding this situation tomorrow. It is disappointing that I continue to be left out of critical conversations because of this divisional structure.  I am disappointed that the first and only filler in considering a candidate pool was it had to be a man. It does not seem right that we would pass up women who are capable and ready for this role simply because there is a feeling that we have too many women on my team. Our work is about empowerment, progression, and the potential to change the world. Excluding women from that opportunity seems discriminatory to me. ███ DVP of sport categories, has all men in his 7 leadership positions and I have to wonder if next time he has an open role he will be given a "forced diversity list" of women?

███ required me to select a name.  Forced to choose, I told him I would support Neil Monroe in the role.  Neil was promoted just 5 months ago as GCAL men's training.  I don't know if he will go for this, or that it's a good move for him.  But here I am having made my "pick" thinking this must be what it feels like to be in the twilight zone.

Amy is aware as I texted her about this tonight.

Melissa

Highly Confidential - Attorneys' Eyes Only

NIKE_00022570

Goldstein Decl. Ex. 9, Page 21 of 37

ER-486

From: Nike <Melissa.OHM@nike.com>
Date: Wednesday, December 6, 2017 at 10:06 AM
To: ▮▮▮▮▮▮▮▮▮▮
Subject: GCAL- training

Hi ▮

After going home and processing last night what we discussed I wanted to ensure I heard you clearly.  I agree diversity is critical for us to have in the org and equally as important is having the best person for the job.  The 5  names you gave me (Brue, Oliver, Lee, Neil, Josh) being all men still is not computing as there is other talent in the org like Meena Park, Kimberly Mack, and Lucy Bailey who I believe are all high on the 9 box and would be interesting to consider as well. I feel like I was forced to make a "pick" and feels it needs more thought and consideration.

Maybe we can get 5 mins after the bra conversation.

Thanks, Melissa

Highly Confidential - Attorneys' Eyes Only

Confidential

⑦

## IF IT'S HAPPENED TO YOU WE WANT TO KNOW.

Please select one or more choices below.

☒ **Discrimination or other harassment**

(Generally, Discrimination or Harassment can include threats, insults, jokes, unwelcome verbal comments or email, derogatory pictures or gestures or unwelcome physical conduct, bullying, retaliation, discrimination or disrespect based on race, age, sexual orientation, disability, ethnic group or any protected class status, intimidation, micro-aggressions, exclusionary behavior and actions including 'cliques' or 'clubs', preferential treatment, the feeling of having to 'prove' yourself versus colleagues, pay or performance recognition. Could include purposely ambiguous CFE feedback whether verbal or written, lack of a clear and supported growth plan from manager, gender or diversity bias relating to hiring, promoting, pay or performance rewards. Discrimination or harassment at work can happen inside or outside of the work-place.)

☐ **Sexual harassment**

(Generally, Sexual Harassment can include unwelcome sexual advances, requests for sexual favors, other verbal or physical conduct of a sexual nature. Sexual harassment at work can happen inside or outside of the work-place and can include co-workers including athletes, managers, vendors and visitors.)

## IF YOU WOULD LIKE TO SHARE MORE DETAILS, PLEASE DO SO OVER THE PAGE.

(If you are a Nike employee, Nike's harassment and anti-discrimination policy can be found here: https://nikehr.nike.com/node/15978)

NIKE_00022572

Goldstein Decl. Ex. 9, Page 23 of 37

ER-488

Confidential

## MY EXPERIENCE

(If you need more space, please photocopy this page or include additional attachments as needed)

Name (optional):

Please share brief outline of your experience:
I WAS TOLD "NO ONE GIVES A FUCK ABOUT FEMALE EMPOWERMENT," BY A MALE SUPERIOR.

Date / location if you can remember:
SUMMER 2017

Did you experience this situation first hand?
YES

Were there any witnesses?
YES

Do you have any hard evidence such as emails, photo's etc?
NO, IT WAS VERBAL.

If not experienced first hand, then how was it brought to your attention?

Did you report this experience?
YES

If you reported it, was it resolved?
UNSURE

If you did not report it, why did you make that decision?

What impact has this experience had on you?
(For example; career progression, physical health, psychological health, other)
IT HAS MADE ME QUESTION THE OVERALL CULTURE @ NIKE. I WORK IN A VERY MALE DOMINATED DEPT. AND HAVE ALSO BEEN IMPACTED FINANICALLY — MALE CO-WORKERS IN LOWER POSITIONS

Please indicate if you would like to discuss and potentially elevate your experience:
MAKING THE SAME SALARY.

NIKE_00022573

Goldstein Decl. Ex. 9, Page 24 of 37

ER-489

Things I have experienced in my near 10-year career at Nike.

1. When I was promoted, the man that was hired to backfill by lower positioned was hired at the same salary that I was promoted to. We were at different band levels, I had more experience and I was in a higher position and he was making the same salary as me.

2. A male surperior told me in a meeting that "No one gives a fuck about female empowerment." It was in the context of a project and a new direction that the project needed to take, but he said it right to my face with no apology.

3. This is second-hand, but I have heard of certian male leaders not wanting women with children to work on their teams because they can't work late and they have other commitments outside of Nike.

4. There are very few female role models in my function that are married with children and excelling in their careers. It is extremely male dominated.

5. I have experienced countless times when I have been presenting to leadership (always men) and they won't make eye contact with me or engage in conversation. When one of my male counterparts gets up to present, their reaction is very different. I feel as though they aren't taking me seriously or respecting me or what I have to say.

Confidential

NIKE_00022574
Goldstein Decl. Ex. 9, Page 25 of 37
ER-490

Confidential

⑤

# IF IT'S HAPPENED TO YOU WE WANT TO KNOW.

**Please select one or more choices below.**

☑ **Discrimination or other harassment**
(Generally, Discrimination or Harassment can include threats, insults, jokes, unwelcome verbal comments or email, derogatory pictures or gestures or unwelcome physical conduct, bullying, retaliation, discrimination or disrespect based on race, age, sexual orientation, disability, ethnic group or any protected class status, intimidation, micro-aggressions, exclusionary behavior and actions including 'cliques' or 'clubs', preferential treatment, the feeling of having to 'prove' yourself versus colleagues, pay or performance recognition. Could include purposely ambiguous CFE feedback whether verbal or written, lack of a clear and supported growth plan from manager, gender or diversity bias relating to hiring, promoting, pay or performance rewards. Discrimination or harassment at work can happen inside or outside of the work-place.)

☐ **Sexual harassment**
(Generally, Sexual Harassment can include unwelcome sexual advances, requests for sexual favors, other verbal or physical conduct of a sexual nature. Sexual harassment at work can happen inside or outside of the work-place and can include co-workers including athletes, managers, vendors and visitors.)

# IF YOU WOULD LIKE TO SHARE MORE DETAILS, PLEASE DO SO OVER THE PAGE.

(If you are a Nike employee, Nike's harassment and anti-discrimination policy can be found here: https://nikehr.nike.com/node/15978)

NIKE_00022575

Goldstein Decl. Ex. 9, Page 26 of 37

ER-491

Confidential

## MY EXPERIENCE

(If you need more space, please photocopy this page or include additional attachments as needed)

Name (optional):

Please share brief outline of your experience:

Date / location if you can remember:

Did you experience this situation first hand?

Were there any witnesses?

Do you have any hard evidence such as emails, photo's etc?

If not experienced first hand, then how was it brought to your attention?

Did you report this experience?

If you reported it, was it resolved?

If you did not report it, why did you make that decision?

What impact has this experience had on you?

(For example; career progression, physical health, psychological health, other)

Please indicate if you would like to discuss and potentially elevate your experience:

> There is a leader in our org that is trying to take care of a problem employee ███ who is a poor performer and also called his employee a "Bitch" but she is not able to do anything about it because he is protected by the European Boys club. I know this was reported to ER. Why is nothing happening? Because he is friends with ████████ who phoned in a favor.

NIKE_00022576

Confidential

## MY EXPERIENCE

(If you need more space, please photocopy this page or include additional attachments as needed)

Name (optional):

Please share brief outline of your experience:

Date / location if you can remember:

Did you experience this situation first hand?

Were there any witnesses?

Do you have any hard evidence such as emails, photo's etc?

If not experienced first hand, then how was it brought to your attention?

Did you report this experience?

If you reported it, was it resolved?

If you did not report it, why did you make that decision?

What impact has this experience had on you?
(For example; career progression, physical health, psychological health, other)

Please indicate if you would like to discuss and potentially elevate your experience:

Generally I have experienced that certain employees (mostly male) are "protected" because of who they are friends with, regardless of the fact that they are severe under-performers. We keep "finding homes" for these people and they take up valuable space in the company. I am in a situation where I do not feel empowered to manage with courage because of long standing relationships with Sr. leaders. (Sr. leaders who won't take on the problem themselves, by the way)

NIKE_00022577

Goldstein Decl. Ex. 9, Page 28 of 37

ER-493

Confidential

Anonymous

③

# IF IT'S HAPPENED TO YOU WE WANT TO KNOW.

**Please select one or more choices below.**

☑ **Discrimination or other harassment**
(Generally, Discrimination or Harassment can include threats, insults, jokes, unwelcome verbal comments or email, derogatory pictures or gestures or unwelcome physical conduct, bullying, retaliation, discrimination or disrespect based on race, age, sexual orientation, disability, ethnic group or any protected class status, intimidation, micro-aggressions, exclusionary behavior and actions including 'cliques' or 'clubs', preferential treatment, the feeling of having to 'prove' yourself versus colleagues, pay or performance recognition.  Could include purposely ambiguous CFE feedback whether verbal or written, lack of a clear and supported growth plan from manager,  gender or diversity bias relating to hiring, promoting, pay or performance rewards. Discrimination or harassment at work can happen inside or outside of the work-place.)

☐ **Sexual harassment**
(Generally, Sexual Harassment can include unwelcome sexual advances, requests for sexual favors, other verbal or physical conduct of a sexual nature.  Sexual harassment at work can happen inside or outside of the work-place and can include co-workers including athletes, managers, vendors and visitors.)

# IF YOU WOULD LIKE TO SHARE MORE DETAILS, PLEASE DO SO OVER THE PAGE.

(If you are a Nike employee, Nike's harassment and anti-discrimination policy can be found here: https://nikehr.nike.com/node/15978)

NIKE_00022578

Goldstein Decl. Ex. 9, Page 29 of 37

ER-494

Confidential

## MY EXPERIENCE

(If you need more space, please photocopy this page or include additional attachments as needed)

Name (optional):

Please share brief outline of your experience:

Date / location if you can remember:

Did you experience this situation first hand?

Were there any witnesses?

Do you have any hard evidence such as emails, photo's etc?

If not experienced first hand, then how was it brought to your attention?

Did you report this experience?

If you reported it, was it resolved?

If you did not report it, why did you make that decision?

What impact has this experience had on you?
(For example; career progression, physical health, psychological health, other)

Please indicate if you would like to discuss and potentially elevate your experience:

NIKE_0002579

Goldstein Decl. Ex. 9, Page 30 of 37

ER-495



- INEQUITY IN PAY: I have asked twice to have my salary reviewed in the past year and a half, my boss says that will happen but never follows through. I know for a fact I am underpaid.



Confidential

NIKE_00022580

Goldstein Decl. Ex. 9, Page 31 of 37

ER-496



Confidential



My story is less of a specific incident, but a handful of occurances and an overarching theme.

When I received this questionnaire, I asked several of my female co workers what they thought of working at Nike. I asked how fairly they were treated based on performance vs gender. All unanimously talked about "the Boys Club" of Nike. A giant men's sports team, where favoritism prevails and females couldn't possibly play in the sandbox. Where I've received advice the reason I'm not advancing as I'd like, I'm not in the same social scene or sporting events as my co-workers. Or that as a woman males don't want to be so serious. Keep it light, keep it funny.

Over my years at Nike I have had a few occurances of discrimination or harrassment.

- Receiving an invitiation to ███████ (former employee) NFL launch party. All my male counterparts that actually worked on NFL, while I worked on Men's training did not receive the invite. I did. Come to find out several females including Nike store associates were invited to the party. I declined.
- Another time, I provided financials to a VP. When I stepped into the meeting to provide the financial facts to her, a single male VP in the audience asked me multiple times if I was going to stay for the meeting. A few of the other female co workers around me where uncomfortable. I could tell his inquisition was not work related. No employees below an S band were in the room. I was a U band.
- Since then I have had several incidents of my opinion being ignored or dismissed by a specific manager. When my male counterpart brings up the exact same opinions, the manager then decides to listen. This manager also yelled, screamed and banged his fists on the table at me, which was reported. He also came at another female employee, calling her a bitch. This was also reported. A third female manager has complained of receiving unfair treatment. My male counterparts did not complain of the same treatment. What is being done about it today, I am unclear.
- One thing we as a Global company need to recognize is people's experiences that frame their actions and behaviours. Meaning, the world is in various stages of acceptance from race, religion, gender, age etc. As we come together across the globe, some of us experienced rather progressive societies and others of us have not. How do we provide cultura training to bridge the gaps?

My biggest for Nike, as I talked with other femail co workers, was realizing how the "boys club" is a common theme. This is something I experience and tend to ignore, but why should I have to work 2X as hard as those around me? More importantly, how will we attract and retain top female talent? Women are the main spenders in households today. Why is our business so skewed toward men? How we will capture her attention? It starts from credibiilty within the organization. I hate to think of the talent we may be missing out on maximizing for the company, because she is being overlooked.

Appreciate the opportunity to speak.

Confidential

NIKE_00022582
Goldstein Decl. Ex. 9, Page 33 of 37
ER-498

**Scott Grimes**

| | |
|---|---|
| **From:** | Davis, Felicia A. <feliciadavis@paulhastings.com> |
| **Sent:** | Thursday, May 7, 2020 3:29 PM |
| **To:** | Gary_Magnuson@ord.uscourts.gov |
| **Cc:** | Prince, Daniel; Hutton, Zachary; amy.joseph.pedersen@stoel.com; kennon.scott@stoel.com; Laura Ho; James Kan; Barry Goldstein; Byron Goldstein; Mengfei Sun; Laura Salerno Owens; David Markowitz; Harry Wilson; Anna Joyce; Chad A. Naso; cja@ackermanntilajef.com; india Bodien; Scott Grimes |
| **Subject:** | RE: Cahill, et al. v. Nike, Inc- Case No. 3:18-cv-01477-JR |

Deputy Magnuson,

We believe the issue can be resolved pursuant to Nike's request for clarification of the March 23, 2020 order submitted earlier today, but if the Court prefers additional briefing, please let us know, and we will prepare a formal written response to plaintiffs' letter brief.

Thank you very much,
Felicia Davis

---

**From:** Scott Grimes <sgrimes@gbdhlegal.com>
**Sent:** Thursday, May 7, 2020 2:24 PM
**To:** Gary_Magnuson@ord.uscourts.gov
**Cc:** Prince, Daniel <danielprince@paulhastings.com>; Hutton, Zachary <zachhutton@paulhastings.com>; Davis, Felicia A. <feliciadavis@paulhastings.com>; amy.joseph.pedersen@stoel.com; kennon.scott@stoel.com; Laura Ho <lho@gbdhlegal.com>; James Kan <jkan@gbdhlegal.com>; Barry Goldstein <bgoldstein@gbdhlegal.com>; Byron Goldstein <brgoldstein@gbdhlegal.com>; Mengfei Sun <msun@gbdhlegal.com>; Laura Salerno Owens <laurasalerno@markowitzherbold.com>; David Markowitz <davidmarkowitz@markowitzherbold.com>; Harry Wilson <harrywilson@markowitzherbold.com>; Anna Joyce <annajoyce@markowitzherbold.com>; Chad A. Naso <chadnaso@markowitzherbold.com>; cja@ackermanntilajef.com; india Bodien <india@indialinbodienlaw.com>
**Subject:** [EXT] Cahill, et al. v. Nike, Inc- Case No. 3:18-cv-01477-JR

Hon. Jolie A. Russo:

Attached please find Plaintiffs' Letter Regarding Enforcement of the March 23, 2020 Discovery Order in the matter *Cahill, et al. v. Nike, Inc.*, No. 3:18-cv-01477-JR.

**Scott G. Grimes ▪ Senior Paralegal ▪ Goldstein, Borgen, Dardarian & Ho** ▪ 300 Lakeside Drive, Suite 1000 ▪ Oakland, CA 94612 ▪ T: (510) 763-9800 ▪ F: (510) 835-1417 ▪ www.gbdhlegal.com



Please Note: The information in this E-mail message is legally privileged and confidential information intended only for the use of the addressee(s) named above. If you, the reader of this message, are not the intended recipient, you are hereby notified that you should not further disseminate, distribute, or forward this E-mail message. If you have received this E-mail in error, please notify the sender as soon as possible. In addition, please delete the erroneously received message from any device/media where the message is stored. Thank you.

1

Goldstein Decl. Ex. 9, Page 34 of 37

ER-499

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
This message is sent by a law firm and may contain information that is privileged or confidential. If you received
this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.
If you reply to this message, Paul Hastings may collect personal information including your name, business name
and other contact details, and IP address. For more information about Paul Hastings' information collection, privacy
and security principles please click HERE. If you have any questions, please contact Privacy@paulhastings.com.

2

Goldstein Decl. Ex. 9, Page 35 of 37

ER-500

**Scott Grimes**

| | |
|---|---|
| **From:** | Gary Magnuson <gary_magnuson@ord.uscourts.gov> |
| **Sent:** | Friday, May 8, 2020 2:00 PM |
| **To:** | Davis, Felicia A. |
| **Cc:** | Prince, Daniel; Hutton, Zachary; amy.joseph.pedersen@stoel.com; kennon.scott@stoel.com; Laura Ho; James Kan; Barry Goldstein; Byron Goldstein; Mengfei Sun; Laura Salerno Owens; David Markowitz; Harry Wilson; Anna Joyce; Chad A. Naso; cja@ackermanntilajef.com; india Bodien; Scott Grimes |
| **Subject:** | RE:  Cahill, et al. v. Nike, Inc- Case No. 3:18-cv-01477-JR |

Counsel:

Judge Russo says she will await Judge Hernandez's ruling regarding her earlier order and will address this as necessary afterwards.

Best,

Gary Magnuson,
Courtroom Deputy,
U.S. District Court,
District of Oregon.
(503) 326-8055; fax (503) 326-8010
gary_magnuson@ord.uscourts.gov

---

**From:** Davis, Felicia A. <feliciadavis@paulhastings.com>
**Sent:** Thursday, May 7, 2020 3:29 PM
**To:** Gary Magnuson <gary_magnuson@ord.uscourts.gov>
**Cc:** Prince, Daniel <danielprince@paulhastings.com>; Hutton, Zachary <zachhutton@paulhastings.com>; amy.joseph.pedersen@stoel.com; kennon.scott@stoel.com; Laura Ho <lho@gbdhlegal.com>; James Kan <jkan@gbdhlegal.com>; Barry Goldstein <bgoldstein@gbdhlegal.com>; Byron Goldstein <brgoldstein@gbdhlegal.com>; Mengfei Sun <msun@gbdhlegal.com>; Laura Salerno Owens <laurasalerno@markowitzherbold.com>; David Markowitz <davidmarkowitz@markowitzherbold.com>; Harry Wilson <harrywilson@markowitzherbold.com>; Anna Joyce <annajoyce@markowitzherbold.com>; Chad A. Naso <chadnaso@markowitzherbold.com>; cja@ackermanntilajef.com; india Bodien <india@indialinbodienlaw.com>; Scott Grimes <sgrimes@gbdhlegal.com>
**Subject:** RE: Cahill, et al. v. Nike, Inc- Case No. 3:18-cv-01477-JR

Deputy Magnuson,

We believe the issue can be resolved pursuant to Nike's request for clarification of the March 23, 2020 order submitted earlier today, but if the Court prefers additional briefing, please let us know, and we will prepare a formal written response to plaintiffs' letter brief.

Thank you very much,
Felicia Davis

---

**From:** Scott Grimes <sgrimes@gbdhlegal.com>
**Sent:** Thursday, May 7, 2020 2:24 PM
**To:** Gary_Magnuson@ord.uscourts.gov
**Cc:** Prince, Daniel <danielprince@paulhastings.com>; Hutton, Zachary <zachhutton@paulhastings.com>; Davis, Felicia A.

1

Goldstein Decl. Ex. 9, Page 36 of 37

ER-501

<feliciadavis@paulhastings.com>; amy.joseph.pedersen@stoel.com; kennon.scott@stoel.com; Laura Ho <lho@gbdhlegal.com>; James Kan <jkan@gbdhlegal.com>; Barry Goldstein <bgoldstein@gbdhlegal.com>; Byron Goldstein <brgoldstein@gbdhlegal.com>; Mengfei Sun <msun@gbdhlegal.com>; Laura Salerno Owens <laurasalerno@markowitzherbold.com>; David Markowitz <davidmarkowitz@markowitzherbold.com>; Harry Wilson <harrywilson@markowitzherbold.com>; Anna Joyce <annajoyce@markowitzherbold.com>; Chad A. Naso <chadnaso@markowitzherbold.com>; cja@ackermanntilajef.com; india Bodien <india@indialinbodienlaw.com>
**Subject:** [EXT] Cahill, et al. v. Nike, Inc- Case No. 3:18-cv-01477-JR

Hon. Jolie A. Russo:

Attached please find Plaintiffs' Letter Regarding Enforcement of the March 23, 2020 Discovery Order in the matter *Cahill, et al. v. Nike, Inc.*, No. 3:18-cv-01477-JR.

**Scott G. Grimes ▪ Senior Paralegal ▪ Goldstein, Borgen, Dardarian & Ho** ▪ 300 Lakeside Drive, Suite 1000 ▪ Oakland, CA 94612 ▪ T: (510) 763-9800 ▪ F: (510) 835-1417 ▪ www.gbdhlegal.com



Please Note: The information in this E-mail message is legally privileged and confidential information intended only for the use of the addressee(s) named above. If you, the reader of this message, are not the intended recipient, you are hereby notified that you should not further disseminate, distribute, or forward this E-mail message. If you have received this E-mail in error, please notify the sender as soon as possible. In addition, please delete the erroneously received message from any device/media where the message is stored. Thank you.

********************************************************************************
This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments. If you reply to this message, Paul Hastings may collect personal information including your name, business name and other contact details, and IP address. For more information about Paul Hastings' information collection, privacy and security principles please click HERE. If you have any questions, please contact Privacy@paulhastings.com.

2

Goldstein Decl. Ex. 9, Page 37 of 37

ER-502

**Laura Salerno Owens, OSB #076230**
LauraSalerno@MarkowitzHerbold.com
**David B. Markowitz, OSB #742046**
DavidMarkowitz@MarkowitzHerbold.com
**Harry B. Wilson, OSB #077214**
HarryWilson@MarkowitzHerbold.com
**Anna M. Joyce, OSB #013112**
AnnaJoyce@MarkowitzHerbold.com
**Kathryn P. Roberts, OSB #064854**
KathrynRoberts@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR 97201
Telephone: (503) 295-3085 | Fax: (503) 323-9105

**Laura L. Ho** (admitted *pro hac vice*)
lho@gbdhlegal.com
**Barry Goldstein, Of Counsel** (admitted *pro hac vice*)
bgoldstein@gbdhlegal.com
**James Kan** (admitted *pro hac vice*)
jkan@gbdhlegal.com
**Byron Goldstein** (admitted *pro hac vice*)
brgoldstein@gbdhlegal.com
**Katharine L. Fisher** (admitted *pro hac vice*)
kfisher@gbdhlegal.com
**Mengfei Sun** (admitted *pro hac vice*)
msun@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
155 Grand Avenue, Suite 900
Oakland, CA 94612
Telephone: (510) 763-9800 | Fax: (510) 835-1417

Attorneys for Plaintiffs, Opt-In Plaintiffs, and Putative Class

[Additional Counsel of Record listed on the next page]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| KELLY CAHILL, et al., individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>NIKE, INC., an Oregon Corporation,<br><br>Defendant. | Case No. 3:18-cv-01477-JR<br><br>**DECLARATION OF BYRON GOLDSTEIN IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>**FILED UNDER SEAL** |

**Craig Ackerman** (admitted *pro hac vice*)
cja@ackermanntilajef.com
Brian Denlinger (*admitted pro hac vice*)
bd@ackermanntilajef.com
ACKERMANN & TILAJEF PC
1180 S Beverly Drive, Suite 610
Los Angeles, CA 90035
Tel:  (310) 277-0614
Fax:  (310) 277-0635

**India Lin Bodien** (admitted *pro hac vice*)
india@indialinbodienlaw.com
INDIA LIN BODIEN LAW
2522 North Proctor Street, #387
Tacoma, WA 98406-5338
Tel:  (253) 503-1672
Fax:  (253) 276-0081

I, Byron Goldstein, declare as follows:

1.      I am a member in good standing of the Bar of the State of California and a partner at the law firm of Goldstein Borgen Dardarian & Ho in Oakland, California.  I am counsel for Plaintiffs, Opt-in Plaintiffs, and the putative class members, along with Markowitz Herbold, Ackerman & Tilajef, and India Lin Bodien Law.  I am providing this declaration in support of Plaintiffs' Motion for Class Certification.  I have personal knowledge of the facts set forth in this declaration and could and would testify competently to them if called upon to do so.

2.      This declaration concerns discovery Plaintiffs sought concerning Plaintiffs' initial job assignment allegation (*see* ECF 42, ¶ 10).  Section I describes the relevant discovery requests as well as unproduced discovery related to Plaintiffs' initial job assignment allegation.  This declaration also concerns the authentication of the Parties' submissions to the Court requesting discovery orders, which is provided in Section II.

## I.      PLAINTIFFS' DISCOVERY REQUESTS TO NIKE SEEKING DISCOVERY ON PLAINTIFFS' INITIAL JOB ASSIGNMENT ALLEGATION.

3.      Plaintiffs served Requests for Production ("RFPs") seeking discovery concerning Nike's policies and practices related to initial job assignment.  *See* RFPs 1-4, 9, 11, and 32.  These RFPs are contained in Plaintiffs' First Set of RFPs to Nike, which were served on March 22, 2019.  A true and correct copy of Plaintiffs' First Set of RFPs is attached hereto as Exhibit 1.

a.      These RFPs sought discovery concerning Nike's policies, practices, or procedures related to initial job assignment.  RFP 4 requested documents concerning policies or practices related to job offers for employees in Covered Positions, including band level or job assignments, related trainings, and documents identifying persons involved with disseminating, implementing, monitoring, and enforcing these policies and practices.  RFP 9 requested documents concerning policies, practices, or procedures related to the assignment of a new hire

to a Covered Position.  RFP 11 requested documents and communications related to any executive's involvement in the setting or review of any policies, practices, or procedures concerning the Covered Positions and job assignment, job applications, or decisions on job applications for new hires.

b.      These RFPs also sought discovery concerning data related to initial job assignment and the availability of such data.  RFP 1 requested job application data for new hires. RFP 2 requested documents showing the systems Nike used to track, store, or access information or generate reports related to employees in the Covered Position for job applications and decisions on job applications for new hires.  RFP 3 requested documents that would help Plaintiffs understand those Nike systems related to RFPs 1-2.  RFP 32 requested discovery concerning Nike's policies or practices about retaining or deleting the requested discovery.

4.      Nike did not produce documents in effect prior to November 2018 that show the steps, policies, procedures, or guidelines concerning how employees in Covered Positions were hired, including their initial job assignment.  This belief is based on: (1) the documents listed in the following subparagraphs, which are documents that other Nike documents and Nike testimony indicate existed and were not produced, and (2) Plaintiffs' counsel's thorough review and searches through all the documents Nike produced in all of Nike's productions.

a.      Based on Plaintiffs' counsel's thorough review and searches through all the documents Nike produced in all of Nike's productions and the following, Nike did not produce any pre-December 13, 2018 version of its "Hiring Process" document.  Nike produced a version of this document that was in effect beginning December 13, 2018.  *See* Sun Decl. Ex. 11. Nike's "Hiring Process" document states it "is a quick guide to educate key players on their roles and responsibilities when looking to hire great talent at NIKE, inc.," and "[u]se this resource to

learn about your role – as well as when to rely on other stakeholders – throughout the hiring process." *Id.* at NIKE_00003185. Nike changed its "Hiring Process" document on December 13, 2018 and there was at least one prior version in effect before December 2018 based on the following two Nike documents: (1) the "Hiring Process" document Nike produced states it was "Updated" on December 13, 2018 (*id.* at NIKE_00003186), and (2) Nike produced a document from October 2017 that was sent to all Nike Talent Acquisition employees that lists a "Hiring Process" document (*See* Exhibit 2, attached hereto, which is a true and correct copy of an email from Daniel Laboe, regarding "Commitment to Pay Equity," sent October 12, 2017 (NIKE_00024727), produced by Nike in this litigation, and entered as deposition exhibit 673 at the deposition of Shine Thomas, March 26, 2021).

b.    Based on Plaintiffs' counsel's thorough review and searches through all the documents Nike produced in all of Nike's productions and the following, Nike did not produce any pre-December 10, 2018 version of its "Manager Playbook Hiring" document. Nike produced a version of this document that was in effect beginning December 10, 2018. Sun Decl. Ex. 14. Nike's "Manager Playbook Hiring" lists the "role of manager" and "manager activities" in hiring. *Id.* Nike changed its "Manager Playbook Hiring" document on December 10, 2018 and there was at least one prior version in effect before December 2018 based on the following two Nike documents: (1) the "Manager Playbook Hiring" document Nike produced states it was "Updated" on December 10, 2018 (*id.*), and (2) Nike produced a document from October 2017 that was sent to all Nike Talent Acquisition employees that lists a "Manager Playbook Hiring" document that Nike had then (Ex 2).

c.    Based on Plaintiffs' counsel's thorough review and searches through all the documents Nike produced in all of Nike's productions and the following, Nike did not

produce complete versions of its "Talent Acquisition Playbook," which is also referred to as "TA Playbook." Nike documents and testimony from its Rule 30(b)(6) witness state that Talent Acquisition manages the hiring process from the time a job is posted until a candidate is selected. *See* Plaintiffs' Motion In Support of Class Certification at 27. The "Talent Acquisition Playbook," according to a Nike witness' testimony, is the main source of policies and guidelines for members of the Talent Acquisition organization. *Id.* Another Nike witness testified that the "TA playbook was created, I think, sometime in 2016," and that Nike puts "new material" and "new policy changes" into the TA Playbook. *See* Exhibit 3, attached hereto, which is a true and correct copy of excerpts from the deposition of Julian Miller, taken June 3, 2021, ("Miller Dep.") 101:18-102:12. Nike produced a document from October 2017 that was sent to all Nike Talent Acquisition employees directing them to "Review the resources on the "TA Playbook," which indicates that Nike has had a "TA Playbook" since at least October 2017. Ex. 2 at NIKE_00024727.

     5.     Nike did not produce any data from its Avature system, including data related to Nike's sourcing of external candidates who were hired into Covered Positions and had not applied to the open job being sourced. A Nike witness testified Avature is "a tool …. primarily used for proactive sourcing of prospects." *See* Exhibit 4, attached hereto, which is a true and correct copy of excerpts from the deposition of Shine Thomas, taken on March 26, 2021, ("Thomas Dep.") 42:20-43:7. According to this Nike witness, proactive sourcing of prospects involved Nike identifying potential candidates for positions that had not yet been officially posted and contacting them to gather their interest in potential positions at Nike. *Id*. at 44:17-45:21. Another Nike witness testified, "Avature is a tool by which recruiters can log information, as this says, for passive candidates… These are candidates that have not applied to

an open job…." Ex. 3, Miller Dep. 74:13-75:7. This Nike witness also testified that Avature

contains information "regarding … qualifications … [and] experiences" of candidates that is not

in Taleo, and "[t]here'd be no information in Taleo that [candidates] were sourced from

Avature;" Taleo would just say "that a candidate has applied." *Id.* 76:4-77:7.

6.      Nike did not produce complete data from its Taleo system, including data related

to Nike's matching of candidates to job requisitions. Taleo "has all the history of all the

candidates who've applied to our open roles." Ex. 4, Thomas Dep. 237:7-14. Another Nike

witness testified that there are hundreds of different Taleo fields related to posting and filling

jobs that were not produced. Ex. 3, Miller Dep. 127:3-128:19. This witness testified that these

missing data fields include entries related to Nike's "matched to job" practice, which is where

Nike applied on behalf of existing candidates to other job postings, and records related to

communications made by Nike recruiters that encouraged applicants to apply for open positions.

*Id.* at 113:6-21

7.      Plaintiffs served a Notice of a Rule 30(b)(6) Deposition on Nike that sought

testimony concerning initial job assignment. A true and correct copy of this deposition notice,

introduced as deposition exhibit 501 at the deposition of Shane Walker, December 17, 2021, is

attached here as Exhibit 5. Topic 7 sought testimony on, inter alia, hiring for covered positions.

Topic 11 sought testimony on, inter alia, systems Nike used regarding job assignments. Topic 33

sought testimony on, inter alia, data Nike had not produced concerning job assignment of

covered employees, job postings, and job applications.

8.      Nike failed to designate a Rule 30(b)(6) witness on Topics 7, 11, and 33 with

respect to the parts of those topics related to initial job assignment. *See* Exhibit 6, attached

hereto (true and correct copies of deposition exhibits 502 (introduced at the deposition of Shane

Walker, December 17, 2021), 566 (introduced at the deposition of Alison Daugherty, January 8, 2021), 597 (introduced at the deposition of Shelli White, January 29, 2021), 629 (introduced at the deposition of Kendra Pryce, February 11, 2021), 635 (introduced at the deposition of Treasure Heinle, March 16, 2021), 652 (introduced at the deposition of Cory Gillespie, March 25, 2021), 665 (introduced at the deposition of Shine Thomas, March 26, 2021), 698 (introduced at the deposition of Elizabeth Vales, May 27, 2021), 728 (introduced at the deposition of Julian Miller, June 3, 2021)) (Nike's statements about the limits of Rule 30(b)(6) testimony that it said it would provide).

## II.    THE PARTIES' SUBMISSIONS TO THE COURT REQUESTING DISCOVERY ORDERS.

9.    Attached hereto as Exhibit 7 is a true and correct copy of the briefing for Plaintiffs' First Letter Brief to the Court, submitted September 27, 2019, Nike's opposition submitted October 4, 2019, and Plaintiffs' reply submitted October 9, 2019.  In response to the Parties' briefing on this request, the Court issued an Order on October 31, 2019.  ECF No. 89.

10.    Attached hereto as Exhibit 8 is a true and correct copy of the briefing for Plaintiffs' Second Letter Brief to the Court, submitted March 4, 2020, Nike's opposition submitted March 13, 2020, and Plaintiffs' reply submitted March 18, 2020.  In response to the Parties' briefing on this request, the Court issued an Order on March 23, 2020 (ECF No. 99), which was affirmed by Judge Hernandez on November 17, 2020 (ECF No. 128).

11.    Attached hereto as Exhibit 9 is a true and correct copy of Plaintiffs' Letter to the Court requesting enforcement of the Court's March 23, 2020 Order, submitted May 7, 2020, Nike's Email Response submitted May 7, 2020, and the Court's response sent on May 8, 2020.

12.    Attached hereto as Exhibit 10 is a true and correct copy of the briefing for Plaintiffs' Third Letter Brief to the Court and the Declaration of James Kan in support, submitted

June 5, 2020, Nike's opposition submitted June 22, 2020, and Plaintiffs' Reply submitted June

29, 2020.  In response to the Parties' briefing on this request, the Court issued an Order on July

2, 2020.  ECF No. 108.

13.    Attached hereto as Exhibit 11 is a true and correct copy of the briefing for

Plaintiffs' Fourth Letter Brief to the Court and the Declaration of Byron Goldstein in support,

submitted June 30, 2020, Nike's opposition submitted July 17, 2020, and Plaintiffs' reply

submitted July 22, 2020.  In response to the Parties' briefing on this request, the Court issued an

Order on August 10, 2020.  ECF No. 111.

14.    Attached hereto as Exhibit 12 is a true and correct copy of the briefing for

Plaintiffs' Fifth Letter Brief to the Court, submitted August 7, 2020, Nike's opposition and

declarations submitted September 8, 2020, Plaintiffs' reply and the Declaration of Byron

Goldstein in support submitted September 15, 2020, and Nike's Sur-Reply and declaration

submitted September 22, 2020.  In response to the Parties' briefing on this request, the Court

issued an Order on October 9, 2020.  ECF No. 117.

15.    Attached hereto as Exhibit 13 is a true and correct copy of the briefing for

Plaintiffs' Letter to the Court requesting unredacted names in the Starfish Survey, submitted

October 15, 2020, and Nike's opposition submitted October 16, 2020.  In response to the Parties'

briefing on this request, the Court issued an Order on November 23, 2020.  ECF No. 130.

16.    After the Court compelled Nike to produce an unredacted copy of the "Starfish

Survey" or the packet of complaints provided to Nike's CEO in March 2018, ECF No. 130, the

documents included the names of at least 22 Nike executives listed in the Survey who Nike had

previously redacted and who were alleged to have discriminated or condoned discrimination.

The people identified in the Survey who have been Nike executives are Trevor Edwards, David

Ayre, Jayme Martin, Greg Thompson, Greg Hoffman, Jose Serino, Phil McCartney, Charlie Denson, Don Blair, Lee Holman, Tinker Hatfield, Dennis van Oossanen, Michael Jackson, Bert Hoyt, Yuron White, Larry Miller, Howard White, Roger Wyatt, Sandy Bodecker, Mark Smith, Eric Avar, and Lynn Merritt.

17.    Attached hereto as Exhibit 14 is a true and correct copy of the briefing on Nike's Request for a Protective Order, submitted November 11, 2020, Plaintiffs' opposition submitted November 25, 2020, and Nike's reply submitted December 14, 2020.  In response to the Parties' submissions, the Court issued an Order on December 17, 2020.  ECF No. 131.  The declarations in support of the briefing are omitted from this exhibit for brevity.

18.    Attached hereto as Exhibit 15 is a true and correct copy of Plaintiffs' Sixth Letter Brief to the Court, submitted March 1, 2021, Nike's opposition and declaration submitted March 15, 2021, Plaintiffs' reply submitted March 17, 2021, and Nike's Sur-Reply submitted March 19, 2021.  Plaintiffs' March 1, 2021 submission requested an order to compel discovery concerning, inter alia, Nike's organizational structure based on "[r]ecent deposition testimony of Nike's Rule 30(b)(6) designees have confirmed the existence of several documents whose production is either already ordered by this Court (for some subject to two separate orders) or is required by long ago served document requests."

a.    In response to the Parties' briefing on this request, the Court issued an Order on March 30, 2021, compelling Nike to produce, inter alia, "Organizational Charts granted to the extent they already exist."  ECF No. 135.  After this March 30, 2021 Order, Nike's productions made clear that Nike possessed many thousands of organizational charts because, as Nike stated in its June 2, 2021 letter to Plaintiffs, "we have produced more than 5,000 organizational charts …."  The organizational charts Nike produced included, at least, many

hundreds created prior to March 30, 2021, including numerous organizational charts created each

year between 2014 through 2020.

19.    Attached hereto as Exhibit 16 is a true and correct copy of Plaintiffs' Request for

a Discovery Conference, submitted March 12, 2021, and Nike's response submitted March 12,

2021.

20.    Attached hereto as Exhibit 17 is a true and correct copy of Plaintiffs' Seventh

Letter Brief to the Court, submitted March 23, 2021, and Nike's opposition submitted March 30,

2021.  In response to the Parties' briefing on this request, the Court issued an Order on April 1,

2021.  ECF No. 136.

I declare under penalty of perjury under the laws of the State of California and of the

United States that the foregoing is true and correct, and that this Declaration was executed this

10th day of January, 2022 in Oakland, California.


/s/ Byron Goldstein
Byron Goldstein



## IF IT'S HAPPENED TO YOU WE WANT TO KNOW.

Please select one or more choices below.

☐ **Discrimination or other harassment**

(Generally, Discrimination or Harassment can include threats, insults, jokes, unwelcome verbal comments or email, derogatory pictures or gestures or unwelcome physical conduct, bullying, retaliation, discrimination or disrespect based on race, age, sexual orientation, disability, ethnic group or any protected class status, intimidation, micro-aggressions, exclusionary behavior and actions including 'cliques' or 'clubs', preferential treatment, the feeling of having to 'prove' yourself versus colleagues, pay or performance recognition. Could include purposely ambiguous CFE feedback whether verbal or written, lack of a clear and supported growth plan from manager, gender or diversity bias relating to hiring, promoting, pay or performance rewards. Discrimination or harassment at work can happen inside or outside of the work-place.)

☑ **Sexual harassment**

(Generally, Sexual Harassment can include unwelcome sexual advances, requests for sexual favors, other verbal or physical conduct of a sexual nature. Sexual harassment at work can happen inside or outside of the work-place and can include co-workers including athletes, managers, vendors and visitors.)

## IF YOU WOULD LIKE TO SHARE MORE DETAILS, PLEASE DO SO OVER THE PAGE.

(If you are a Nike employee, Nike's harassment and anti-discrimination policy can be found here: https://nikehr.nike.com/node/15978)

Highly Confidential - Attorneys' Eyes Only

NIKE_00033366

Sun Decl. Ex. 52, Page 1 of 2

ER-514

# MY EXPERIENCE

(If you need more space, please photocopy this page or include additional attachments as needed)

Name (optional): Anonymous please

Please share brief outline of your experience: I walked into the massage room at Nike Sports Center. The room was empty I thought and I was going to take a nap since my morning client cancelled. When I opened

Date / location if you can remember: NSC    the door Lynette Deschler performing oral sex on Tinker Hatfield.
7:00am    She was a trainer at the time working also ~~with~~ with the

Did you experience this situation first hand? Yes    Innovation Kitchen. I closed the door quickly. He saw me but
I saw it.    she did not.

Were there any witnesses? NO

Do you have any hard evidence such as emails, photo's etc? NO

If not experienced first hand, then how was it brought to your attention?

Did you report this experience? I told Missy moss.

If you reported it, was it resolved? I doubt anything was done to address this behavior. Its Tinker Hatfield
→ and I don't want to lose my job.

If you did not report it, why did you make that decision?

What impact has this experience had on you? It put a very bad taste in my mouth about the leadership and how men think and take
(For example; career progression, physical health, psychological health, other)    advantage of the women below them.

Please indicate if you would like to discuss and potentially elevate your experience: No, he is too high up.

Highly Confidential - Attorneys' Eyes Only

NIKE_00033367

Sun Decl. Ex. 52, Page 2 of 2

ER-515



# IF IT'S HAPPENED TO YOU WE WANT TO KNOW.

Please select one or more choices below.

☐ **Discrimination or other harassment**
(Generally, Discrimination or Harassment can include threats, insults, jokes, unwelcome verbal comments or email, derogatory pictures or gestures or unwelcome physical conduct, bullying, retaliation, discrimination or disrespect based on race, age, sexual orientation, disability, ethnic group or any protected class status, intimidation, micro-aggressions, exclusionary behavior and actions including 'cliques' or 'clubs', preferential treatment, the feeling of having to 'prove' yourself versus colleagues, pay or performance recognition. Could include purposely ambiguous CFE feedback whether verbal or written, lack of a clear and supported growth plan from manager, gender or diversity bias relating to hiring, promoting, pay or performance rewards. Discrimination or harassment at work can happen inside or outside of the work-place.)

☑ **Sexual harassment**
(Generally, Sexual Harassment can include unwelcome sexual advances, requests for sexual favors, other verbal or physical conduct of a sexual nature. Sexual harassment at work can happen inside or outside of the work-place and can include co-workers including athletes, managers, vendors and visitors.)

# IF YOU WOULD LIKE TO SHARE MORE DETAILS, PLEASE DO SO OVER THE PAGE.

(If you are a Nike employee, Nike's harassment and anti-discrimination policy can be found here: https://nikehr.nike.com/node/15978)

Highly Confidential - Attorneys' Eyes Only

NIKE_00033364

Sun Decl. Ex. 51, Page 1 of 2

ER-516

## MY EXPERIENCE

(If you need more space, please photocopy this page or include additional attachments as needed)

Name (optional):

Please share brief outline of your experience: Tinker Hatfield was late for his Personal Training lesson with me. I said, "OH Tinker you are so late today." He responded, "Well maybe if you dressed sexier I would be on time." He continued with "take that baggy jacket off and show some skin."

Date / location if you can remember: NSC 2008    I tried to laugh but I was humiliated. I finished the lesson and kept it

Did you experience this situation first hand? Yes    to myself because of who he is at the company.

Were there any witnesses? NO

Do you have any hard evidence such as emails, photo's etc? NO

If not experienced first hand, then how was it brought to your attention?

Did you report this experience? NO

If you reported it, was it resolved?

If you did not report it, why did you make that decision? Because I was afraid and intimidated.

What impact has this experience had on you? It made me feel bad. I was intimidated and felt degraded.
(For example; career progression, physical health, psychological health, other)

Please indicate if you would like to discuss and potentially elevate your experience: NO

Highly Confidential - Attorneys' Eyes Only

NIKE_00033365

Sun Decl. Ex. 51, Page 2 of 2

ER-517



**EXHIBIT
587**
Alison Daugherty
1/8/2021
Alethia Macom - CSR, DCR

## IF IT'S HAPPENED TO YOU WE WANT TO KNOW.

Please select one or more choices below.

☑ **Discrimination or other harassment**
(Generally, Discrimination or Harassment can include threats, insults, jokes, unwelcome verbal comments or email, derogatory pictures or gestures or unwelcome physical conduct, bullying, retaliation, discrimination or disrespect based on race, age, sexual orientation, disability, ethnic group or any protected class status, intimidation, micro-aggressions, exclusionary behavior and actions including 'cliques' or 'clubs', preferential treatment, the feeling of having to 'prove' yourself versus colleagues, pay or performance recognition.  Could include purposely ambiguous CFE feedback whether verbal or written, lack of a clear and supported growth plan from manager,  gender or diversity bias relating to hiring, promoting, pay or performance rewards. Discrimination or harassment at work can happen inside or outside of the work-place.)

☐ **Sexual harassment**
(Generally, Sexual Harassment can include unwelcome sexual advances, requests for sexual favors, other verbal or physical conduct of a sexual nature.  Sexual harassment at work can happen inside or outside of the work-place and can include co-workers including athletes, managers, vendors and visitors.)

## IF YOU WOULD LIKE TO SHARE MORE DETAILS, PLEASE DO SO OVER THE PAGE.

(if you are a Nike employee, Nike's harassment and anti-discrimination policy can be found here: https://nikehr.nike.com/node/15978)



Exlcek Bullard

Highly Confidential - Attorneys' Eyes Only

NIKE_00033338

Sun Decl. Ex. 48, Page 1 of 6

ER-518

# MY EXPERIENCE

(If you need more space, please photocopy this page or include additional attachments as needed)

Name (optional):

Please share brief outline of your experience:

Date / location if you can remember:

Did you experience this situation first hand?

Were there any witnesses?

Do you have any hard evidence such as emails, photo's etc?

If not experienced first hand, then how was it brought to your attention?

Did you report this experience?

If you reported it, was it resolved?

If you did not report it, why did you make that decision?

What impact has this experience had on you?
(For example; career progression, physical health, psychological health, other)

Please indicate if you would like to discuss and potentially elevate your experience:

Highly Confidential - Attorneys' Eyes Only

ERICA BULLARD

I am speaking out as I believe that I have normalized negative, manipulative and sexist behavior over the course of my career at Nike.
I am speaking out for the younger generation of female leaders.
I am speaking out because I have two daughters and want them to have equality no matter what or where they decide to invest their time and energy.
I am speaking out because I wonder if Executive or Senior level Management would want their daughter – or wife - to work at Nike.

Our culture is broken and I am becoming more sensitive to the plight of women at Nike.

When people ask me if I have ever felt discriminated against as a female at Nike, I have always responded no.

My dad brought me up to believe that I could do ANYTHING that I set my heart and mind to achieving. Growing up with two older brothers and in sports, I have always been competitive and philosophically have always believed that if I do the right thing, act with integrity, honesty and kindness, put the team above myself, good things will happen.

And good things have happened; I have a husband of 24 years who I love dearly, I have three stable and confident kids and work that I am passionate about. We have lived around the world and have experienced many amazing things as a result of our affiliation with Nike. It's only when I take a deeper look, really dig into "normal" Nike behavior, that I start to question what is really normal versus what is Nike Normal.

For a company that prides itself on innovation, inclusion and equality, I fear that we are missing the mark. Nike can change and lead in this space.

Here are some situations.

**Discrimination**

**Pay Inequities**
- E6 vs E7: I am "tied" for 4th paid salary on my direct team
- David Ayre email on pay was real setback, it was tone deaf

**Function: Sales**
- Sales is consistently diminished, talent (esp female) moved to other pipelines (GM, Merchandising)
- Sales perceived as "old school", aging, lacking modern + innovative approach
- Nike Direct priority vs wholesale dynamic

**Global Category Marketplace Team**

Highly Confidential - Attorneys' Eyes Only

NIKE_00033340

Sun Decl. Ex. 48, Page 3 of 6

ER-520

- 41 (13 women/28 men) direct reports + 16 (10 women/5 men/1 open HC) dotted line
- All E7 and S band direct reports (9) are male, 2 POC
- 'male team makeup but you're the boss'
- Career panels = troubling optics for innovative and diverse approach

Michael Jackson
- Disparaging, dishonest behavior, discredit my reputation
- Senior leaders told me that MJ would completely discredit me, question my ability and integrity in HR sessions
- MJ said to me: 'it's like neither your boyfriend nor your husband are happy with you', referring to MJ and Larry as I was the WE GM Jordan and Nike Basketball and MJ questioned (and said that Larry questioned it on the Jordan side but Larry never mentioned it / appeared to support me) whether I was spending the appropriate time on Nike Basketball. I told him that I over-indexed my time on Nike Basketball relative to the size of business and that I was offended by the accusation, asked for proof. Never received anything.
- He had completely unrealistic expectations of level of work. I would push back to protect the team but would eventually have to deliver (example, Quarterly business reviews in-between QBR's, Basketball LT WE trip: 5 key city tour at the same time for marketplace, experiences, inspiration which almost killed my small team but we delivered beyond expectations)
- He was manipulative and I was concerned for my career
- I felt completely exposed and unprotected after building my Nike career for 18 years
   - If you were on MJ's good list, you were protected by him
   - He once told his Staff Meeting attendees: 'it's really important to know who's at the table and know who has your back and who doesn't'
- I confided in Bert Hoyt about my concerns: 'don't fight that battle, you won't win'
- Megan Carle escalated discrimination and behavior to HR & ER, eventually left the company
   - I was interviewed as a result of Megan's escalation and cited above specific examples but nothing happened for many months (maybe a year or more?)

Question self, value
- 'everybody wears the green jacket' and then you lose it
- NLT evenings where you are tapped to go out. Or not.
- Secret areas for VIP, expectations on entertainment
- Boys club, biased selection process, protection
- 'Don't nag, guys don't want to feel like they're with their wives'
- 'You're cool, you're one of the boys'
- My introvert, quiet leadership style vs. extrovert culture (I have overcome this but it took time)
   - 'People don't know you because you don't put yourself out there'

Highly Confidential - Attorneys' Eyes Only

o  'do you have ambition? Do you want to grow because you don't show it" – BUT I DELIVER EVERY DAY AND AM VERY COMPETITIVE

Women tend to be placed in Women's, Young Athletes, Analysts, Merchandising roles

Highly Confidential - Attorneys' Eyes Only

Monday, March 5, 2018 at 1:38:20 PM Pacific Standard Time

**Subject:** Equal Pay Day: Nike has Pay Equity
**Date:** Tuesday, April 4, 2017 at 12:20:00 PM Pacific Daylight Time
**From:** DAyre
**To:** Lst-Nike.Global



Team,

Today, on Equal Pay Day, we are pleased to share that NIKE, Inc. has pay equity globally across all team members in all brands, inclusive of our wholesale and retail employees. This means that women, men and all races/ethnicities who undertake the same work at the same level, experience and performance are equitably compensated.

You may recall that several months ago Mark Parker communicated our commitment to pay equity as part of the White House Equal Pay Pledge. At that time, we shared that we would review pay practices across the company. In keeping with industry best practices, we worked in partnership with outside experts to complete a comprehensive study of all aspects of our pay across all jobs and all levels globally.

At Nike, for every $1 earned by men, women employees globally earn 99.6 cents. Racial and ethnic minorities (combined) in the U.S., where we track this information, earn 99.7 cents for every $1 earned by white employees. This confirms that there are essentially no differences in pay and that we have pay equity, highlighting the strengths of our Total Rewards programs and our continued focus on market competitiveness and pay for performance.

As Mark stated, "we are proud of our leadership and efforts to create a level playing field where all team members can perform at their best." We'll continue to focus on maintaining and reporting on pay equity across Nike. However, to truly unleash our full potential, we recognize that we must increase our efforts to create an inclusive culture where all of our diverse employees thrive, with supporting policies and practices, and — most importantly — where diverse individuals are represented at every level of leadership.

Regards,

**David Ayre**
EVP, Human Resources

Page 1 of 2

Highly Confidential - Attorneys' Eyes Only

NIKE_00033343
Sun Decl. Ex. 48, Page 6 of 6
ER-523

# IF IT'S HAPPENED TO YOU WE WANT TO KNOW.

Please select one or more choices below.

☑ **Discrimination or other harassment**
(Generally, Discrimination or Harassment can include threats, insults, jokes, unwelcome verbal comments or email, derogatory pictures or gestures or unwelcome physical conduct, bullying, retaliation, discrimination or disrespect based on race, age, sexual orientation, disability, ethnic group or any protected class status, intimidation, micro-aggressions, exclusionary behavior and actions including 'cliques' or 'clubs', preferential treatment, the feeling of having to 'prove' yourself versus colleagues, pay or performance recognition.  Could include purposely ambiguous CFE feedback whether verbal or written, lack of a clear and supported growth plan from manager,  gender or diversity bias relating to hiring, promoting, pay or performance rewards. Discrimination or harassment at work can happen inside or outside of the work-place.)

☐ **Sexual harassment**
(Generally, Sexual Harassment can include unwelcome sexual advances, requests for sexual favors, other verbal or physical conduct of a sexual nature.  Sexual harassment at work can happen inside or outside of the work-place and can include co-workers including athletes, managers, vendors and visitors.)

# IF YOU WOULD LIKE TO SHARE MORE DETAILS, PLEASE DO SO OVER THE PAGE.

(If you are a Nike employee, Nike's harassment and anti-discrimination policy can be found here: https://nikehr.nike.com/node/15978)



Highly Confidential - Attorneys' Eyes Only

NIKE_00033334

Sun Decl. Ex. 47, Page 1 of 4

ER-524

## MY EXPERIENCE

(If you need more space, please photocopy this page or include additional attachments as needed)

Name (optional):

Please share brief outline of your experience:

Date / location if you can remember:

Did you experience this situation first hand?

Were there any witnesses?

Do you have any hard evidence such as emails, photo's etc?

If not experienced first hand, then how was it brought to your attention?

Did you report this experience?

If you reported it, was it resolved?

If you did not report it, why did you make that decision?

What impact has this experience had on you?
(For example; career progression, physical health, psychological health, other)

Please indicate if you would like to discuss and potentially elevate your experience:

Highly Confidential - Attorneys' Eyes Only

I wish to remain anonymous and will share examples of discrimination and harassment at Nike I have witnessed and/ or been on the receiving end of:

- AGGRESSIVE BEHAVIOR: I witnessed a VP pound fists and scream to the point spit was coming out of his mouth in 2016 in front of a group of 10 employees.
- BULLYING: Everyone is scared to death of Trevor. Don't say anything contrary to what he says is the unspoken rule. Unless you are one of his "boys". And if you are not in the inner circle, you are out. Heidi is most certainly close if not already in this camp. She puts people down and make comments that absolutely diminish in front of others then stands up on stage and pretends she is an advocate for women. Reenie is one of the worst leaders and a bully. She will yell and threaten others because somebody on their team does not agree with her. It's been witnessed by HR time and time again and nothing is done. Speaks under her breath, lies, and makes inappropriate comments. If you dare try to share a different POV to hers it will escalate so everyone knows to shut their mouth for fear of the consequence.
- INEQUITY IN PAY: I have asked twice to have my salary reviewed in the past year and a half, my boss says that will happen but never follows through. I know for a fact I am underpaid.
- INAPPROPRIATE LANGUAGE: Male S band and VP in apparel who call people you work with RETARDED, calling a woman BITCH to her face, calling women HONEY and GIRLS.
- GENDER BIAS IN HIRING: Bringing only men into consideration or a panel because "the leader (male) knows these guys" or "he goes way back with so and so" or "they need more men on that team".
- RETALIATION: Anne Spangenberg took down Daniel Aguierre's year end rating from HS to S to send a message that his decision to side with apparel on a topic was "not ok". Everyone in merch knows he earned an HS, his boss even put it down but Anne wouldn't have it. Daniel quit a month or two later. Anne bullied him and retaliated against an amazing merchant and now he is gone.

I have twice reported bullying by a senior VP and HR said they would "take care of it", "we are coaching them". I saved copies of my emails to HR and made notations through my personal computer at home in case I ever need to go back to these. It's the first to do. I have friends who have reported bullying. No action was ever taken except a "we will talk to them".

A few examples of sexual harassment at Nike:
- Men sloppy drunk putting their arms around a waitress and/ or female co-workers while on work travel.
- Men trying to sleep with women in their function at lower levels by luring them in through the promise of a "work dinner" to discuss their career or some project they were working on that these women might want to be a part of.
- VP men sleeping with/ getting BJ's from women in the organization at much lower band
- A good friend of mine is an aesthetician at a medical spa in Portland and recently told me one of her clients (she would not tell me his name because of patient confidentiality) is a VP at Nike and bragged to her about sleeping with a female employee in a closet at Nike. AT WORK! DURING WORK HOURS!

I have never reported any of this because it has not happened to me personally but I have seen and heard enough about it and honestly would not even know where to turn because it's just so common it's accepted as normal. That in itself is the problem.

ER and HR at this company are a joke. These groups have proven over and over that they are unreliable. There is zero transparency which goes perfectly with zero accountability. It's a disgrace. David Ayre himself was a well known sexual harasser. Charlie Denson, Don Blair, Lee Holman, Jayme Martin, Tinker Hatfield, Dennis van OOssanen and others were and are still well known philanderers with lower level employees whom they exert influence and power over. Who is going to go up against these guys? Why would we report something when our company has a systemic and repeated practice of not addressing appropriately? Only reason Lee is gone is because his wife emailed dozens of nike employees his texts to Anoosha. His wife basically got him fired.

Highly Confidential - Attorneys' Eyes Only

NIKE_00033336
Sun Decl. Ex. 47, Page 3 of 4
ER-526

Matt Lauer was removed from his position in less than 72 hours after the reports came through of his harassment. LuLu Lemon took out their own CEO who had a multitude of lapses in judgment and was perpetuating the "boys club culture" including cocaine use and dating an employee while she received "financial benefit" because of the relationship. MarketWatch published an article Feb 19, 2018 about what the 30 companies that make up the Dow Industrials are doing to address sexual-harassment claims. Commitments have been issued around transparency, re-issuing code of ethics, annual trainings, and zero- tolerance policies from many of the companies. Sadly Nike has yet to respond. I bet our board doesn't have a clue about how bad it is inside and outside the berm. I have to imagine nobody is being transparent with them. It's time for a change and for people to be held accountable at the highest levels. **We need to visibly see action is being taken or the culture will carry on as it has.** No amount of trainings or video's or emails from our CEO about culture and leadership will change this.

Nike is a boys club. Somebody recently posted on glassdoor.com regarding Nike "cons: boys club, with frat-boy type behavior that is ignored by mgmt." That is the truth. The network of men hold unwritten rules that define insider vs outsiders. They get to decide who is successful and who is not. Females at this company have felt very little power to change a culture and environment that has been and continues to be disrespectful to women. Even women are disrespectful to women without consequence. This company must lay a new foundation and it must start at the highest level of the organization. We need Nike to stand up for what is preaches "EQUALITY" and start treating men and women the same. The METOO movement has given women an opportunity to step out of the shadows and it has given them a massive dose of courage. Somebody is going to go public. It's just a matter of time. Get your act together Nike. We have had enough.

Highly Confidential - Attorneys' Eyes Only

NIKE_00033337

Sun Decl. Ex. 47, Page 4 of 4

ER-527



Subject

**MORHL OC: MOR - Simon, Joshua**

Question Reference # 180614-001904

Assigned: Carla Lowe
Date Created: 06/14/2018 02:52 PM
Date Last Updated: 08/30/2019 03:24 PM
Status: Resolved

Note By (Brenna Cordoba) (10/11/2018 02:03 PM)

Sr. HRBP: Hoogers
HRBP: Brouwer
ER:
Follow Up: Coaching document
Follow Up Date: 8-14-2018
Action Delivered By: Iris Yen, Michael Spillane, Rolien Hoogers

Customer By (Carla Lowe) (06/14/2018 02:52 PM)

From MOR Hotline & Transitioned From Outside Counsel
HRLT: Hoogers
HRBP: Brouwer
Person of Interest: Simon, Joshua
Complainant: Augustine, Renee
Reference Case(s): N/A



EXHIBIT
581
Alison Daugherty
1/8/2021
Aleshia Macon - CSR, CCR

Highly Confidential - Attorneys' Eyes Only

NIKE_00032843
Sun Decl. Ex. 46, Page 1 of 3
ER-528



NIKE PROJECT STARFISH
EXECUTIVE SUMMARY

| Name: **Josh Simon** | Reports to: **Michael Spillane** |
|---|---|

**Describe Investigation To Date**

Reviewed documentation; interviewed Starfish complainant, two current female direct reports, and current HRBP who handled Complainant's initial HR complaint.

**Spoke to Subject?**

No.  Complainant did not want Simon to be interviewed due to strong fear of retaliation.

**Summary of Select Allegations:**

Gender Bias

- Was completely disrespected by Josh Simon in Jayme Martin's group.  No problems until he came on board.  Almost left NIKE because of him.  Terrorized her.  He wouldn't stop.  Boys club attitude. Knows he can get away with it.  Sad to say, Jayme Martin turned a blind eye.

- Gender bias.  On team with other men. They had no issues. They didn't get demeaned.  She was top performer but was not set up for career advancement.  Her male colleague moved up, doesn't understand how.  Biggest concern is that she already reported this situation to HR and nothing was done except she was moved to a another role deeper in the organization, with no track for development.

Ineffective Leadership

- Fails or refuses to communicate with his team regarding key facts (e.g., new hires, project details and assignments, promotion of new boss); displays lack of interest in developing careers of his reports; in his current role, has never called a group meeting of his direct reports on any issues, including recent MOR-related events and Jayme Martin's termination; indignantly refused team member request for huddle to discuss Montagne's promotion and impact on team.



Highly Confidential - Attorneys' Eyes Only

Re:    Coaching – Matter of Respect                          Beaverton, July 20 2018

Josh,

This e-mail confirms our discussion on July 11 2018. At that time, we shared with you that we received concerns that you engaged in behavior inconsistent with Nike's Matter of Respect policy.

In general, we received concerns that you engaged in behavior that was perceived as perpetuating the "in crowd vs. the out crowd", prioritizing work content over team dynamics and employee development and not delegating appropriately.

As you know, we take all concerns seriously and our Matter of Respect team investigated. That investigation concluded that you engaged in some conduct inconsistent with our policy and that the conduct and employees' perceptions about your conduct were serious enough to warrant follow-up and coaching.  As we discussed, going forward, you will focus on the following;

• Promote Inclusion. Remain focused on creating an environment where all employees feel valued and included, whether in meetings, lunch outings or social events.
• Value Diverse Viewpoints. Actively value the contributions of other employees,  invest in the development of team members
• Model Teamwork. Collaborate openly and often with team members, and avoid forming cliques or subgroups.

In addition, our commitments and investments to support you with the above are ;
- Ongoing and regular feedback
- A formal 360 degree feedback in August 2018
- Partnership with a leadership coach
- Another formal 360 degree feedback early 2019.

Josh, we are confident you understand the seriousness of this situation and the importance of creating a culture of inclusion and respect. We expect that you will work to address the concerns above and to model Nike values and leadership expectations.

Also, please remember that the Matter of Respect policy prohibits retaliating against an individual because they raised concerns or complaints and/or participated in an investigation. Behavior that can be considered retaliation can be direct (taking a negative employment action against someone) or subtle (ignoring, isolating or freezing out persons suspected of participating in a complaint or investigation). Anyone found to have engaged in retaliatory behavior will be subject to corrective action, up to and including termination.

We understand that this process is difficult for all involved, and we thank you for your professionalism and commitment to move forward. As part of that commitment, we ask that you refrain from communicating about the investigation or its findings with others. If you have concerns or you wish to discuss this further, I urge you to contact me or Rolien Hoogers,

This summary of our conversation will be retained by Employee Relations as confirmation of our discussion and your commitment to make improvements.

Regards,

Michael Spillane
President of Categories and Product

Highly Confidential - Attorneys' Eyes Only                                    NIKE_00032845

Sun Decl. Ex. 46, Page 3 of 3

ER-530

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
## Form 15. Certificate of Service for Electronic Filing

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form15instructions.pdf*

**9th Cir. Case Number(s)** | 24-165

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**

☒ I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are <u>NOT</u> Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

**Description of Document(s)** *(required for all documents)*:

(1) Corrected Version of Excerpts of Record, Volume 4; and
(2) Appellant Nike, Inc.'s Motion for Leave to File Corrected Excerpts of Record Volume

**Signature** | s/ Daniel Prince    **Date** | Aug 13, 2024

*(use "s/[typed name]" to sign electronically-filed documents)*

Feedback or questions about this form? Email us at forms@ca9.uscourts.gov